**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| CHRISTOPHER GUIDA, *on behalf of himself and all others similarly situated*, | Case No. 1:22-cv-02350-GPG-MEH |
| Plaintiffs, | |
| v. | Hon. Gordon P. Gallagher |
| GAIA, INC., | |
| Defendant. | |

<u>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF**</u>

Plaintiff Christopher Guida ("Plaintiff") submits this Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support Thereof. Defendant Gaia, Inc. ("Gaia") has represented that it does not oppose this motion.

## I.   <u>INTRODUCTION</u>

Plaintiff respectfully asks the Court to approve a proposed Class Action Settlement Agreement (the "Settlement") with Gaia.[1] The Settlement will fully resolve this litigation, wherein Plaintiff alleges Gaia violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, by knowingly disclosing consumers' personally identifiable information through its use of the Facebook Pixel. Under the proposed Settlement, Gaia will create a $2 million non-reversionary cash fund for the benefit of the Settlement Class. Gaia also

---

[1] *See* Plaintiff's Appendix of Evidence In Support of Motion for Preliminary Approval ("Appx."), p. 4 (Settlement). Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

will agree to suspend operation of the Facebook Pixel on portions of its websites relevant to VPPA compliance—*i.e.*, webpages that both include video content and have a URL that identifies the video content viewed.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate. After deduction of Court-awarded fees, expenses, service award, and administrative costs, Settlement Class Members who submit valid claims through a very simple claims process will each receive a *pro rata* share of the Net Settlement Fund. Plaintiff and his counsel have vigorously prosecuted this action on behalf of the Settlement Class and—through discovery and extensive, arm's-length negotiations overseen by experienced mediator Hon. Suzanne H. Segal (Ret.)—have developed an understanding of the strengths and weaknesses of the action. Notwithstanding his confidence in the merits of his VPPA claim, Plaintiff recognizes the challenges and risks inherent in proceeding through litigation and proving his claims at trial.

For the reasons set forth herein, Plaintiff respectfully request the Court (1) find it will likely (a) approve the Settlement and (b) certify the Settlement Class for purposes of judgment on the proposed Settlement; (2) appoint Plaintiff as Class Representative for the Settlement Class; (3) appoint Herrera Kennedy LLP, Burns Charest LLP, and Lieff Cabraser Heimann & Bernstein, LLP as Class Counsel; (4) direct notice to the Settlement Class and approve the form and manner thereof; (5) authorize retention of Angeion Group, LLC ("Angeion") as Settlement Administrator; and (6) set a schedule for final approval of the Settlement and Plaintiff's request for attorneys' fees and expenses.

## II.   BACKGROUND

### A.   Summary of Allegations

Plaintiff alleges that Gaia, a subscription-based digital video streaming service, intentionally installed the Facebook Pixel ("Pixel") on its websites, gaia.com and yogainternational.com (together, the "Websites"), and selected the specific categories of information the Pixel would capture and transmit. (Dkt. 1 (Complaint) ¶¶ 2, 5-8, 53–56.) The Pixel is a string of programming code that businesses like Gaia can embed on their websites to track consumers' actions and report the actions back to Meta Platforms, Inc. ("Meta") for targeting and delivering advertisements. (*Id.* ¶¶ 39, 47–50.) Gaia's use of the Pixel allows Meta to build detailed profiles about Gaia subscribers and facilitates Gaia's use of Meta's advertising services. (*Id.* ¶¶ 5, 39.)

Gaia knowingly configured the Pixel to share its subscribers' personally identifiable information ("PII"). (*Id.* ¶¶ 29–30, 38, 49–52, 60, 95.) Consequently, when a Gaia subscriber views a particular video, Gaia sends the title and URL of that video to Meta via the Pixel. (*Id.* ¶¶ 49–56.) At the same time, the Pixel also causes the Facebook ID ("FID") of any subscriber who also has a Facebook account, using the "c_user" cookie, to be sent to Meta. (*Id.*) An FID is a unique sequence of numbers assigned by Facebook to each user that anyone can use to determine their identity. (*Id.* ¶ 7.) Any ordinary person can type "facebook.com/[FID]" into a web browser to view that subscriber's Facebook profile and all the personal information it contains. (*Id.* ¶¶ 7, 52, 58.)

Plaintiff was a Gaia subscriber and Facebook user to whom Meta assigned a unique FID linked to his Facebook profile during the relevant period. (*Id.* ¶¶ 12, 74.) Plaintiff subscribed to Gaia's digital video streaming service and accessed videos on its

website. (*Id.* ¶¶ 12, 74–75.) When he did so, Gaia's Pixel caused the title and URL of videos he accessed on gaia.com and his FID to be sent to Meta without his separate informed, written consent. (*Id.* ¶¶ 76–77.)

B.     **Procedural History**

Plaintiff filed this case on behalf of himself and similarly situated Gaia subscribers on September 12, 2022, alleging one claim for violation of the VPPA. (Dkt. 1.) On November 9, 2022, Gaia moved to dismiss the class action complaint under Rules 12(b)(1) and 12(b)(6) arguing, *inter alia*, that Plaintiff lacked standing, and the complaint failed to state a claim upon which relief could be granted. (Dkt. 20.) Plaintiff filed an opposition to Gaia's motion to dismiss on December 9, 2022. (Dkt. 24.) Gaia filed a reply in support of its motion on December 21, 2022. (Dkt. 25.)

On August 19, 2023, the Court granted the parties' joint request to stay the litigation for the purpose of engaging in formal mediation. (Dkts. 49–50.) The Court also ruled the motion to dismiss moot. (Dkt. 51.) The Court subsequently extended the stay multiple times at the parties' request. (Dkts. 52–57.) On March 1, 2024, the Court granted the parties' joint request to lift the stay and modify the Scheduling Order. (Dkts. 60–61.) On March 8, 2024, Defendant re-filed its motion to dismiss. (Dkt. 62.) Plaintiff re-filed his opposition on March 11, 2024 (Dkt. 63), and Defendant re-filed its reply on March 13, 2024. (Dkt. 66.)

While Gaia's motion to dismiss was pending, the parties engaged in discovery. Appx., p. 65, ¶ 12 (Joint Declaration of Class Counsel ("Joint Decl.")). Both parties served written discovery requests and engaged in significant negotiations regarding the scope of discovery. *Id.* Gaia made substantive productions of information, including regarding its

4

Pixel settings, identification of potential deposition witnesses, and the existence of insurance coverage. *Id.* Plaintiff served additional discovery requests on Gaia after the stay was lifted in March 2024. *Id.*

Plaintiff also served a third-party subpoena on Meta and engaged in extended negotiations with Meta's counsel regarding production of Pixel-related data for Gaia's subscribers. *Id.*, p. 65, ¶ 13.

C.  **Mediation and Settlement**

From the outset of the case, including while the motion to dismiss was pending, the parties engaged in direct communications and, as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution. *Id.*, p. 66, ¶ 14. Those discussions led to an agreement between the parties to engage in mediation, which they agreed would take place before The Honorable Suzanne H. Segal, a former United States Magistrate Judge for the United States District Court for the Central District of California and a neutral at Signature Resolution. *Id.* The mediation took place on November 29, 2023. *Id.* While the parties engaged in good-faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day. *Id.*

Over the following weeks and months, the parties engaged in additional rounds of arms' length negotiations facilitated by Judge Segal. *Id.,* p. 66, ¶ 15. These negotiations included both direct discussions between counsel for both parties and mediated communications through Judge Segal. *Id.* On May 31, 2024, Judge Segal made a double-blind mediator's proposal for monetary relief covering a full, class-wide settlement of the Action. *Id.*, p. 67, ¶ 17. On June 5, 2024, Judge Segal informed the parties that they had both agreed to the mediator's proposal. *Id.* On June 25, 2024, the parties agreed to and

executed a term sheet covering additional material terms and proceeded to negotiate and draft a long form settlement agreement. *Id.*, p. 67, ¶ 18. On July 3, 2024, the parties finalized and executed the Settlement now before this Court. *Id.*, p. 67, ¶ 19.

## III.    THE SETTLEMENT'S TERMS

### A.    Class Definition

The parties seek certification, solely for purposes of judgment on the proposed Settlement, of a Settlement Class comprised of:

> all individuals residing in the United States who, during the Class Period [September 12, 2020, to and through the date of Preliminary Approval], subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites [gaia.com and yogainternational.com] while they had a Facebook account.

Appx., p. 16, ¶ 1.33 (Settlement). The Settlement Class is substantively identical to the class alleged in the Complaint. *Compare id.* with Dkt. No. 1 (Compl.) ¶ 79.

### B.    Monetary Relief

Gaia has agreed to pay $2,000,000 to create a non-reversionary Settlement Fund for the benefit of Class Members. *Id.*, pp. 16, 18, ¶¶ 1.33 & 2.1.1. Class Members who submit valid claims will receive a claims-made *pro rata* payment after the deduction of settlement-related costs, including the expenses of the settlement administrator and the costs of notice to the Class, taxes and tax-related expenses, and any Court-awarded attorneys' fees, expense reimbursements, and named plaintiff service award. *Id.*, pp. 12, 19, ¶¶ 1.18, 2.1.2–2.1.3.

### C.  Business Practice Changes

Gaia also has agreed to implement meaningful business practice changes designed to remediate the alleged VPPA violations going forward. Within 45 days of preliminary approval of the Settlement, Gaia will suspend operation of the Pixel on any web pages that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA is:  (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the Tenth Circuit Court of Appeals. *Id.*, p. 20, ¶ 2.2. This provision does not prevent Gaia from obtaining VPPA-compliant consent in the future should it wish to reinstitute use of the Pixel. *Id.*

### D.  Release

In exchange for the relief described above, Plaintiff and the Class shall release all claims that have or could have been asserted against Gaia, relating to the facts, transactions, or events alleged in this action. *Id.*, p. 13–14, 20–21, ¶¶ 1.26–1.27, 3.1–3.2.

## IV.  ARGUMENT

The Tenth Circuit has long maintained a strong policy favoring settlements. *See American Home Assurance Co. v. Cessna Aircraft Co.,* 551 F. 2d 804, 808 (10th Cir. 1977) ("The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims."). "The 'presumption in favor of voluntary settlement agreements' is especially strong in class actions." *O'Dowd v. Anthem, Inc.*, No. 14-CV-02787-KLM-NYW, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019) (quoting *Tuten v. United Airlines, Inc.,* 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014)).

Approval of a class action settlement takes place in two stages. In the first, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and directs notice to be given to the class. *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018). "The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a [final] fairness hearing." *Rhodes v. Olson Assocs.,* 308 F.R.D. 664, 666 (D. Colo. 2015) (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)). In the second stage, the court holds a fairness hearing at which it will address the fairness, reasonableness, and adequacy of the settlement terms and grant final approval of the settlement. Fed. R. Civ. P. 23(e)(2); *Rutter,* 314 F.3d at 1188.

At the preliminary approval stage, the court must determine whether it "will likely be able to" certify the class for purposes of judgment on the proposed settlement, and approve the proposed settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B). "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (citation omitted).

As outlined below, the proposed Settlement easily meets this standard. This Court therefore should grant Plaintiffs' motion and allow notice to be provided to the Class.

### A.  The Court Will Be Able to Certify the Proposed Settlement Class.

Rule 23(e)(1) provides that preliminary approval should be granted (and notice disseminated) where the Court "will likely be able to" certify the class for purposes of

judgment on the proposed settlement. Fed. R. Civ. P. 23(e). While certification of a class for settlement purposes warrants "caution," the court "need not consider the difficulties that will be encountered in managing the class at trial, as the class action will not go to trial if the court approves the settlement." *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 116CV00249PABSKC, 2020 WL 3833412, at *2 (D. Colo. Mar. 8, 2020) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) and *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1225 (D.N.M. 2012)).

Plaintiff contends, and Gaia does not dispute for settlement purposes only, that the proposed Settlement Class meets the requirements for class certification under Rules 23(a) and (b)(3).

### 1. <u>The requirements of Rule 23(a) are satisfied.</u>

### a. <u>Numerosity is satisfied.</u>

The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens*, 585 F.2d 432, 435 (10th Cir. 1978); *see also Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504-05 (D. Kan. 2014) ("[C]lasses as small as twenty members can satisfy the numerosity requirement, and a good faith estimate of at least 50 members is a sufficient size to maintain a class action") (internal quotations omitted). Here, the number of Class Members is in the hundreds of thousands and easily satisfies the numerosity requirement. Appx., p. 66, ¶ 16 (Joint Decl.).

**b.    Commonality is satisfied.**

Rule 23(a)(2) requires that there be one or more "questions of law or fact common to the class." "A finding of commonality requires only a single question of law or fact common to the entire class." *CO Craft, LLC v. Grubhub Inc.*, No. 20-CV-01327-NYW-NRN, 2023 WL 3763525, at *7 (D. Colo. June 1, 2023) (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194– 95 (10th Cir. 2010)). "Commonality exists when the class members have suffered the same injury such that the claims of the class are based on a common contention and the determination of that contention will resolve the central issue." *Id.* (cleaned up, quotations omitted).

Here, Plaintiff readily meets this standard, as many significant common questions of law and fact exist, including: (1) whether Gaia is a video tape service provider within the meaning of the VPPA; (2) whether the information Gaia allegedly disclosed to Meta constitutes PII under the VPPA; (3) whether Gaia knowingly disclosed Class Members' PII to Meta; (4) whether Gaia gave notice to Class Members regarding the disclosure of such information; (5) whether Gaia obtained informed, written consent consistent with the requirements of the VPPA from Class Members before disclosing such information to Meta; (6) whether Gaia's conduct violates the VPPA; and (7) whether Class Members are entitled to damages, declaratory, and injunctive relief, and other remedies.

All Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquires is Gaia's common course of conduct, *i.e.*, Gaia's knowing disclosure of Class Members' PII through its use of the Facebook Pixel. *See, e.g.*, *Kinder v. Meredith Corp.*, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016) ("[B]ecause there are common questions of both law and fact,

including the course of [defendant's] conduct with customer purchasing information and the applicability of [the Michigan Video Rental Privacy Act] to that conduct, the commonality requirement is satisfied."). Thus, commonality is satisfied.

### c.   Typicality is satisfied.

Rule 23(a)(3) requires the representative party's claims to be typical of the claims of the class. "Typicality 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Martinez v. Reams*, No. 20-CV-00977-PAB-SKC, 2020 WL 7319081, at *5 (D. Colo. Dec. 11, 2020) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Devaughn*, 594 F.3d at 1198–99.

Here, Plaintiff's claims stem from the same course of conduct and pattern of alleged wrongdoing as the claims of Settlement Class Members. When a Class Member requested or obtained specific video materials from Gaia's Websites, the Pixel transmitted that Class Member's PII to Meta. While Class Members may not have requested or obtained the same video materials from Gaia, the transmission of the PII occurred in precisely the same way. (Dkt. 1 ¶¶ 1, 49–56, 74–77.) Plaintiff's claims are based on the same legal theory as absent Settlement Class Members, Gaia's alleged violation of the VPPA. Accordingly, Plaintiff's claims are typical.

### d.   Adequacy of representation is satisfied.

The adequacy requirement is satisfied when the representative party is able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The

Tenth Circuit considers two questions in determining adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002). "'Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration.'" *CO Craft*, 2023 WL 3763525, at *8 (quoting *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998)).

Plaintiff is an adequate representative of the Settlement Class. First, Plaintiff has no interests in conflict with those of the Class. Specifically, Plaintiff and Settlement Class Members are equally interested in obtaining relief for Gaia's alleged misconduct, and for ensuring that Gaia reforms its business practices. *See id.* (adequacy requirement met where there was "no indication in the record that there is an obvious interclass conflict" and the Plaintiff had "overlapping interests with the class members"). Moreover, throughout the pendency of this action, Plaintiff has adequately and vigorously represented his fellow Class Members. He has spent significant time assisting his counsel, including by providing pertinent information regarding his Gaia subscription and Facebook account. Appx., p. 68, ¶ 22 (Joint Decl.). These same facts support Plaintiff's appointment as Class Representative for the Settlement Class.

Second, Class Counsel have extensive experience litigating, trying, and settling class actions, including consumer privacy cases like this one, throughout the country. *Id.*, pp. 70–79, ¶¶ 30–53. Courts across the country have recognized Class Counsel's

experience in complex class litigation and their skilled and effective representation. *Id.* Before agreeing to a mediator's proposal, Class Counsel had sufficient information at their disposal to adequately assess the strengths and weaknesses of Plaintiff's case and balance the benefits of settlement against the risks of litigation. *Id.*, p. 68, ¶ 23. In sum, Class Counsel are "seasoned and experienced class action attorneys" who have been "conscientiously and vigorously representing [Plaintiff's] rights for the past two years in this litigation." *Miller v. Basic Rsch., LLC*, 285 F.R.D. 647, 656 (D. Utah 2010).

Separately, Rule 23(g) requires the Court to appoint Class Counsel to represent the Settlement Class. Considering counsel's work in this action, their collective familiarity and experience in handling similar actions, and the resources committed to representing the Settlement Class, they should be appointed Class Counsel under Rule 23(g)(3) and confirmed under Rule 23(g)(1). Appx., pp. 70–110, ¶¶ 30–53 (Joint Decl. & Firm Resumes).

## 2. The requirements of Rule 23(b)(3) are satisfied.

Rule 23(b)(3) requires the Court to find that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

### a. Common questions of law or fact predominate over individual issues.

Rule 23(b)(3) requires a finding that common issues of law or fact predominate over any issues unique to individual class members. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Amchem*, 521 U.S. at 623; *accord* 7AA Wright & Miller, Fed. Prac. & Proc. Civ. § 1778 (3d ed. 2023) ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis."). "Common issues predominate when the focus is on the defendant's conduct and not on the conduct of the individual class members." *Miller*, 285 F.R.D. at 657 (quotation omitted).

Here, common questions of the kind noted above predominate because there are few, if any, individualized factual issues, and because the core facts involve Gaia's uniform conduct that allegedly harmed all Class Members. Specifically, Plaintiff alleges that Gaia knowingly utilized the Facebook Pixel to disclose Class Members' PII to Meta, and that this conduct uniformly injured Plaintiff and the other Class Members' legally protected interests under the VPPA. In other words, Plaintiff's action is "based on a common course of conduct on the part of [Gaia]," which conduct "affected each consumer in the same way," and deals with a dispositive issue regarding Gaia's use of the Pixel to disclose PII to Meta in violation of the VPPA, a determination on which will resolve the claims of Plaintiff and all other Class Members alike. *Miller*, 285 F.R.D. at 657.

### b. Class treatment is a superior method of adjudication.

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Where, as here, there are hundreds of thousands of potential class members with small claims resulting from a common issue, a class action is the most feasible mechanism for resolving the dispute. *See Nakkhumpun*, 2015 WL 6689399, at *6 (finding the predominance requirement "readily

met" where the case involved "hundreds, if not thousands," of potential class members "whose relatively small claims make it prohibitively expensive to seek recovery through individual litigation").

Further, there is no realistic alternative to a class action here: individual lawsuits by Class Members would be inefficient, and most members would find the cost of litigating individual claims to be prohibitive. *Cf. Rhodes*, 83 F. Supp. 3d at 1115 (class action satisfied superiority requirement individual plaintiffs had right to recover statutory damages because "the potential recovery for an individual plaintiff is unlikely to provide sufficient incentive for individual members to bring their own claims"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not [many] individual suits, but zero individual suits . . . ."). Class treatment, in contrast, provides an opportunity for an efficient and expeditious resolution.

Accordingly, this Court "will likely be able to" certify the class for purposes of judgment on the proposed Settlement under Rule 23(e).

**B.      The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate.**

Preliminary approval is appropriate where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2). Fed. R. Civ. P. 23(e). Specifically, Rule 23 requires district courts to consider whether:

> (A)  the class representatives and class counsel have adequately represented the class;
> (B)  the proposal was negotiated at arm's length;
> (C)  the relief provided for the class is adequate, taking into account:
>> (i)   the costs, risks, and delay of trial and appeal;
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including
      timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
  (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[2] The proposed Settlement satisfies the Rule 23(e) standard.

## 1. The Settlement Class has been vigorously represented

   Plaintiff's interests are aligned with the interests of the Class Members: they share identical objectives of establishing liability and obtaining damages. Plaintiff has cooperated fully with his counsel in representing the proposed Class, staying informed about the case, keeping in contact with counsel, and submitting information necessary for formal and informal discovery efforts. *See* Section IV.A.1.d, *supra*.

   Plaintiff's counsel, by the same token, have vigorously represented the Class for over a year and a half, and will continue to do so after preliminary and final approval of the Settlement. *See generally* Appx., pp. 65, 67–68, ¶¶ 9–11, 21 (Joint Decl.). Among other things, Class Counsel: (i) conducted a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) opposed Gaia's motion to dismiss; (iii) pursued formal discovery from Gaia; (iv) pursued third-party discovery from Meta; (v) gathered Plaintiff's documents and relevant information; (vi) prepared a detailed mediation statement; (vii) analyzed relevant informal discovery during mediation; (viii)

---

[2] These factors overlap with (and can be analyzed in tandem with) those developed in case law prior to the 2018 amendment. Courts in this Circuit still presume, for example, that a settlement is fair, reasonable, and adequate under Rule 23 if the settling parties establish that (1) "the proposed settlement was fair and honestly negotiated"; (2) "serious questions of law and fact exist that would place the ultimate outcome of the litigation in doubt"; (3) the "value of an immediate recovery outweighs possibility of future relief after protracted and expensive litigation"; and (4) the settlement is fair and reasonable in the parties' judgment. *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*, No. 1:22-CV-01176-RM-SBP, 2024 WL 1743497, at *7 (D. Colo. Apr. 23, 2024).

participated in mediation and extensive subsequent settlement discussions; and (ix) achieved a very favorable Settlement on behalf of the Settlement Class. Additionally, Class Counsel have no conflicts of interest with the Class. Accordingly, this factor weighs in favor of preliminary approval.

### 2. The Settlement was negotiated at arm's length after the exchange of informal discovery.

Where the parties to a class action reach a settlement with the assistance of a "professional, experienced mediator," there is a presumption that the settlement was reached without collusion and that the settlement agreement should be approved as fair, adequate, and reasonable. *Stanley*, 2024 WL 1743497, at *7 (quotations omitted).

Here, the parties engaged in a private mediation before Judge Segal, an experienced mediator, to assist them in reaching the proposed Settlement. They prepared detailed mediation statements before participating in a day-long mediation with Judge Segal. Appx., pp. 66, 68, ¶¶ 14, 21 (Joint Decl.). Only after months of additional, determined negotiations facilitated by Judge Segal did the parties reach an agreement in principle via a mediator's proposal. *Id.*, pp. 66–67, ¶¶ 14, 17. These efforts were unquestionably at arms' length and non-collusive. Moreover, the Settlement itself bears no indicia of collusion: attorneys' fees were *not* negotiated separately, there is *no* "clear sailing" provision, and under no circumstances will any amount of the Settlement Fund revert to Gaia.

Further, although formal discovery did not advance very far in this case, the parties informally exchanged information during the mediation. That information included direct communications between counsel regarding Gaia's data bearing on the merits of

Plaintiff's claims, the size of the class, and Gaia's ability to satisfy an adverse judgment. *Id.*, p. 66, ¶ 16. Plaintiff's counsel—attorneys with considerable experience in assessing the strengths and weaknesses of VPPA cases—came away from the mediation well informed about the strengths and risks the claims, as well as their value. *Id.*, p. 68, ¶ 23. This informal exchange supports the presumption that the Settlement Agreement should be approved as fair, adequate, and reasonable. *Diaz v. Lost Dog Pizza, LLC*, No. 17-CV-2228-WJM-NYW, 2019 WL 2189485, at *2 (D. Colo. May 21, 2019).

### 3. The Settlement provides meaningful relief to the class.

The Court should conclude that the proposed Settlement benefits are sufficiently robust to support notice to the Class. The $2 million Settlement Fund represents a significant monetary recovery. Initial data indicates that approximately 478,000 U.S.-based Gaia users accessed prerecorded videos on the Websites during the relevant time period. Appx., p. 66, ¶ 16 (Joint Decl.). Assuming 68% of those users also had Facebook accounts,[3] and that 5% of eligible Class Members will submit claims,[4] *pro rata* payments

---

[3] *See, e.g.*, Pew Research Center, *Social Media & News Fact Sheet* (November 15, 2023) (estimating that 68% of U.S. adults use Facebook), https://www.pewresearch.org/journalism/fact-sheet/social-media-and-news-fact-sheet/ (last accessed July 2, 2024).

[4] Plaintiff uses a 5% claims rate for illustrative purposes only. Actual claims rates in class settlements can vary widely depending on factors that are not easily predictable, including media reporting on the settlement, individual class members' reactions to the underlying cause of action, the size of the class, effectiveness of the notice program, the relative ease of submitting a claim, and the nature or amount of potential relief available to claimants. One analysis of 149 consumer class actions conducted by the FTC concluded that "[a]cross all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.*, cases weighted by the number of notice recipients) was 4%." *See* Fed. Trade Comm'n, *Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns* 11 (Sept. 2019), *available at* https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last accessed July 2, 2024).

from the Net Settlement Fund[5] would amount to approximately $77 to each claimant. That benefit alone would be substantial—and comparable to what plaintiffs recently have obtained in other VPPA cases. *See, e.g.*, *Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195-RGS (D. Mass. May 25, 2023), Dkt. 52 (Prelim. Approval Order) (assuming 10%–20% claims rate, estimating $22–$44 payment to each claimant); *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 18-md-02843 (N.D. Cal. July 11, 2023), Dkt. 1145 (Mot. for Final Approval) (preliminary estimate of $35 average payment to claimants for release of numerous claims, including under the VPPA).

In addition to monetary relief, the Settlement also includes valuable injunctive relief—namely, that Gaia will cease use of the Pixel (or otherwise obtain users' informed, written consent) to prevent further violations of the VPPA and its users' privacy. This is the same injunctive relief Plaintiff would have sought following trial. *See Lopez v. City of Santa Fe*, 206 F.R.D. 285, 292 (D.N.M. 2002) (finding value of immediate injunctive relief through settlement outweighed possibility of future relief where "[p]laintiffs could not have received a better resolution had there been protracted litigation"). Accordingly, the Settlement represents a very favorable result for Settlement Class Members, who will benefit from not only monetary relief but also forward-looking business practice changes.

The relief provided through the proposed Settlement is particularly significant considering the costs and risks of further litigation, the proposed method of distributing

---

[5] The Net Settlement Fund is the amount remaining for distribution to the Class after deducting administration expenses, any plaintiff service award ordered by the Court, and any award of attorneys' fees and costs ordered by the Court. Appx., p. 12, ¶ 1.18 (Settlement).

relief to the Class, the Settlement terms relating to attorneys' fees, and the absence of related agreements. *See* Fed. R. Civ. P. 23(e)(2)(i)–(iv).

***Risks of further litigation***. Although Plaintiff is confident in the strength of his claims, he nevertheless recognizes that this novel litigation is inherently risky. Claims applying the VPPA to operation of the Pixel are still relatively untested. Courts have denied motions to dismiss in substantially similar cases, but no Pixel-based VPPA case has yet proceeded to summary judgment, let alone trial. Assuming Plaintiff survived summary judgment—in which Gaia likely would raise many of the same arguments proffered in its initial motion to dismiss (*see* Dkt. 62)—Plaintiff would need to certify and maintain a class over Gaia's opposition. Plaintiff then would need to prevail at trial and secure an affirmance on appeal before recovering damages. Ultimately, continued litigation could add several more years before there is a resolution.

The Court's acceptance and approval of the Settlement is preferable in comparison to the continuation of lengthy and expensive litigation, which would only increase risk of a substantially lower recovery (or no recovery at all). This factor weighs in favor of preliminary approval of the Settlement.

***Proposed method of distributing relief***. As detailed below and in the accompanying Declaration of Steven Weisbrot (Appx., p. 111 ("Angeion Decl.")), Angeion has designed a detailed and comprehensive Notice Program that provides the best notice to Class Members that is practicable under the circumstances. *See* Section IV.C, *infra*. Importantly, the Settlement contemplates the use of a simple, straightforward Claim Form, designed to maximize the number of claims made. *See* Appx., p. 45 (Claim Form).

Settlement Class Members who submit an Approved Claim will automatically receive payment either by mailed check or by electronic means. *Id.*, p. 19 ¶ 2.1.2 (Settlement).

***Attorneys' fees***. Plaintiff's counsel may move for an award of reasonable attorneys' fees and reimbursement of their litigation expenses. Fed. R. Civ. P. 23(e)(2)(C)(iii). Specifically, in accordance with the Settlement terms, Plaintiff's counsel anticipate requesting that the Court award a total Fee Award, comprising both an award of attorneys' fees and reimbursement of expenses, not to exceed one-third of the common Settlement Fund for fees. Appx., pp. 11–12, 33–34 ¶¶ 1.15, 8.1 (Settlement). Such a request would be well within the range of approval. "Courts in this district have recognized that the customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class." *Aragon v. Clear Water Prod. LLC*, No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *5 (D. Colo. Dec. 18, 2018) (cleaned up; quotation omitted) (fee award between 32% and 33% of total settlement was "in line with the customary fees and awards in similar cases"); *see also Elston v. Horizon Glob. Americas, Inc.*, No. CV 19-2070-KHV, 2020 WL 6318660, at *7 (D. Kan. Oct. 28, 2020) (finding that a fee award of 38.6% of the common fund was reasonable, as it was "within the range of around one-third of the settlement fund").

Plaintiff's counsel also will apply for a service award of up to $2,000 to the Plaintiff, to compensate him for his efforts and commitment on behalf of the Settlement Class in his role as Class Representative. Appx., p. 34 ¶ 8.3 (Settlement). Plaintiff's counsel will file their fee application, which will provide additional support for any requested attorneys'

fees, reimbursement of litigation expenses, and service award, in accordance with the schedule to be set by the Court. *See* Section V, *infra*.

**Other agreements**. Pursuant to Rule 23(e)(3), there are no other agreements that would modify any term of the Settlement.

### 4.      The Settlement treats Class Members equitably.

The proposed Settlement establishes a common fund, from which payments will be made *pro rata* to Settlement Class Members who submit valid claims. The Settlement does not provide preferential treatment to Plaintiff or any segments of the proposed Settlement Class. The injunctive relief provided by the Settlement will equally benefit all members of the Settlement Class. This factor thus weighs in favor of preliminary approval.

### 5.      Plaintiff's counsel are highly experienced in similar litigation and their support of the Settlement is entitled to great weight.

Plaintiff's counsel have extensive experience litigating and settling complex consumer class actions throughout the country, including those concerning data privacy. *See* Appx., pp. 70–79, ¶¶ 30–53 (Joint Decl.). Based on their collective experience, Plaintiff's Counsel conclude that the Settlement provides exceptional results for the Class, while avoiding the costs, delays, and uncertainties of continued litigation. *Id.*, pp. 68–69, ¶¶ 23–26. Counsel's opinion is entitled to "great weight" and further supports a preliminary presumption of fairness. *O'Dowd*, 2019 WL 4279123, at *14 ("'[T]he recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight.'") (quoting *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997)).

**C.**     **The Proposed Notice Plan Should Be Approved.**

Before a proposed class settlement may be finally approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where seeking certification of a Rule 23(b)(3) settlement class, the notice must inform class members of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice program here (Appx., pp. 21–23 ¶ 4.1 (Settlement)) meets all applicable standards. The notice program includes direct notice to all Settlement Class Members via the e-mail they used to subscribe to or otherwise sign up for Gaia's services; the establishment of a Settlement Website where Settlement Class Members can view the Settlement, the long-form Class Notice, and other key case documents; and the establishment of a Toll-Free Number where Settlement Class Members can get additional information. *See id.*, pp. 117–120 ¶¶ 18–30 (Angeion Decl.). Moreover, the proposed forms of notice (*see id.*, pp. 49, 52 (Email Notice & Long Form Notice)) inform Settlement Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights, including all the information required by Rule 23(c)(2)(B). In addition, the claims form is efficient and streamlined, requiring only the minimal information necessary to confirm membership in the class and to direct financial payments to class members

and not requiring the submission of any supporting documents. *See id.*, p. 45 (Claims Form). The Court should approve the proposed notice program.

## V.    PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL

The next steps in the settlement approval process are to notify Settlement Class Members of the proposed Settlement, allow them an opportunity to exclude themselves or file comments or objections, and hold a final approval hearing. Plaintiff requests that the Court set the following schedule of events:

| Date | Event |
|------|-------|
| Last day for Gaia to provide Class List[6] to the Settlement Administrator | Fourteen (14) days after entry of Preliminary Approval Order |
| Last day for Settlement Administrator to complete distribution of notice to the Settlement Class (the "Notice Date") | Forty-five (45) days after entry of Preliminary Approval Order |
| Last day for Plaintiff and Class Counsel to file motion for final approval and motion for attorneys' fees, expenses, and service awards | Twenty-one (21) days after the Notice Date |
| Exclusion/Objection Deadline | Forty-five (45) days after the Notice Date |
| Last day for Plaintiff to file responses to any objections | Fourteen (14) days before Final Approval Hearing |
| Final Approval Hearing | [November 11, 2024] or on a date (at least 119 days after the Preliminary Approval Order) to be set by the Court |

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Preliminary Approval of the Settlement. A Proposed Order granting

---

[6] *See* Appx., pp. 21–22 ¶ 4.1.1 (Settlement).

preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted herewith.

Dated: July 8, 2024

Respectfully submitted,

*/s/ Shawn Kennedy*
Shawn M. Kennedy
HERRERA KENNEDY LLP
5900 S. Lake Forest Dr., Suite 300
McKinney, TX 75070
Telephone: (949) 936-0900
Email: skennedy@herrerakennedy.com

Nicomedes Sy Herrera
HERRERA KENNEDY LLP
5072 Annunciation Circle, Ste. 207
Ave Maria, FL 34142
Telephone: (510) 422-4700
Email: nherrera@herrerakennedy.com

*/s/ Christopher Cormier*
Christopher J. Cormier
BURNS CHAREST LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 577-3977
Email: ccormier@burnscharest.com

Hannah M. Crowe
BURNS CHAREST LLP
900 Jackson Street, Ste. 500
Dallas, TX 75202
Telephone: (469) 904-4550
Email: hcrowe@burnscharest.com

*/s/ Rachel Geman*
Rachel Geman
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Email: rgeman@lchb.com

Michael K. Sheen
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: msheen@lchb.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Shawn M. Kennedy, hereby certify that a copy of this Plaintiff's Unopposed

Motion for Preliminary Approval of Class Action Settlement and Memorandum In

Support Thereof was sent to counsel of record via the federal court's e-filing system.

Dated: July 8, 2024

/s/    *Shawn Kennedy*
Shawn M. Kennedy

HERRERA KENNEDY LLP
5900 S. Lake Forest Dr., Suite 300
McKinney, TX 75070
Telephone: (949) 936-0900
Email: skennedy@herrerakennedy.com