**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| CHRISTOPHER GUIDA, *on behalf of himself and all others similarly situated*, | Case No. 1:22-cv-02350-GPG-MEH |
| Plaintiffs, | |
| v. | Hon. Gordon P. Gallagher |
| GAIA, INC., | |
| Defendant. | |

<u>**PLAINTIFF'S APPENDIX OF EVIDENCE IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**</u>

Plaintiff Christopher Guida respectfully submits the following Appendix of Evidence in support of his Motion for Preliminary Approval of Class Action Settlement:

| APPENDIX EXHIBIT | BEGINNING PAGE NUMBER | DESCRIPTION |
|---|---|---|
| 1 | 4 | Settlement Agreement |
| 1.A | 45 | Claim Form |
| 1.B | 49 | Email Notice |
| 1.C | 52 | Long Form Notice |
| 2 | 61 | Joint Declaration of Class Counsel in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement |

| | | |
|---|---|---|
| 2.A | 80 | Firm Resume for Burns Charest LLP |
| 2.B | 85 | Firm Resume for Lieff Cabraser Heimann & Bernstein, LLP |
| 3 | 111 | Declaration of Steven Weisbrot, Esq. re: Angeion Group Qualifications & the Proposed Notice Plan |
| 3.A | 122 | Summary of Angeion Group's Judicial Recognition |

**CERTIFICATE OF SERVICE**

I, Shawn M. Kennedy, hereby certify that a copy of this Plaintiff's Appendix of

Evidence In Support of Motion for Preliminary Approval of Class Action Settlement was

sent to counsel of record via the federal court's e-filing system.


Dated:  July 8, 2024


*/s/     Shawn Kennedy*
Shawn M. Kennedy
HERRERA KENNEDY LLP
5900 S. Lake Forest Dr., Suite 300
McKinney, TX 75070
Telephone: (949) 936-0900

Email: skennedy@herrerakennedy.com

# APPENDIX EXHIBIT 1

# Settlement Agreement

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| |
|---|
| CHRISTOPHER GUIDA, *on behalf of himself and all others similarly situated*, |
| Plaintiffs, |
| v. |
| GAIA, INC., |
| Defendant. |

Case No. 1:22-cv-02350-GPG-MEH

Hon. Gordon P. Gallagher

## CLASS ACTION SETTLEMENT AGREEMENT

This Agreement ("Agreement" or "Settlement Agreement") is entered into by and among (i) Plaintiff Christopher Guida ("Plaintiff"), on behalf of himself and as a representative of the Settlement Class (as defined herein), and (ii) Defendant Gaia, Inc. ("Gaia" or "Defendant"). Plaintiff and Defendant are collectively referred to herein as the "Parties." This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Agreement, and subject to the final approval of the Court.

## RECITALS

1.      On September 12, 2022, Plaintiff filed his putative class action complaint against Gaia in the United States District Court for the District of Colorado alleging violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. (the "VPPA"). (Dkt. 1.) The material allegations of the complaint center on Defendant's alleged

disclosure of its subscribers' personally identifiable information to Facebook without consent.

2. On November 9, 2022, Gaia moved to dismiss the class action complaint under Rules 12(b)(1) and 12(b)(6) arguing, *inter alia*, that Plaintiff lacked standing, and the complaint failed to state a claim upon which relief could be granted. (Dkt. 20.) Plaintiff filed an opposition to Gaia's motion to dismiss on December 7, 2022. (Dkt. 24.) Gaia filed a reply in support of its motion to dismiss on December 21, 2022. (Dkt. 25.)

3. On August 18, 2023, the Parties sought a stay of the litigation for the purpose of engaging in formal mediation. (Dkt. 49.) The Court granted the Parties' joint request for a stay on August 19, 2023. (Dkt. 50.) The Court also ruled the motion to dismiss moot in light of the stay. (Dkt. 51.) On November 3, 2023, the Parties sought an extension of the stay (Dkt. 52), which the Court granted that same day. (Dkt. 53.) On December 22, 2023, the Parties sought a further extension of the stay (Dkt. 54), which the Court granted. (Dkt. 55.) On January 29, 2024, the Parties sought a further extension of the stay (Dkt. 56), which the Court granted. (Dkt. 57.) On February 28, 2024, the Court granted the Parties' request to lift the stay of discovery. (Dkt. 60.) On March 1, 2024, the Court granted the Parties' request to modify the Scheduling Order. (Dkt. 61.) On March 8, 2024, Defendant re-filed its motion to dismiss. (Dkt. 62.) Plaintiff re-filed his opposition on March 11, 2024 (Dkt. 63), and Defendant re-filed its reply on March 13, 2024. (Dkt. 66.)

4. From the outset of the case and including during the pendency of the motion to dismiss, the Parties engaged in direct communications, and as part of their obligations

under Fed. R. Civ. P. 26, discussed the prospect of resolution. Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before The Honorable Suzanne H. Segal, who is a former United States Magistrate Judge for the United States District Court for the Central District of California, and a neutral at Signature Resolution.

5.      The mediation took place on November 29, 2023. While the Parties engaged in good-faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day.

6.      Over the following weeks and months, the Parties engaged in additional rounds of arms' length negotiations facilitated by Judge Segal. On May 31, 2024, Judge Segal made a double-blind mediator's proposal for a full, class-wide settlement of the Action. On June 5, 2024, Judge Segal informed the Parties that they had both agreed to the mediator's proposal. Having reached agreement on all material terms of a class action settlement, the Parties thereafter executed a term sheet.

7.      At all times, Defendant has denied and continues to deny any wrongdoing whatsoever and has denied and continues to deny that it committed, or threatened or attempted to commit, any wrongful act or violation of law or duty alleged in the Action. Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendant has concluded it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement. This Agreement is a compromise, and the Agreement, any related documents, and any negotiations resulting in it shall not be construed as or deemed to

be evidence of or an admission or concession of liability or wrongdoing on the part of Defendant, or any of the Released Parties (defined below), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

8.     Plaintiff believes that the claims asserted in the Action against Defendant have merit and that he would have prevailed at summary judgment and/or trial. Nonetheless, Plaintiff and Class Counsel recognize that Defendant has raised factual and legal defenses that present a risk that Plaintiff may not prevail. Plaintiff and Class Counsel also recognize the expense and delay associated with continued prosecution of the Action against Defendant through class certification, summary judgment, trial, and any subsequent appeals. Plaintiff and Class Counsel have also taken into account the uncertain outcome and risks of litigation, especially in complex class actions, as well as the difficulties inherent in such litigation. Therefore, Plaintiff believes it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice. Based on their evaluation, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

9.     NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff, the Settlement Class, and Defendant, by and through its undersigned counsel that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, in consideration of the benefits flowing to the Parties from the Agreement set forth herein, that the Action and the Released Claims shall be

finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

## AGREEMENT

### 1. DEFINITIONS

As used in this Settlement Agreement, the following terms have the meanings specified below.

1.1.    **"Action"** means *Guida v. Gaia, Inc.*, Case No. 1:22-cv-02350-PAB-MEH, pending in the United States District Court for the District of Colorado.

1.2.    **"Approved Claim"** means a Claim Form submitted by a Settlement Class Member that: (a) is submitted timely and in accordance with the directions on the Claim Form and the provisions of the Settlement Agreement; (b) is fully and truthfully completed by a Settlement Class Member with all of the information requested in the Claim Form; (c) is signed by the Settlement Class Member, physically or electronically; and (d) is approved by the Settlement Administrator pursuant to the provisions of this Agreement.

1.3.    **"Claim Form"** means the document substantially in the form attached hereto as Exhibit A, as approved by the Court. The Claim Form, to be completed by Settlement Class Members who wish to file a Claim for a payment, shall be available in electronic and paper format in the manner described below.

1.4.    **"Claims Deadline"** means the date by which all Claim Forms must be postmarked or received to be considered timely and shall be set as a date no later than forty-five (45) days after entry of the Final Approval Hearing. The Claims Deadline shall

be clearly set forth in the Preliminary Approval Order as well as in the Notice and the Claim Form.

**1.5.** **"Class Counsel"** means Co-Lead Class Counsel Shawn Kennedy of Herrera Kennedy LLP, Christopher J. Cormier of Burns Charest LLP, and Rachel Geman of Lieff Cabraser Heimann & Bernstein LLP.

**1.6.** **"Class Period"** means the period from September 12, 2020, to and through the date of Preliminary Approval.

**1.7.** **"Class Representative"** means the named Plaintiff in this Action, Christopher Guida.

**1.8.** **"Court"** means the United States District Court for the District of Colorado, the Honorable Gordon P. Gallagher presiding, or any judge who shall succeed him as the Judge in this Action.

**1.9.** **"Defendant"** means Gaia, Inc. and its successors and assigns.

**1.10.** **"Defendant's Counsel"** means Thomas J. Krysa, Kelsey C. Boehm, and Stephanie Adamo of Foley & Lardner LLP.

**1.11.** **"Effective Date"** means the date on which the Final Judgment becomes Final.

**1.12.** **"Escrow Account"** means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to all Parties at a depository institution insured by the Federal Deposit Insurance Corporation. The Settlement Fund shall be deposited by Defendant into the Escrow Account in accordance with the terms of this Agreement and the money in the Escrow Account

shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. The costs of establishing and maintaining the Escrow Account shall be paid from the Settlement Fund. The Escrow Account shall be maintained by the Settlement Administrator.

**1.13.** "**Fee Award***" means the amount of attorneys' fees and reimbursement of expenses awarded by the Court to Class Counsel, which will be paid out of the Settlement Fund.

**1.14.** **"Final"** means one business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

**1.15.** **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the

Settlement Agreement, the Fee Award, and the incentive award to the Class

Representative.

**1.16. "Final Judgment"** means the order to be entered by the Court, after the

Final Approval Hearing, granting final approval of this Agreement.

**1.17. "Gaia's Websites"** means gaia.com and yogainternational.com.

**1.18. "Net Settlement Fund"** means the Settlement Fund less the following:

Settlement Administration Expenses; any taxes due on earnings on the Settlement

Fund, and any expenses related to the payment of such taxes; any Fee Award awarded

by the Court; any Service Award awarded by the Court; and any other Court-approved

deductions.

**1.19. "Notice"** means the notice of this proposed Class Action Settlement

Agreement and Final Approval Hearing, which is to be sent to the Settlement Class

substantially in the manner set forth in this Agreement, is consistent with the

requirements of Due Process, Rule 23, and is substantially in the form of Exhibits B and

C hereto.

**1.20. "Notice Date"** means the date by which the Notice set forth in Paragraph

4.1.2 is complete, which shall be no later than forty-five (45) days after Preliminary

Approval.

**1.21. "Objection/Exclusion Deadline"** means the date by which a written

objection to this Settlement Agreement or a request for exclusion submitted by a Person

within the Settlement Class must be made, which shall be designated as a date no later

than forty-five (45) days after the Notice Date and no sooner than fourteen (14) days

after papers supporting the Fee Award are filed with the Court and posted to the settlement website listed in Paragraph 4.1(d), or such other date as ordered by the Court.

**1.22.** **"Person"** shall mean, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns. "Person" is not intended to include any governmental agencies or governmental actors, including, without limitation, any state Attorney General office.

**1.23.** **"Plaintiff"** means Christopher Guida.

**1.24.** **"Preliminary Approval"** means the Court's certification of the Settlement Class for settlement purposes, preliminary approval of this Settlement Agreement, and approval of the form and manner of the Notice.

**1.25.** **"Preliminary Approval Order"** means the order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes, and directing notice thereof to the Settlement Class, which will be agreed upon by the Parties and submitted to the Court in conjunction with Plaintiff's motion for preliminary approval of the Agreement.

**1.26.** **"Released Claims"** means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities,  rights, causes of action, claims on contracts or agreements, extra

contractual claims, damages, penalties, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees, losses, or obligations, whether in law or in equity, accrued or un-accrued, direct, individual or representative, of every nature and description whatsoever (including "Unknown Claims," as defined below), whether based on the VPPA or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions, or failures to act regarding the alleged disclosure of the Settlement Class members' personally identifiable information and video viewing behavior to any third party, including all claims that were brought or could have been brought in the Action relating to the disclosure of such information belonging to any and all Releasing Parties. Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendant.

1.27. **"Released Parties"** means Defendant Gaia, Inc., as well as any and all of its respective present and past heirs, executors, estates, administrators, predecessors, successors, assigns,  parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial or other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

**1.28.** **"Releasing Parties"** means Plaintiff, those Settlement Class Members who do not timely opt out of the Settlement Class, and all of their respective present and past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial or other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

**1.29.** **"Service Award"** means any amount awarded by the Court to the Class Representative as a service award in recognition of his efforts and commitment on behalf of the Class, which will be paid out of the Settlement Fund.

**1.30.** **"Settlement Administration Expenses"** means the expenses incurred by the Settlement Administrator in providing Notice (including CAFA notice), processing claims, responding to inquiries from members of the Settlement Class, and, if necessary, mailing Notices and/or checks for Approved Claims, and related services.

**1.31.** **"Settlement Administrator"** means a reputable administration company that has been selected by the Parties and approved by the Court to oversee the distribution of Notice, as well as the processing and payment of Approved Claims to the Settlement Class as set forth in this Agreement.

**1.32.** **"Settlement Amount"** means Two Million Dollars and Zero Cents ($2,000,000.00) in cash.

**1.33.** **"Settlement Class"** means all individuals residing in the United States who, during the Class Period, subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites while they had a Facebook account. Excluded from the Settlement Class are (1) any judge presiding over this Action and members of their families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons.

**1.34.** **"Settlement Class Member"** means a Person who falls within the definition of the Settlement Class as set forth above and who has not submitted a valid request for exclusion.

**1.35.** **"Settlement Fund"** means the non-reversionary cash fund that shall be established by or on behalf of Defendant in the Settlement Amount, to be deposited into the Escrow Account, according to the schedule set forth herein, plus all interest earned thereon. The Settlement Fund shall be at all times a "qualified settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended. The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the above-listed payments are made. The Settlement Fund includes all interest that shall accrue on the

sums deposited in the Escrow Account. The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund Account or otherwise, including any taxes or tax detriments that may be imposed upon the Class Representative, Class Counsel, Defendant, or Defendant's Counsel with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for purposes of federal or state income taxes or otherwise, shall be paid out of the Settlement Fund. Neither the Class Representative, Class Counsel, Defendant, nor Defendant's Counsel shall have any liability or responsibility for any taxes arising with respect to the Settlement Fund. The Settlement Fund represents the total extent of Defendant's monetary obligations under this Agreement. In no event shall Defendant's total monetary obligation with respect to this Agreement exceed or be less than the Settlement Amount.

1.36. **"Unknown Claims"** means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement. Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent

permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

## 2. SETTLEMENT RELIEF

### 2.1. Payments to Settlement Class Members.

**2.1.1.** Defendant shall pay or cause to be paid into the Escrow Account the Settlement Amount, as specified in Paragraph 1.32 of this Agreement, no later than 15 days after the Court issues a Final Order of Approval and Judgment. Notwithstanding the foregoing, Defendant shall pay or cause to be paid into the Escrow Amount on a timely basis such portions of the Settlement Amount as may be requested by the Settlement Administrator to pay for Settlement Administration Expenses.

**2.1.2.**  Settlement Class Members shall have until the Claims Deadline to submit an Approved Claim. The Settlement Administrator shall pay a *pro rata* portion of the Net Settlement Fund for all Approved Claims through payment (a) by check via first class U.S. mail; or (b) by electronic means, upon election of the Settlement Class Member, which the Parties agree to make available as alternative payment options. Payments to all Settlement Class Members with Approved Claims shall be made within ninety (90) days after the Effective Date.

**2.1.3.**  To the extent that any checks issued to a Settlement Class Member are not cashed or electronic payments are not accepted within the time specified by the Settlement Administrator, such unclaimed funds shall be redistributed on a *pro rata* basis (after first deducting any necessary settlement administration expenses from such uncashed check funds) to all Settlement Class Members who cashed checks or received electronic payments during the initial distribution, but only to the extent each Settlement Class Member would receive at least $5.00 in any such secondary distribution and if otherwise feasible. To the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible, any uncashed check funds shall, subject to Court approval, revert to a non-sectarian and/or not-for-profit organization recommended by Class Counsel and approved by the Court.

**2.1.4.**  Upon payment of the Settlement Fund into the Escrow Account, all risk of loss with respect to the cash portion of the Settlement shall pass to the Escrow

Account, and any and all remaining interest or right of Defendant in or to the Escrow Account, if any, shall be extinguished.

      **2.2.**   **Prospective Relief**. Gaia, within 45 days of the Preliminary Approval Order, but in no event later than the date of the Final Approval Order and Judgment, will suspend operation of the Facebook Tracking Pixel on any pages on Gaia's Websites that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA were to be: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the Tenth Circuit Court of Appeals. Nothing about this provision prevents Gaia from seeking to obtain VPPA-compliant consent in the future should it wish to reinstitute use of the Facebook Tracking Pixel. Likewise nothing herein shall prohibit the use of the Facebook Tracking Pixel where the disclosure of information to Facebook does not identify specific video materials that a user has requested or obtained, or otherwise where use of the Facebook Tracking Pixel is done in compliance with the VPPA.

## 3. RELEASE.

      **3.1.**   The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

      **3.2.**   Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the

Released Parties, and each of them.  Further, upon the Effective Date, and to the fullest

extent permitted by law, each Settlement Class Member, shall, either directly, indirectly,

representatively, or in any capacity, be permanently barred and enjoined from filing,

commencing, prosecuting, intervening in, or participating (as a class member or

otherwise) in any lawsuit, action, or other proceeding in any jurisdiction (other than

participation in the Settlement as provided herein) against any Released Party based on

the Released Claims.

## 4. NOTICE TO THE CLASS.

**4.1.** The Notice Plan shall consist of the following:

**4.1.1.** *Settlement Class List*. No later than fourteen (14) days after

Preliminary Approval, Defendant shall produce an electronic list from its records that

includes the names and, to the extent available, email addresses belonging to Persons

within the Settlement Class (the "Class List"). Defendant represents that the Class List

shall identify subscribers to Gaia's Websites, or other individuals that otherwise signed

up for Gaia's services, that also viewed prerecorded or on-demand content during the

Class Period. Class Counsel's assent to this Agreement shall constitute consent on

behalf of the Settlement Class to disclose this information, consistent with the written

consent provisions of the VPPA. The Class List shall be provided to the Settlement

Administrator with a copy to Class Counsel. Class Counsel shall not use the Class List,

or any information contained within it, for any other purposes other than administering

the settlement, and shall take reasonable measures to protect the information from any

third-party disclosure. Class Counsel may not send advertisements, solicitations, or

communications to the Settlement Class to solicit Settlement Class members to retain Class Counsel for any other matters or disputes.

4.1.2. *Direct Notice.* In the event that the Court preliminarily approves the Settlement, no later than the Notice Date, the Settlement Administrator shall send Notice via email substantially in the form attached as Exhibit B, along with an electronic link to the Claim Form, to all Settlement Class Members for whom a valid email address is available in the Class List. In the event transmission of email notice results in any "bounce-backs," the Settlement Administrator shall, where reasonable, correct any issues that may have caused the "bounce-back" to occur and make a second attempt to re-send the email notice.

4.1.3. *Reminder Notice*. At the election of Class Counsel, and at least seven (7) days prior to the Claims Deadline, the Settlement Administrator may, on one to two occasions, send Notice via email substantially in the form attached as Exhibit B (with minor, non-material modifications to indicate that it is a reminder email rather than an initial notice), along with an electronic link to the Claim Form, to all Settlement Class Members for whom a valid email address is available in the Class List.

4.1.4. *Settlement Website.* By no later than the Notice Date, Notice shall be provided on a website at www.GaiaVPPASettlement.com which shall be administered and maintained by the Settlement Administrator and shall include the ability to file Claim Forms online. The Notice provided on the Settlement Website shall be substantially in the form of Exhibit C hereto.

**4.1.5.** *CAFA Notice.* Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, the Settlement Administrator shall cause to be served upon the Attorneys General of each U.S. State in which Settlement Class members reside, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law.

**4.1.6.** *Contact from Class Counsel.* Class Counsel, in their capacity as counsel to Settlement Class Members, may from time to time contact Settlement Class Members to provide information about the Settlement Agreement and to answer any questions Settlement Class Members may have about the Settlement Agreement.

**4.2.** The Notice shall advise the Settlement Class of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or any of its terms. The Notice shall specify that any objection to the Settlement Agreement, and any papers submitted in support of said objection, shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making the objection files notice of an intention to do so and at the same time (a) files copies of such papers he or she proposes to be submitted at the Final Approval Hearing with the Clerk of the Court, or alternatively, if the objection is from a Class Member represented by counsel, files any objection through the Court's CM/ECF system, and (b) sends copies of such papers by mail, hand, or overnight delivery service to Class Counsel and Defendant's Counsel.

**4.3.**    Any Settlement Class Member who intends to object to this Agreement must present the objection in writing, which must be personally signed by the objector, and must include: (1) the objector's name and address; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member, including information sufficient to identify the objector's current Facebook page or a screenshot showing that such objector was a Facebook member during the class period; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection (the "Objecting Attorneys"); (5) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules); and (6) the objector's handwritten or electronically imaged written signature. So-called "mass" or "class" objections shall not be allowed.

**4.4.**    If a Settlement Class Member or any of the Objecting Attorneys has objected to any class action settlement where the objector or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption and amount of payment received. Any challenge to the Settlement Agreement or the Final Judgment shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**4.5.** A Settlement Class Member may request to be excluded from the Settlement Class by sending a written request postmarked on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice. To exercise the right to be excluded, a Person in the Settlement Class must timely send a written request for exclusion to the Settlement Administrator as specified in the Notice, providing his/her name and address, a signature, the name and number of the case, and a statement that he or she wishes to be excluded from the Settlement Class for purposes of this Settlement. A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person(s) serving such a request shall be a member(s) of the Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if approved. Any member of the Settlement Class who validly elects to be excluded from this Agreement shall not: (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement. The request for exclusion must be personally signed by the Person requesting exclusion. So-called "mass" or "class" opt-outs shall not be allowed. To be valid, a request for exclusion must be postmarked or received by the date specified in the Notice.

**4.6.** The Final Approval Hearing shall be no earlier than ninety (90) days after the Notice described in Paragraph 4.2 is provided.

**4.7.** Any Settlement Class Member who does not, using the procedures set forth in this Agreement and the Notice, seek exclusion from the Settlement Class will be bound by all of the terms of this Agreement, including the terms of the Final Judgment to be entered in the Action and the Releases provided for in the Agreement, and will be barred from bringing any action against any of the Released Parties concerning the Released Claims.

## 5. SETTLEMENT ADMINISTRATION.

**5.1.** The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement by processing Claim Forms in a rational, responsive, cost effective, and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with information concerning Notice, administration, and implementation of the Settlement Agreement. Should the Court request, the Parties shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts from the Settlement Fund paid to Settlement Class Members on account of Approved Claims. Without limiting the foregoing, the Settlement Administrator shall:

**5.1.1.** Forward to Defendant's Counsel, with copies to Class Counsel, all original documents and other materials received in connection with the administration of the Settlement, and all copies thereof, within thirty (30) days after the date on which all Claim Forms have been finally approved or disallowed in accordance with the terms of this Agreement;

**5.1.2.** Receive requests to be excluded from the Settlement Class and other requests and promptly provide to Class Counsel and Defendant's Counsel copies thereof. If the Settlement Administrator receives any exclusion forms or other requests after the deadline for the submission of such forms and requests, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

**5.1.3.** Provide weekly reports to Class Counsel and Defendant's Counsel, including without limitation, reports regarding the number of Claim Forms received, the number approved by the Settlement Administrator, and the categorization and description of Claim Forms rejected, in whole or in part, by the Settlement Administrator; and

**5.1.4.** Make available for inspection by Class Counsel or Defendant's Counsel the Claim Forms received by the Settlement Administrator at any time upon reasonable notice.

**5.2.** The Settlement Administrator shall be obliged to employ reasonable procedures to screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or fraud. The Settlement Administrator will reject any claim that does

not comply in any material respect with the instructions on the Claim Form or the terms of Paragraphs 1.2 and/or 1.3, above, or is submitted after the Claims Deadline. Each claimant who submits an invalid Claim Form to the Settlement Administrator must be given a notice of the Claim Form's deficiency and an opportunity to cure the deficiency within twenty-one (21) days of the date of the notice. The Settlement Administrator may contact any Person who has submitted a Claim Form to obtain additional information necessary to verify the Claim Form.

 **5.3.** Defendant's Counsel and Class Counsel shall have the right to challenge the acceptance or rejection of a Claim Form submitted by Settlement Class Members and to obtain and review supporting documentation relating to such Claim Form. The Settlement Administrator shall follow any agreed decisions of Class Counsel and Defendant's Counsel as to the validity of any disputed submitted Claim Form. To the extent Class Counsel and Defendant's Counsel are not able to agree on the disposition of a challenge, the disputed claim shall be submitted to The Honorable Suzanne H. Segal of Signature Resolution for binding determination.

 **5.4.** In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

## 6. TERMINATION OF SETTLEMENT.

 **6.1.** Subject to Paragraphs 6.2-6.4 below, Defendant or the Class Representative on behalf of the Settlement Class, shall have the right to terminate this Agreement by providing written notice of the election to do so ("Termination Notice") to

all other Parties hereto within twenty-one (21) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (v) the date upon which an Alternative Judgment, as defined in Paragraph 9.1.4 of this Agreement is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

**6.2.**    Subject to Paragraph 6.3 below, Defendant shall have the right, but not the obligation, in its sole discretion, to terminate this Agreement by providing written notice to Class Counsel within twenty-five (25) days of the following events: (i) more than 100 individuals of the Settlement Class in total have timely and validly opted out of and/or objected to the Agreement; or (ii) the Class Representative and his agents, or any other individuals operating at his direction or in coordination with him, or Class Counsel, file or threaten to file any arbitrations or additional lawsuits against Defendant related to the Released Claims at any time prior to final approval.

**6.3.**    If Defendant seeks to terminate the Agreement on the basis of Paragraph 6.2 above, the Parties agree that any dispute as to whether Defendant may invoke Paragraph 6.2 to terminate the Agreement that they cannot resolve on their own after reasonable, good faith efforts, will be submitted to the Honorable Suzanne H. Segal of Signature Resolution for binding determination.

**6.4.** The Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees payment to Class Counsel and/or the incentive award set forth in Paragraph 8 below shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination. The procedures for any application for approval of attorneys' fees, expenses, or Incentive Awards are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement.

## 7. PRELIMINARY APPROVAL ORDER AND FINAL JUDGMENT.

**7.1.** Within fourteen (14) days after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for Preliminary Approval of the settlement set forth in this Agreement; certification of the Settlement Class for settlement purposes only; appointment of Class Counsel and the Class Representative; and entry of a Preliminary Approval Order, which order shall set a Final Approval Hearing date and approve the Notice and Claim Form for dissemination substantially in the form of Exhibits A, B, and C hereto. The Preliminary Approval Order shall also authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to this Agreement) so long as they are consistent in all material respects with the terms of the Settlement Agreement and do not limit or impair the rights of the Settlement Class.

**7.2.** Defendant's agreement as to certification of the Settlement Class is solely for purposes of effectuating the Settlement and no other purpose. Defendant retains all of its objections, arguments, and defenses with respect to class certification and any other issue, and reserves all rights to contest class certification and any other issue if the Settlement set out in this Agreement does not result in entry of the Final Judgment, if the Court's approval is reversed or vacated on appeal, if this Settlement is terminated as provided herein, or if the Settlement set forth in this Settlement otherwise fails to become effective. The Parties acknowledges that there has been no stipulation to any classes or certification of any classes for any purpose other than effectuating the Settlement, and that if the Settlement set forth in this Settlement Agreement is not finally approved, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the Settlement set forth in this Settlement Agreement otherwise fails to become effective, this agreement as to certification of the Settlement Class becomes null and void *ab initio*, and this Settlement Agreement or any other settlement-related statement may not be cited regarding certification of the Class, or in support of an argument for certifying any class for any purpose related to this Action or any other proceeding.

**7.3.** At the time of the submission of this Agreement to the Court as described above, Class Counsel shall request that, after Notice is given, the Court hold a Final Approval Hearing and approve the settlement of the Action as set forth herein.

**7.4.** After Notice is given, the Parties shall request and seek to obtain from the Court a Final Judgment, which will (among other things):

**7.4.1.**  find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Agreement, including all exhibits thereto;

**7.4.2.**  approve the Settlement Agreement and the proposed settlement as fair, reasonable, and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and Releasing Parties;

**7.4.3.**  find that the Notice implemented pursuant to the Agreement (1) constitutes the best practicable notice under the circumstances; (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object to or exclude themselves from the proposed Agreement, and to appear at the Final Approval Hearing; (3) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

**7.4.4.**  find that the Class Representatives and Class Counsel adequately represent the Settlement Class for purposes of entering into and implementing the Agreement;

**7.4.5.** dismiss the Action (including all individual claims and Settlement Class Claims presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement;

**7.4.6.** incorporate the Release set forth above, make the Release effective as of the date of the Effective Date, and forever discharge the Released Parties as set forth herein;

**7.4.7.** permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the respective Settlement Class from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

**7.4.8.** without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

**7.4.9.** incorporate any other provisions, as the Court deems necessary and just.

## 8. FEE AND SERVICE AWARDS

**8.1.** Pursuant to Fed. R. Civ. P. 23(h), Defendant agrees that Class Counsel shall be entitled to an award of reasonable attorneys' fees and costs out of the Settlement Fund in an amount determined by the Court as the Fee Award. Plaintiff will file a motion with the Court prior to the Final Approval Hearing requesting a Fee Award

not to exceed one-third of the Settlement Fund. Payment of the Fee Award shall be made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund for distribution to eligible Settlement Class Members.

**8.2.** The Fee Award shall be paid from the Settlement Fund within ten (10) days after entry of the Court's Final Judgment, notwithstanding the existence of any timely filed objections or potential for appeal therefrom, or collateral attack on the settlement or any part hereof. Notwithstanding the foregoing, if for any reason the Final Judgment is reversed or rendered void as a result of appeal(s) then Class Counsel shall return such funds to the Settlement Fund.

**8.3.** Class Counsel may file a motion for Court approval of a Service Award for the Class Representative, to be paid from the Settlement Fund, in addition to any funds the Class Representative stands to otherwise receive from the Settlement. With no consideration having been given or received, Defendant agrees not to object to a request for service awards to the Class Representative of up to $2,000.00. Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund for distribution to eligible Settlement Class Members.

**8.4.** The Service Award shall be paid from the Settlement Fund (in the form of a check to the Class Representative that is sent care of Class Counsel), within thirty (30) days after the Effective Date.

**8.5.** The Parties agree that the effectiveness of this Settlement Agreement does not require and is not conditioned upon the Court's approval of a Fee Award and/or a Service Award. No decision by the Court, or modification, reversal, or appeal of any decision by the Court, concerning the payment of a Fee Award and/or a Service Award shall be grounds for cancellation or termination of this Settlement Agreement.

**9. CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.**

**9.1.** The Effective Date of this Settlement Agreement shall not occur unless and until each of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

**9.1.1.** The Parties and their counsel have executed this Agreement;

**9.1.2.** The Court has entered the Preliminary Approval Order;

**9.1.3.** The Court has entered an order finally approving the Agreement, following Notice to the Settlement Class and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment consistent with this Agreement in all material respects; and

**9.1.4.** The Final Judgment has become Final, as defined above, or, in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and that has the consent of the Parties, such Alternative Judgment becomes Final.

**9.2.** If some or all of the conditions specified in Paragraph 9.1 are not met, or in the event that this Agreement is not approved by the Court, or the settlement set forth

in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 6.1 unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement. If any Party is in material breach of the terms hereof and fails to cure such material breach within 30 days of notice, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement upon notice to all of the Settling Parties.

9.3.     If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1 and 9.1-9.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement. In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into.

10. MISCELLANEOUS PROVISIONS.

10.1.   The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement, to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement, to secure final approval, and to defend the Final Judgment through any and all appeals. Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking

Court approval of the Settlement Agreement, entry of the Preliminary Approval Order, and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

**10.2.**   The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff, the Settlement Class and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiff or defended by Defendant, or each or any of them, in bad faith or on a frivolous basis.

**10.3.**   The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released. The Parties have read and understand fully the above and foregoing agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

**10.4.**   Whether or not the Effective Date occurs, or the Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:

**10.4.1.**       is, may be deemed, or shall be used, offered, or received against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by the

Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the Settlement Amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

    **10.4.2.**  is, may be deemed, or shall be used, offered, or received against Defendant, as an admission, concession or evidence of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

    **10.4.3.**  is, may be deemed, or shall be used, offered, or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault, or wrongdoing as against any Released Parties, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement. Further, if this Settlement Agreement is approved by the Court, any Party or any of the Released Parties may file this Agreement and/or the Final Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

**10.4.4.** is, may be deemed, or shall be construed against Plaintiff, the Settlement Class, the Releasing Parties, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

**10.4.5.** is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiff, the Settlement Class, the Releasing Parties, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

**10.5.** The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

**10.6.** The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

**10.7.** All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

**10.8.** This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been

made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.9.   Except as otherwise provided herein, each Party shall bear its own costs.

10.10. Plaintiff represents and warrants that he has not assigned any claim or right or interest therein as against the Released Parties to any other Person or Party and that he is fully entitled to release the same.

10.11. Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms. Class Counsel in particular warrants that they are authorized to execute this Settlement Agreement on behalf of Plaintiff and the Settlement Class (subject to final approval by the Court after notice to all Settlement Class Members), and that all actions necessary for the execution of this Settlement Agreement have been taken.

10.12. This Agreement may be executed in one or more counterparts. Signature by digital means, facsimile, or in PDF format will constitute sufficient execution of this Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

**10.13.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

**10.14.** The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

**10.15.** This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Colorado.

**10.16.** This Agreement is deemed to have been prepared by counsel for all Parties, as a result of arms' length negotiations among the Parties. Because all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

**10.17.** Where this Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel: Shawn M. Kennedy, Herrera Kennedy LLP, 5900 S. Lake Forest Dr., Suite 300, McKinney, TX 75070; Christopher J. Cormier, Burns Charest LLP, 4725 Wisconsin Avenue, NW, Suite 200, Washington, DC 20016; Rachel J. Geman, Lieff Cabraser Heimann & Bernstein LLP, 250 Hudson Street, 8th Floor, New York, NY 10013; Thomas J. Krysa, Foley & Lardner LLP, 1400 16th Street, Ste. 200, Denver, Colorado 80202.

**10.18.** Plaintiff and/or Class Counsel shall not, at any time, issue press releases or make other public statements regarding the Settlement or the Action (apart from filings with the Court as necessary to obtain Preliminary or Final Approval of the

Settlement) unless Defendant agrees to such press releases or public statements in advance; provided that Class Counsel may post Court orders regarding the Action and brief summaries of those orders on their website(s) without permission from Defendant, so long as any reference in such order(s) to materials subject to any confidentiality obligations are properly redacted. This provision shall not prohibit Class Counsel from communicating with any person in the Settlement Class regarding the Settlement (subject to compliance with any and all applicable confidentiality obligations).

[*Signature pages follow.*]

**IT IS SO AGREED TO BY THE PARTIES**:

Dated:  July 3, 2024                           Respectfully submitted,

GAIA, INC.

Thomas J. Krysa

Thomas J. Krysa
Kelsey C. Boehm
Stephanie Adamo
Foley & Lardner LLP
1400 16th Street, Ste. 200
Denver, Colorado 80202
Tel: (720) 437-2027
tkrysa@foley.com
kboehm@foley.com
sadamo@foley.com

Todd A. Murray
Foley & Lardner LLP
2021 McKinney Avenue, Ste. 1600
Dallas, TX 75201
Tel: (214) 999-3000
tmurray@foley.com

Eileen R. Ridley
Foley & Lardner LLP
555 California Street, Ste. 1700
San Francisco, CA 94104
Tel: (415) 438-6469
eridley@foley.com

*Counsel for Defendant*

**PLAINTIFF CHRISTOPHER GUIDA**

DocuSigned by:

_Shawn M. Kennedy_
1292C79A8EB140E...
Shawn M. Kennedy

Shawn M. Kennedy
HERRERA KENNEDY LLP
5900 S. Lake Forest Dr., Suite 300
McKinney, TX 75070
Telephone: (949) 936-0900
Email: skennedy@herrerakennedy.com

DocuSigned by:

799B689B455B44F...
Christopher J. Cormier

Christopher J. Cormier
BURNS CHAREST LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 577-3977
Email: ccormier@burnscharest.com

DocuSigned by:

2A0A5634B1C848C...
Rachel Geman

Rachel Geman
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Email: rgeman@lchb.com

*Proposed Co-Lead Counsel for Plaintiff and the Class*

# EXHIBIT A
## Claim Form

## GENERAL INSTRUCTIONS

You are eligible to submit a Claim Form if you are a Settlement Class Member.

The **Settlement Class** includes all individuals residing in the United States who, from September 12, 2020, to and through the date of Preliminary Approval, subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites (gaia.com and yogainternational.com) while they had a Facebook account.

**Excluded** from the Settlement Class are (1) any judge presiding over this Action and members of their families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons.

## SETTLEMENT CLASS MEMBER BENEFITS

If approved by the Court, Gaia will create a Settlement Fund of **$2,000,000** for the benefit of the Settlement Class. The Settlement Fund will be distributed to Settlement Class Members who file a timely and complete claim on a *pro rata* basis (meaning equal share), after deducting Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions.

## SUBMITTING YOUR CLAIM FORM

To submit a Claim for payment, you may submit a Claim Form:
  (1) **Online**: visit www.GaiaVPPASettlement.com to submit a Claim Form online no later than **DEADLINE**; *OR*.
  (2) **By mail**: print, complete, and submit this Claim Form by mail so it is postmarked no later than **DEADLINE** and sent to Gaia VPPA Settlement Administrator, Attn: Claim Submissions, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

*Guida v. Gaia, Inc.*
Case No. 1:22-cv-02350-GPG-MEH
United States District Court for the District of Colorado
**GAIA VPPA SETTLEMENT CLAIM FORM**

**GAIA-CLAIM**

---

| **I.    CLAIMANT CONTACT INFORMATION** |
|---|

Provide your contact information below. It is your responsibility to notify the Settlement Admininstrator of any changes to your contact information after the submission of your Claim Form.

**First Name**                                    **Last Name**

**Street Address**

**City**                                    **State**                    **Zip Code**

**Email Address**                    **Phone Number**                    **Notice ID Number**

| **II.    PAYMENT SELECTION** |
|---|

Please select **one** of the following payment options:

☐ **Prepaid Mastercard**
Enter the email address you want the Prepaid Mastercard sent to: _____

☐ **Venmo**
Enter the mobile number associated with your Venmo account: _____

☐ **PayPal**
Enter the email address associated with your PayPal account: _____

☐ **Zelle**
Enter the email address or phone number associated with your Zelle account: _____

☐ **Check (**Payment will be mailed to the address provided in Section I above)

| **III.    CERTIFICATION & SIGNATURE** |
|---|

**By signing below and submitting this Claim Form, I hereby certify that:**

(1)  At least once between September 12, 2020, to and through the date of Preliminary Approval:

   (a)  I subscribed or otherwise signed up for access to Gaia's services;

   (b)  I requested or obtained one or more prerecorded (including on-demand replay) videos available on Gaia's Websites (gaia.com and yogainternational.com); and

   (c)  I had a Facebook account at the time I requested or obtained such prerecorded video(s).

47

**Your claim must be submitted online or <u>postmarked by</u>: [DEADLINE]**

*Guida v. Gaia, Inc.*
Case No. 1:22-cv-02350-GPG-MEH
United States District Court for the District of Colorado
**GAIA VPPA SETTLEMENT CLAIM FORM**

**GAIA-CLAIM**

(2)  The information I provided on this Claim Form is true and correct to the best of my knowledge, and this is the only claim I will submit in connection with this Settlement. I understand the Settlement Administrator may contact me to request further verification of the information provided in this Claim Form.

**Signature:** _____ **Printed Name:** _____ **Date:** _____

# EXHIBIT B
# Email Notice

**TO:**    «Class Member Email»
**FROM:**  Settlement Administrator
**RE:**    Legal Notice of Class Action Settlement – Gaia VPPA Settlement

**Notice ID:** «Notice ID»
**Confirmation Code:** «Confirmation Code»

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Guida v. Gaia, Inc.*, Case No. 1:22-cv-02350-GPG-MEH
United States District Court for the District of Colorado

*A court authorized this notice. You are <u>not</u> being sued. This is <u>not</u> a solicitation from a lawyer.*

**You May Be Entitled to a Payment from a Class Action Settlement**
**because you subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites (gaia.com and yogainternational.com) while you had a Facebook account.**

**Claims Forms Must be Submitted no Later Than <mark>DEADLINE</mark>.**

**I WANT TO SUBMIT MY CLAIM**

This notice is to inform you that a settlement has been reached in a class action lawsuit claiming that Defendant Gaia, Inc. ("Gaia") disclosed the personally identifiable information (consisting of a subscriber's Facebook ID and the titles of videos the subscriber viewed) of its subscribers to Facebook, without their consent, in violation of the Video Privacy Protection Act (the "VPPA"). Gaia denies that it violated any law but has agreed to the settlement to avoid the uncertainties and expenses associated with continuing the case.

### Am I a Settlement Class Member?

Records indicate you may be a Settlement Class Member. The Settlement Class includes all individuals residing in the United States who, from September 12, 2020, to and through <mark>the date of Preliminary Approval</mark>, subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites (gaia.com and yogainternational.com) while they had a Facebook account.

### What are the Settlement Benefits?

If approved by the Court, Gaia will create a Settlement Fund of **$2,000,000** for the benefit of the Settlement Class. The Settlement Fund will be distributed to Settlement Class Members who file a timely and complete claim on a *pro rata* basis (meaning equal share), after deducting Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions.

The Settlement also requires Gaia to suspend operation of the Facebook Tracking Pixel on any pages on Gaia's Websites that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA were to be: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or

50

the Tenth Circuit Court of Appeals.

## How Do I Get a Payment?

Visit www.GaiaVPPASettlement.com to submit your claim online or to download a Claim Form to complete and submit by mail. Your Claim Form must be submitted online or mailed with a postmark date no later than DEADLINE.

## What are My Other Options?

You may exclude yourself from the Settlement Class by sending a written request to the Settlement Administrator postmarked no later than DEADLINE. If you exclude yourself, you cannot receive a settlement payment, but you will keep any rights you may have to sue Gaia regarding the issues in the lawsuit.

You may object to the proposed settlement, and you and/or your lawyer have the right to appear before the Court. Your written objection must be filed with the Court with copies sent to Class Counsel and Defendant's Counsel no later than DEADLINE.

Specific instructions about how to exclude yourself from, or object to, the Settlement are available at www.GaiaVPPASettlement.com. If you file a claim, submit an objection, or do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims against Gaia relating to issues in this case will be released.

## Who Represents Me?

The Court has appointed lawyers Shawn M. Kennedy of Herrera Kennedy LLP, Christopher J. Cormier of Burns Charest LLP, and Rachel Geman of Lieff Cabraser Heimann & Bernstein LLP, to represent the Settlement Class. These lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

## The Court's Final Approval Hearing

The Court will hold the Final Approval Hearing at TIME on DATE in Courtroom XX at the Wayne Aspinall Federal Building, 400 Rood Avenue, Grand Junction, CO 81501. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class; to consider the Class Counsel's request for attorneys' fees and expenses; and to consider the request for a Service Award to the Class Representative. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

## How Do I Get More Information?

For more information, including the full Notice, Claim Form, and the Class Action Settlement Agreement, visit www.GaiaVPPASettlement.com, contact the Settlement Administrator:
Mail: Gaia VPPA Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103
Email: info@GaiaVPPASettlement.com
Toll-Free: 1-XXX-XXX-XXXX

*Unsubscribe*

# EXHIBIT C
# Long Form Notice

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Guida v. Gaia, Inc.*, Case No. 1:22-cv-02350-GPG-MEH

United States District Court for the District of Colorado

*A court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

### You May Be Entitled to a Payment from a Class Action Settlement because you subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites (gaia.com and yogainternational.com) while you had a Facebook account.

## Claims Forms Must be Submitted no Later Than DEADLINE.

- A settlement has been reached in a class action lawsuit claiming that Defendant Gaia, Inc. ("Gaia") disclosed the personally identifiable information of its subscribers (consisting of a subscriber's Facebook ID and the titles of videos the subscriber viewed) to Facebook, without their consent, in violation of the Video Privacy Protection Act (the "VPPA"). Gaia denies that it violated any law but has agreed to the settlement to avoid the uncertainties and expenses associated with continuing the case.

- The Settlement Class includes all individuals residing in the United States who, from September 12, 2020, to and through the date of Preliminary Approval, subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites (gaia.com and yogainternational.com) while they had a Facebook account.

- Individuals included in the Settlement will be eligible to receive a cash payment *pro rata* (meaning equal) portion of the **$2,000,000.00 Settlement Fund**, after deducting Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions.

- Read this notice carefully. Your legal rights are affected whether you act, or do not act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY [DATE]** | This is the only way to receive a cash payment from the Settlement. Visit www.GaiaVPPASettlement.com to submit a Claim Form online or two download a Claim Form to complete and return by mail. |
| **EXCLUDE YOURSELF BY [DATE]** | You will receive no benefits, but you will retain any rights you currently have to sue Gaia regarding the claims in this case. |
| **OBJECT BY [DATE]** | Write to the Court explaining why you don't like the Settlement. |
| **GO TO THE HEARING ON [DATE]** | Ask to speak in Court about your opinion of the Settlement. |

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-XXX-XXX-XXXX

| DO NOTHING | You won't get a share of the Settlement benefits and will give up your rights to sue Gaia regarding the claims in this case. |
|---|---|

Your rights and options—**and the deadlines to exercise them**—are explained in this Notice.

## BASIC INFORMATION

### 1. Why was this Notice issued?

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

The Honorable Gordon P. Gallagher of the U.S. District Court for the District of Colorado is overseeing this case. The case is called *Guida v. Gaia, Inc.,* **Case No. 1:22-cv-02350-GPG-MEH**. The individual who sued is called the Plaintiff. The entity being sued, Gaia, is called the Defendant.

### 2. What is a class action?

In a class action, one or more people called "class representatives" (in this case, Plaintiff Christopher Guida) sue on behalf of a group or a "class" of people who have similar claims. In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the class.

### 3. What is this lawsuit about?

This lawsuit claims that Gaia violated the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA") by disclosing its subscribers' personally identifiable information ("PII") to Facebook without consent. The VPPA defines PII to include information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider. Gaia denies that it violated any law. The Court has not determined who is right. Rather, Plaintiff and Gaia have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

### 4. Why is there a Settlement?

The Court has not decided whether the Plaintiff or Gaia should win this case. Instead, both sides agreed to a Settlement. That way, they avoid the uncertainties and expenses associated with ongoing litigation, and Settlement Class Members will get compensation.

## WHO'S INCLUDED IN THE SETTLEMENT?

### 5. How do I know if I am in the Settlement Class?

The Settlement Class is defined as:

All individuals residing in the United States who, from September 12, 2020, to and through the date of Preliminary Approval, subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-XXX-XXX-XXXX

2

54

**Gaia's Websites (gaia.com and yogainternational.com) while they had a Facebook account.**

Excluded from the Settlement Class are (1) any judge presiding over this Action and members of their families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons.

## THE SETTLEMENT BENEFITS

### 6. What does the Settlement provide?

*Monetary Relief*: If approved by the Court, Gaia will create a Settlement Fund of **$2,000,000** for the benefit of the Settlement Class. The Settlement Fund will be distributed to Settlement Class Members who file a timely and complete claim on a *pro rata* basis (meaning equal share), after deducting Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions.

*Prospective Relief*: The Settlement also requires Gaia to suspend operation of the Facebook Tracking Pixel on any pages on Gaia's Websites that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA were to be: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the Tenth Circuit Court of Appeals.

A detailed description of the settlement benefits can be found in the Class Action Settlement Agreement available at www.GaiaVPPASettlement.com.

### 7. How much will my payment be?

After deducting from the Settlement Fund any Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions, the Net Settlement Fund will be distributed to Settlement Class Members as a cash payment on a *pro rata* basis. This means each Settlement Class Member who submits a valid claim will be paid an equal share from the Net Settlement Fund. The amount of the payments to individual Settlement Class Members will depend on the number of valid claims that are filed. Because the final payment amount cannot be calculated before all claims are received and verified, it will not be possible to provide an accurate estimate of the payment amount before the deadline to file claims.

### 8. When will I get my payment?

The Court will hold a hearing to consider the fairness of the settlement on [Final Approval Hearing Date]. If the Court approves the Settlement, eligible Settlement Class Members whose claims were

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-XXX-XXX-XXXX

3

55

approved by the Settlement Administrator will receive payment within 90 days after the Effective Date (*i.e.*, after the Settlement has been finally approved and any appeals are resolved or the time to file an appeal has expired). In submitting their claims, Settlement Class Members can choose whether to receive their payment via one of several digital payment options or by paper check.

Funds remaining after checks have expired shall be redistributed on a *pro rata* basis (after first deducting any necessary settlement administration expenses from such uncashed check funds) to all Settlement Class Members who cashed checks or received digital payments during the initial distribution, as long as each Settlement Class Member would receive at least $5.00 in any such secondary distribution and if otherwise feasible.

## HOW TO GET BENEFITS

### 9. How do I get a payment?

If you are a Settlement Class Member and you want to receive a payment, **you must complete and submit a Claim Form**. Visit www.GaiaVPPASettlement.com to submit your claim online or to download a Claim Form to complete and submit by mail. Your Claim Form must be submitted online by ==DEADLINE== or mailed with a postmark date no later than ==DEADLINE==.

## REMAINING IN THE SETTLEMENT

### 10. What am I giving up if I stay in the Settlement Class?

If the Settlement becomes final, you will give up (or "release") your rights to sue Gaia and certain of its affiliates ("Released Parties") regarding the Released Claims, which are described and defined in Paragraphs 1.26 and 1.27 of the Class Action Settlement Agreement. Unless you exclude yourself (*see* Question 14), you will release the Released Claims, regardless of whether you submit a Claim Form or not. You may access the Class Action Settlement Agreement through the Important Documents link on the Settlement Website www.GaiaVPPASettlement.com.

The Class Action Settlement Agreement describes the Released Claims with specific descriptions, so please read it carefully. If you have any questions you may speak to the lawyers representing the Settlement Class listed in Question 12 for free or you may, of course, speak to your own lawyer at your own expense.

### 11. What happens if I do nothing at all?

If you do nothing, you will not receive any monetary benefit (cash payment) from this Settlement. Further, if you do not exclude yourself, you will be unable to start a lawsuit or be part of any other lawsuit brought against Gaia regarding the Released Claims.

## THE LAWYERS REPRESENTING YOU

### 12. Do I have a lawyer in the case?

The Court has appointed lawyers Shawn M. Kennedy of **Herrera Kennedy LLP**, Christopher J. Cormier of

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-==XXX-XXX-XXXX==

4

56

**Burns Charest LLP**, and Rachel Geman of **Lieff Cabraser Heimann & Bernstein LLP,** to represent the Settlement Class. These lawyers are called **Class Counsel**. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

## 13. How will the lawyers be paid?

Class Counsel's attorneys' fees and costs will be paid from the Settlement Fund in an amount determined and awarded by the Court ("Fee Award"). Class Counsel will ask for no more than one-third of the $2 million Settlement Fund, but the Court may award less than this amount.

Class Counsel may also seek a Service Award of up to $2,000.00 for the Class Representative for his service in helping to bring and settle the case. The Service Award will be paid out of the Settlement Fund, but the Court may award less than this amount.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

## 14. How do I get out of the Settlement?

To exclude yourself from the Class, you must mail a letter to the Settlement Administrator stating that you want to be excluded. Your letter must include:

    a. The name and number of this case, *Guida v. Gaia, Inc.,* Case No. 1:22-cv-02350-GPG-MEH;

    b. Your full name and mailing address;

    c. A statement that you wish to be excluded; and

    d. Your exclusion must be personally signed.

You must mail your exclusion letter, so it is postmarked or received no later than ==objection/exclusion deadline== to:

**Gaia VPPA Settlement**
**Attn: Exclusion Requests**
**P.O. Box 58220**
**Philadelphia, PA 19102**

A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person(s) serving such a request shall be a member(s) of the Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if approved. Any member of the Settlement Class who validly elects to be excluded from this Agreement shall not: (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement. The request for exclusion must be personally signed by the Person requesting exclusion. **So-called "mass" or "class" opt-outs shall not be allowed.**

## 15. If I don't exclude myself, can I sue the Defendant for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Gaia for the Released Claims being resolved by this Settlement.

## 16. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, you may not submit a Claim Form to receive a monetary benefit (cash payment).

OBJECTING TO THE SETTLEMENT

## 17. How do I object to the Settlement?

If you are a Settlement Class Member, you may ask the Court to deny approval of the Settlement by filing an objection. You may object to any aspect of the Settlement, Class Counsel's request for attorneys' fees and expenses, or the request for a Service Award. You can give reasons why you think the Court should not give its approval. The Court will consider your views.

If you choose to make an objection, you must mail or file with the Court a letter or brief stating that you object to the Settlement. Your letter or brief must include:

1. The name and number of this case, *Guida v. Gaia, Inc.,* Case No. 1:22-cv-02350-GPG-MEH;

2. Your full name and address;

3. An explanation of the basis upon which you claim to be a Settlement Class Member, including information sufficient to identify your current Facebook page or a screenshot showing that you were a Facebook member during the Class Period;

4. All grounds for your objection, including all citations to legal authority and evidence supporting your objection;

5. The name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with the preparation or submission of the objection or who may profit from your pursuit of the objection;

6. A statement indicating whether you intend to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules); and

7. Your handwritten or electronically imaged written signature.

You must mail or deliver your written objection, postmarked no later than objection/exclusion deadline to:

Clerk of the Court<br>
United States District Court for the District of Colorado<br>
Wayne Aspinall Federal Building<br>
400 Rood Avenue<br>
Grand Junction, CO 81501

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-XXX-XXX-XXXX

58

You must also mail or otherwise deliver a copy of your written objection to Class Counsel and Defendant's counsel at the following addresses:

| Class Counsel | Class Counsel |
|---|---|
| Shawn M. Kennedy<br>**Herrera Kennedy LLP**<br>5900 S. Lake Forest Dr., Suite 300<br>McKinney, TX 75070 | Christopher J. Cormier<br>**Burns Charest LLP**<br>4725 Wisconsin Avenue, NW, Suite 200,<br>Washington, DC 20016 |
| **Class Counsel** | **Defendant's Counsel** |
| Rachel J. Geman<br>**Lieff Cabraser Heimann & Bernstein LLP**<br>250 Hudson Street, 8th Floor<br>New York, NY 10013 | Thomas J. Krysa<br>**Foley & Lardner LLP**<br>1400 16th Street, Ste. 200<br>Denver, Colorado 80202 |

**No "mass" or "class" objections will be allowed.**

## 18. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself from the Settlement Class is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no right to object or file a Claim Form because the case no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

## 19. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing at [time] on [month] [day], **2024** in Courtroom XX at the Wayne Aspinall Federal Building, 400 Rood Avenue, Grand Junction, CO 81501. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class; to consider the Class Counsel's request for attorneys' fees and expenses; and to consider the request for a Service Award to the Class Representative. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check www.GaiaVPPASettlement.com. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the date of such Final Approval Hearing.

## 20. Do I have to attend to the hearing?

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you send an objection or comment, you do not have to attend the hearing to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-XXX-XXX-XXXX

7

59

may also retain your own lawyer (at your own expense) to attend, but it's not required.

**21. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your letter or brief objecting to the Settlement a statement saying that you or your lawyer intends to appear at the Final Approval Hearing.

### GETTING MORE INFORMATION

**22. Where do I get more information?**

For more information, including the full Notice, Claim Form, and the Class Action Settlement Agreement, visit www.GaiaVPPASettlement.com, contact the Settlement Administrator:

Mail: Gaia VPPA Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103

Email: info@GaiaVPPASettlement.com

Toll-Free: 1-XXX-XXX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE REGARDING THIS NOTICE.**

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-XXX-XXX-XXXX

8

60

# APPENDIX EXHIBIT 2

# Joint Declaration of Class Counsel In Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| CHRISTOPHER GUIDA, *on behalf of himself and all others similarly situated*, | Case No. 1:22-cv-02350-GPG-MEH |
| Plaintiffs, | |
| v. | Hon. Gordon P. Gallagher |
| GAIA, INC., | |
| Defendant. | |

**JOINT DECLARATION OF CHRISTOPHER CORMIER, RACHEL GEMAN, AND SHAWN KENNEDY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Christopher Cormier, Rachel Geman and Shawn Kennedy jointly declare and state as follows:

1.      Christopher Cormier is an attorney duly licensed to practice law in Washington, D.C. and the State of Colorado who is admitted to practice before this Court. Mr. Cormier is a partner at the law firm Burns Charest LLP ("BC") and serves as co-counsel of record for Plaintiff Christopher Guida ("Plaintiff") in the above-captioned case (the "Action").

2.      Rachel Geman is an attorney duly licensed to practice law in the State of New York who is admitted to practice before this Court. Ms. Geman is a partner at the law firm Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") and also serves as co-counsel of record for Plaintiff in the Action.

3.      Shawn Kennedy is an attorney duly licensed to practice law in the States of Texas and California who is admitted to practice before this Court. Mr. Kennedy is a partner at Herrera Kennedy LLP ("HK") and also serves as co-counsel of record for Plaintiff in the Action.

4.      Throughout this litigation, we and our respective law firms have been primarily responsible for the prosecution of Plaintiff's claims on behalf of the proposed Settlement Class. We make this Joint Declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement. Except where otherwise stated, we each have personal knowledge of the facts set forth in this Joint Declaration based on active participation in all aspects of the prosecution and resolution of the Action. If called upon to testify, we each could and would testify competently to the truth of the matters stated herein.

5.      Filed concurrently herewith is a true and correct copy of the Class Action Settlement Agreement (the "Settlement") entered into by Plaintiff, on behalf of himself and the proposed Settlement Class, and Defendant Gaia, Inc. ("Gaia," and together with Plaintiff, the "parties"). The parties' proposed Claim Form is Exhibit A to the Settlement. The parties' proposed E-mail Notice is Exhibit B to the Settlement. The parties' proposed Long Form Notice is Exhibit C to the Settlement.

**I.      <u>Summary of the Action</u>**

6.      Plaintiff filed this case on behalf of himself and other subscribers of Gaia on September 12, 2022, alleging one claim for violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). (Dkt. 1.) On November 9, 2022, Gaia moved to dismiss the

63

class action complaint under Rules 12(b)(1) and 12(b)(6) arguing, *inter alia*, that Plaintiff lacked standing, and the complaint failed to state a claim upon which relief could be granted. (Dkt. 20.) Plaintiff filed an opposition to Gaia's motion to dismiss on December 9, 2022. (Dkt. 24.) Gaia filed a reply in support of its motion on December 21, 2022. (Dkt. 25.)

7. On August 19, 2023, the Court granted the parties' joint request to stay the litigation for the purpose of engaging in formal mediation. (Dkts. 49–50.) The Court also ruled the motion to dismiss moot. (Dkt. 51.) The Court subsequently extended the stay multiple times at the parties' request. (Dkts. 52–57.) On March 1, 2024, the Court granted the parties' joint request to lift the stay and modify the Scheduling Order. (Dkts. 60–61.) On March 8, 2024, Defendant re-filed its motion to dismiss. (Dkt. 62.) Plaintiff re-filed his opposition on March 11, 2024 (Dkt. 63), and Defendant re-filed its reply on March 13, 2024. (Dkt. 66.)

8. As alleged in the Complaint, Gaia, a subscription-based digital video streaming service, intentionally installed the Facebook Pixel ("Pixel") on its websites, gaia.com and yogainternational.com (together, the "Websites"), and selected the specific categories of information the Pixel would capture and transmit. (Dkt. 1 (Complaint) ¶¶ 2, 5-8, 53–56.) Gaia also knowingly configured the Pixel such that when a subscriber views a particular video on its website, Gaia sends to third party Meta Platforms, Inc. ("Meta") the subscriber's personally identifiable information ("PII"), including (a) the title and URL of the video, and (b) the subscriber's Facebook ID (or "FID"). (*Id.* ¶¶ 29–30, 38, 49–56, 60, 95.)

## II.     Plaintiff's and Counsel's Role in Prosecuting and Settling the Action

9.     Plaintiff and his counsel zealously have represented the interests of the proposed Settlement Class and committed substantial resources to the resolution of the Settlement Class's claims.

10.     Before filing the complaint, counsel undertook a robust forensic investigation into the factual issues raised in this litigation, including Gaia's use of the Pixel. Counsel also researched the applicable law to determine how the privacy claims applied to these facts and to address Gaia's potential defenses.

11.     After filing the complaint, counsel undertook additional efforts to prosecute Plaintiff's claim, including preparation of an opposition to Gaia's motion to dismiss, pursuing formal discovery from Gaia and Meta, gathering Plaintiff's documents and relevant information, preparing a detailed mediation statement, analyzing relevant informal discovery during mediation.

12.     While Gaia's motion to dismiss was pending, the parties engaged in discovery. Both parties served written discovery requests and engaged in significant negotiations regarding the scope of discovery. Gaia made substantive productions of information, including regarding its Pixel settings, identification of potential deposition witnesses, and the existence of insurance coverage. We served additional discovery requests on Gaia after the stay was lifted in March 2024.

13.     We also served a third-party subpoena on Meta and engaged in extended negotiations with Meta's counsel regarding production of Pixel-related data for Gaia's subscribers.

65

14.     From the outset of the case, including while the motion to dismiss was pending, the parties engaged in direct communications and, as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution. Those discussions led to an agreement between the parties to engage in mediation, which they agreed would take place before The Honorable Suzanne H. Segal, a former United States Magistrate Judge for the United States District Court for the Central District of California and a neutral at Signature Resolution. The mediation took place on November 29, 2023. While the parties engaged in good-faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day.

15.     Over the following weeks and months, the parties engaged in additional rounds of arms' length negotiations facilitated by Judge Segal. These negotiations included both direct discussions between counsel for both parties and mediated communications through Judge Segal.

16.     During the mediation, the parties informally shared additional information, including via direct communications between counsel in the presence of the mediator, regarding Gaia's data bearing on the merits of Plaintiff's claims and the size and nature of the class. Gaia ultimately estimated that approximately 478,000 Gaia subscribers accessed prerecorded videos on Gaia's websites during the relevant time period, although not every one of those subscribers necessarily is a Settlement Class Member (for example, some may not have had a Facebook account). Even so, the proposed Settlement Class likely numbers in the hundreds of thousands.

17.     On May 31, 2024, Judge Segal made a double-blind mediator's proposal for monetary relief covering a full, class-wide settlement of the Action. On June 5, 2024, Judge Segal informed the parties that they had both agreed to the mediator's proposal.

18.     On June 25, 2024, the parties agreed to and executed a term sheet covering additional material terms and proceeded to negotiate and draft a long form settlement agreement.

19.     On July 3, 2024, the parties finalized and executed the Settlement.

20.     In sum, the parties agreed to the terms of the Settlement through experienced counsel (*see* Section V, *infra*) who possessed all the information necessary to evaluate the case, determine the contours of the proposed Settlement Class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator.

21.     Further, Plaintiff's counsel have vigorously represented the Class in this Action and will continue to do so after preliminary and final approval of the Settlement (if approved). Our efforts on behalf of the proposed Settlement Class include (as noted in part above):

(i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint;

(ii) opposing Gaia's motion to dismiss;

(iii) pursuing formal discovery from Gaia;

(iv) pursuing third-party discovery from Meta;

(v) gathering Plaintiff's documents and relevant information;

6

(vi) preparing a detailed mediation statement;

(vii) analyzing relevant informal discovery during mediation;

(viii) participating in mediation and extensive subsequent settlement discussions; and

(ix) achieving a favorable Settlement on behalf of the Settlement Class.

22.     Plaintiff, meanwhile, has been actively engaged in this matter since its inception. He agreed to perform and has performed all duties and tasks requested of him in satisfaction of his role as a representative of all absent members of the proposed class. He has preserved all potentially relevant information in his possession, custody, or control and worked with counsel and vendors counsel retained to help do so. He has provided pertinent information to counsel regarding his Gaia subscription and Facebook account. He has stayed informed about the case, worked with counsel to prepare and review the complaints and other pleadings, and has communicated regularly with counsel throughout the case, up to and including evaluation and approval of the proposed Settlement.

## III.     Recommendation of Counsel

23.     Based on thorough examination and investigation of the facts and law relating to Plaintiff's claims on behalf of the Settlement Class, including the information exchanged before and during mediation, we believe the proposed Settlement is in the best interest of the Settlement Class. Our investigation informed us about the strengths and weaknesses of Plaintiff's claims, as well as Gaia's defenses, and allowed us to conduct an informed, fair, and objective evaluation of the value and risks of continued litigation.

24.     We recognize that despite our belief in the strength of Plaintiff's claims, and Plaintiff's and the proposed Class's ability to secure a judgment and award of statutory damages under the VPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

25.     We also are mindful that absent the proposed Settlement, Gaia's defenses and/or its financial condition could deprive the Plaintiff and the proposed Settlement Class of any potential relief whatsoever. Gaia would continue to challenge liability, would oppose class certification vigorously, and would prepare a competent defense at trial. Gaia also could appeal any adverse decision on the merits, or challenge the award of statutory damages on due process grounds.

26.     In our professional opinion, the relief provided by the proposed Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class, and we respectfully recommend it to the Court for its preliminary (and, ultimately final) approval. Plaintiff's counsel have conferred with Plaintiff, who also supports the proposed Settlement.

## IV.     Selection of Settlement Administrator

27.     To select a settlement administrator, we solicited bids from four well- known and experienced administrators. Specifically, we required that any proposal employ contemporary methods of notice to ensure the broadest and most effective reach possible.

28.     After considering the bids, we selected Angeion Group, LLC ("Angeion"), based in part on its deep experience in similar class actions and a notice plan proposal

69

that includes innovative, thoughtful, and technologically sophisticated means of providing notice to settlement class members.

29.     The cost of administering the Settlement will depend on a variety of factors, including the number of claims submitted by Settlement Class Members and whether we elect to provide reminder notices to Settlement Class Members. Assuming a claims rate of 5%, Angeion estimates the cost of administration at approximately $86,000.

## V.     Roles and Qualifications of Counsel

### A.     Burns Charest

30.     Mr. Cormier attests the facts set forth in this Section V.A.

31.     I am a 2002 magna cum laude graduate of The American University's Washington College of Law and a 1999 graduate of the University of Virginia (BA in Government). As a partner at BC since 2018, and before that at another nationally recognized plaintiffs class action firm since 2011, my practice has focused on antitrust, consumer, false claims, and general commercial litigation on behalf of plaintiffs in state and federal courts across the country.

32.     One leading legal publication notes that I am "a considered, careful, but relentless advocate" who "is quick on [my] feet and not afraid to get down into the weeds" and a "great co-counsel," while another states that I am "lauded as 'an excellent competition plaintiff lawyer' who is regularly engaged in high-value antitrust proceedings before state and federal courts." I repeatedly have been named to the Lawdragon 500 Leading Plaintiff Financial Lawyers guide and the Lawdragon 500 Leading Plaintiff Consumer Lawyers guide, honored as one of the top plaintiffs' antitrust lawyers in the

9

Global Competition Review's Who's Who Legal: Competition publications, selected to the Best Lawyers in America in the areas of antitrust and commercial litigation, recognized by Benchmark Plaintiff as an Antitrust Litigation Star, and named both a Super Lawyer and a "Rising Star" in the field of antitrust litigation by Super Lawyers.

33.     Federal courts have appointed me as co-lead counsel in various antitrust class actions. Most recently, I was appointed co-lead counsel in a pending antitrust class action, *Cornish-Adebiyi v. Caesars Entertainment, Inc.*, No. 1:23-cv-02536-KMW-EAP (D.N.J.), alleging that major Atlantic City casino-hotel companies and a technology provider colluded to fix the prices of guest rooms through the hotels' intentional use of a common third-party pricing algorithm through which they submitted confidential pricing data. I was appointed co-lead counsel in *In re Anadarko Basin Oil and Gas Lease Antitrust Litigation*, where I played a critical role in steering the case to a $7 million settlement, with the average distribution per class member exceeding $2,000, in 2019. I also served as co-lead counsel for the plaintiff class in *In re Plasma-Derivative Protein Therapies Antitrust Litigation*, No. 09-C-7666 (N.D. Ill.), where I helped obtain $128 million in settlements in 2013, and in *In re Dental Supplies Antitrust Litigation*, No. 16-CV-0696 (E.D.N.Y.), where I helped obtain $80 million in settlements in 2019.

34.     I have also held leadership roles in privacy class actions. I was appointed co-lead counsel in *In re Plaid Inc. Privacy Litigation*, No. 20-cv-03056 (N.D. Cal.), a large data privacy action where I helped obtain a $58 million class-wide settlement and valuable injunctive relief for the class. I also recently served as court-appointed class counsel in another class action asserting claims under the VPPA, *Fiorentino v. FloSports, Inc.*, No.

1:22-CV-11502-AK (D. Mass.), where we secured a $2.625 million settlement and injunctive relief requiring the defendant to implement changes to its website.

35.    I have gained extensive trial experience in major class actions and other high-value cases throughout my career. Most recently, I served as co-lead trial counsel in *GT Resources LLC v. Black Hills Corp.*, No. 2020CV3075 (Denver Co. Dist. Ct.), where we earned a $41 million judgment following a seven-day trial asserting claims for breach of contract and business torts arising out of an international business dispute in the energy field that the *National Law Journal* ranked as the nation's 83rd largest jury verdict and the fifth largest business law verdict in 2022. In 2013, I served on the trial team, as part of my role as co-lead counsel, for the plaintiff class in *In re Urethane Antitrust Litigation*, No. 04-MD-1616 (D. Kan.), where I was instrumental in securing a $1.06 billion judgment—believed to be the largest ever in a federal price-fixing class action at the time—against Dow Chemical after a month-long trial

36.    In addition to my class action experience, I litigate high-value commercial disputes in the energy industry on behalf of institutional client plaintiffs, including several in Colorado courts (*see, e.g., Liquidating Trustee for the Liquidating Trust of Nighthawk Royalties LLC and Affiliated Debtors v. Sigma Integrated Reservoir Solutions, et al.*, No. 2019CV032775 (Arapahoe Cnty. Dist. Ct., 22  Colo.), and *GT Resources, LLC v. Black Hills Corp., et al.*, No. 2020CV30751 (Denver Cnty. 23  Dist. Ct., Colo)), as well as whistleblower cases focused on anticompetitive conduct in the pharmaceutical industry (*see U.S. ex rel. Silbersher v. Allergan PLC, et al.*, No. 3:18-cv-03018-JS (N.D. Cal.), and

*U.S. ex rel. Silbersher v. Valeant Pharms. Int', Inc., et al.*, No. 3:18-cv-01496-JD (N.D. Cal.).

37.     A more detailed discussion of my background, credentials, experience, and accomplishments can be found at **https://www.burnscharest.com/team/christopher-j-cormier**.

38.     BC is a boutique trial firm that represents individuals, businesses, and classes in complex, high-value disputes, primarily in the fields of antitrust, privacy, intellectual property, energy, and mass torts. Founded in 2015 by former Susman Godfrey LLP partners and associates, BC's partnership now includes former partners of other prominent firms like Arnold & Porter LLP, Boies Schiller Flexner LLP, and Cohen Milstein Sellers & Toll PLLC. With offices in Dallas, New Orleans and Washington, DC, the firm has quickly gained a reputation as one of the preeminent complex plaintiff-side litigation firms in the nation.

39.     BC has obtained judgments and settlements approaching $1 billion dollars for their clients as lead counsel in various class actions and mass torts and for individual and corporate clients in various business disputes. In just the past two years alone, the firm has obtained significant settlements in nationwide antitrust and privacy class actions, including a $609 million class-wide settlement as co-lead counsel in *In re: EpiPen (Epinephrine Injection, USP) Mktg.*, *Sales Pracs. & Antitrust Litig.*, 17-md-2785 (D. Kan.), a $58 million settlement in *In re Plaid Inc. Privacy Litigation*, and a $41 million judgment in *GT Resources LLC v. Black Hills Corp*.

40. Finally, BC and its lawyers have been repeatedly ranked by preeminent legal publications such as Benchmark Litigation, Best Lawyers in America, Chambers and Partners, Global Competition Review, Lawdragon, and Super Lawyers. More information on BC can be found at the firm's website, https://burnscharest.com.

41. Attached hereto as **Exhibit A** is a true and correct copy of my firm's resume, which provides details of my firm's practice and achievements.

**B.** **Lieff Cabraser**

42. Ms. Geman attests the facts set forth in this Section V.B.

43. I am a partner in LCHB's Privacy/Cybersecurity, Consumer Practice, and Employment Law Practice Groups and the head of LCHB's Whistleblower/False Claims Act Practice Group. I have more than 20 years of experience representing plaintiffs in complex plaintiff-side litigation. I am an AV-Preeminent rated attorney and have been named as one of Lawdragon's Leading 500 Plaintiffs' lawyers since 2018, in the categories of consumer (2022–2023), financial (2021–2024), and employment/civil rights (2018–2022). I was selected for inclusion by peers in The Best Lawyers in America in field of "Employment Law – Individuals," from 2012 through 2023. In addition to other, earlier law honors and bar service listed at https://www.lieffcabraser.com/attorneys/rachel-geman/, I was awarded the Distinguished Honor Award, United States Department of State, 2001.

44. I recently served as Co-Lead Class Counsel, along with Christopher Cormier of Burns Charest LLP and Shawn Kennedy of Herrera Kennedy LLP (who are the other proposed co-lead counsel for the class in this matter), in *In re Plaid Inc. Privacy*

*Litigation*, No. 20-cv-03056 (N.D. Cal.), which is addressed below. Other recent privacy experience includes my serving as Co-Lead Class Counsel, with proposed co-lead counsel here and Mr. Sheen, in a VPPA matter against *FloSports* (addressed below in Mr. Kennedy's section).

45.     I currently serve as court-appointed Co-Lead Class Counsel or Interim Co-Lead Class Counsel in the following ongoing matters: (1) *Authors Guild et al. v. OpenAI & Microsoft*, No. 1:23-cv-8292 (S.D.N.Y.) (2024 interim appointment in copyright class action); (2) *Doe et al. v. MasterCorp*, Case No. 1:24-cv-00678 (E.D. Va.) (2024 settlement class counsel appointment in TVPA and labor class action); (3)     for the Medical Monitoring Class in *In Re: Valsartan, Losartan, and Irbesartan Products Liability Litigation,* MDL 2875 (D.N.J.) (2023 appointment in medical monitoring class action certified for litigation). More information about my other representations can be found at: https://www.lieffcabraser.com/attorneys/rachel-geman/.

46.     I worked on this case with, among other associates and staff, my law partner Mike Sheen. Mr. Sheen received his J.D. in 2012 from the University of California, Berkeley. His practice centers on consumer and data privacy fraud matters, as well as securities and financial fraud. Mr. Sheen's work in digital privacy litigation is varied, including (1) representation of parents and children in class actions against children's online game developers and ad networks including Disney, Viacom, and the makers of the popular Subway Surfers game (Kiloo and Sybo); (2) representation of consumers in the Plaid Inc. Privacy Litigation; and (3) representation of Google users in the *Google Location History Litigation*, each described below. Prior to joining LCHB in 2018, Mr.

14

Sheen served as a law clerk to the Honorable Dale A. Drozd of the U.S. District Court for the Eastern District of California. He also was an associate at Milbank, Tweed, Hadley & McCloy LLP, where his practice focused on intellectual property and commercial litigation.

47.     LCHB is one of the oldest, largest, most-respected, and most-successful law firms in the country representing plaintiffs in class actions, and it brings to the table a wealth of class action experience. Attached hereto as **Exhibit B** is a true and correct copy of an abbreviated version of LCHB's current firm resume, which describes some of the firm's experience in complex and class action litigation, with an emphasis on cybersecurity and data privacy cases, and gives biographical information about attorneys at the firm. This resume is not a complete listing of all cases in which LCHB has been class counsel or otherwise counsel of record. More information about LCHB can be found at the firm's website,   https://www.lieffcabraser.com/.

48.     LCHB has extensive experience litigating and settling consumer and privacy class actions and other complex matters, and it has played a lead role in prosecuting numerous privacy class actions, including those below.

- *In re Plaid Inc. Privacy Litigation*, No. 20-cv-03056 (N.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging defendant misleadingly used login screens that looked like those of real banks to obtain and improperly use consumers' personal data. Achieved $58 million settlement fund and injunctive relief to cease defendant's conduct and purge certain personal data.

- *Rushing v. The Walt Disney Company, et al.*, No. 17-cv-04419 (N.D. Cal.); *Rushing v. Viacom, Inc., et al.*, No. 17-cv-04492 (N.D. Cal.); and *McDonald, et al. v. Kiloo Aps, et al.*, No. 17-cv-04344 (N.D. Cal.). Co-Lead Class Counsel in federal class actions alleging certain app developers unlawfully collected, used, and disseminated children's personal information. Achieved injunctive relief requiring defendants to tracking children across apps and the internet for advertising purposes.

- *In re Google Location History Litigation*, No. 18-cv-05062 (N.D. Cal.). Co-Lead Class Counsel in active nationwide class action alleging Google surreptitiously tracked the location of millions of mobile device users.

- *Campbell v. Facebook*, No. 13-cv-05996 (N.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging Facebook intercepted data in users' personal and private messages and profited by sharing the information with third parties. Achieved injunctive relief to improve Facebook's consumer-facing disclosures and cessation of the challenged practices.

- *Perkins v. LinkedIn Corporation*, No. 13-cv-04303 (N.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging LinkedIn used its members' names and likenesses without their consent to advertise and endorse the social network. Achieved $13 million settlement and injunctive relief targeting LinkedIn's disclosures and functionality.

- *Corona v. Sony Pictures Entertainment, Inc.*, No. 14-cv-09600 (C.D. Cal.). Co- Lead Class Counsel in nationwide class action alleging inadequate security measures by Sony enabled cyber theft of employee data. Achieved injunctive relief, credit monitoring, and $8 million fund.

- *Ebarle et al. v. LifeLock Inc.*, No. 15-cv-00258 (N.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging that, contrary to representations, LifeLock failed to protect the personal information of its subscribers. Achieved $68 million settlement.

- *Matera v. Google LLC*, No. 15-cv-04062 (N.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging that Google improperly intercepted contents of e-mail messages belonging to non-Gmail users. Achieved injunctive relief requiring cessation of the challenged practices.

- *In re Intuit Data Litigation*, No. 15-cv-01778 (N.D. Cal.). On the Executive Committee in nationwide class action alleging that Intuit's policies and security measures enabled and encouraged tax refund fraud. Achieved credit monitoring, identity restoration services, and injunctive relief requiring cybersecurity enhancements.

- *In re Anthem Data Breach Litig.*, No. 15-cv-02617 (N.D. Cal.). On the Executive Committee for multidistrict litigation alleging that deficient cybersecurity measures compromised sensitive personal identifying information of more than 80 million persons. Achieved $115 million

settlement fund and injunctive relief targeting Anthem's cybersecurity practices.

**C.** **Herrera Kennedy**

49. Mr. Kennedy attests the facts set forth in this Section V.C.

50. I am a 2001 graduate of Duke University School of Law and a 1998 graduate of Cal Poly, San Luis Obispo (BA in Political Science). I have been a partner at HK since 2019, and I have over 20 years of experience representing clients in complex commercial litigation matters in state and federal courts throughout the nation, including numerous consumer class actions. Prior to joining HK, I practiced with international law firms Morgan, Lewis & Bockius LLP, and Howrey LLP. Over the past five years, my class action practice has focused on privacy matters such as this one.

51. I served as Co-Lead Class Counsel, along with my co-counsel in this matter, Rachel Geman of Lieff Cabraser and Christopher Cormier of Burns Charest, in *In re Plaid Inc. Privacy Litigation*, No. 20-cv-03056 (N.D. Cal.), where we secured a $58 million settlement and significant injunctive relief for a nationwide class.

52. I also recently served as Class Counsel in another class action asserting claims under the VPPA, *Fiorentino v. FloSports, Inc.*, No. 1:22-CV-11502-AK (D. Mass.), where we secured a $2.625 million settlement and injunctive relief requiring the defendant to implement changes to its website.

53. HK is a litigation firm that routinely leads high-stakes, novel, and complex contingency and class action cases. HK's partners have been entrusted with leadership roles in significant antitrust and consumer class actions and have discovered, initiated, and pursued groundbreaking *qui tam* actions alleging anticompetitive conduct by some

of the largest and most well-represented companies in the world. Over the last three years, HK's partners have recovered over $200 million in damages on behalf of injured consumers in exceedingly large and complicated class actions. More information on HK can be found at the firm's website, http://herrerakennedy.com.

We declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 8th day of July, 2024, at Washington, D.C., Brooklyn, New York, and McKinney, Texas.

By: */s/ Christopher Cormier*
     Christopher J. Cormier

By: */s/ Rachel Geman*
     Rachel Geman

By: */s/ Shawn Kennedy*
     Shawn M. Kennedy

# EXHIBIT A
# TO JOINT DECLARATION
# OF CLASS COUNSEL

# burns charest llp

**Dallas**
900 Jackson Street
Suite 500
Dallas, Texas 75202
Phone 469.904.4550
Fax 469.444.5002

**New Orleans**
365 Canal Street
Suite 1170
New Orleans, Louisiana 70130
Phone 504.799.2845
Fax 504.881.1765

**Washington**
4725 Wisconsin Avenue NW
Suite 200
Washington, DC 20016
Phone 202.577.3977
Fax 469.444.5002

## Firm Resume



## Why we win.

When we saw the opportunity to build a dynamic, complex litigation firm, we did it. **We did it fearlessly**, and **we did it aggressively**. This same bold spirit informs everything we do at Burns Charest.

Our **battle-tested attorneys** take on corporate behemoths and large national firms in the courtroom. With our contingent and alternative fee approach, we are **calculated risk-takers**. We leverage our smarts, our integrity, and our resources intelligently and efficiently to focus on outcome-determinative action and results.

**Burns Charest knows how to try cases.** And other firms know that too. We work hard. We work smart. We achieve results. **We win.**



# Burns Charest Philosophy.

From the start of a case, Burns Charest develops a plan to win the trial. Then we manage the case throughout its life to ensure we are working towards that core goal: **winning the trial**.

We encourage contingent-fee arrangements or alternative fees where, in effect, **we bet on ourselves and our clients.** We believe that clients benefit from having lawyers whose focus is aligned on winning the case as efficiently and as successfully as possible. Having our focus on winning the trial helps avoid unnecessary skirmishes and delay.

Burns Charest's broad experience gives it both strength and agility. We do not limit our lawyers to any particular subject matters or field. **We are trial lawyers.** It does not matter what type of trial. It does not matter whether the dispute is before a jury, a bench, or an arbitration panel. **We can do it.** And other firms know both that we know what we are doing and that we are willing to go the distance. That gives us an edge when negotiating settlements because being ready, willing, and able to actually try cases is a rare commodity.

Our nation's legal system was designed to protect individuals and businesses from the wrongdoing of others and to assure a level playing field. As lawyers, we have an incredibly important role to play in making that system work for our clients. And we will not shy away from a **fight to protect our clients**.

**We love what we do.** It takes hard work. It takes smarts. But we have them both. And plenty.

# Burns Charest Wins.



Burns Charest was founded in 2015. In its short eight-year history, **Burns Charest has achieved stunning results in major cases.** The most significant results are set out below.

➤ Lead counsel: *Stockton v. Sun Holdings, Inc.*, No. CC-19-02768-D (County Court at Law No. 4, Dallas County, Texas). Prosecuted fraud claim by Dallas-area man against national-level, Dallas-based franchisee in seven-day jury trial. Won jury verdict of $15,618,873.47 in fraud damages and, after bifurcated trial, another verdict totaling $15,100,000.00 in punitive damages. All combined, the **jury verdicts reached $30,718,873.47**.

➤ Co-lead counsel: *In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, MDL No: 2785 (D. Kan.). Finalized separate **settlements of $345 million and $264 million** with Pfizer and Mylan Defendants, respectively, on behalf of tens of thousands of American consumers and businesses in a multidistrict class action designed to recoup overpayments on the life-saving EpiPen device. Listed in "**Top 50 Cases** with Settlements Reaching Final Approval from 2009-2021" by 2021 Antitrust Annual Report published by Huntington National Bank and the Center for Litigation and Courts at UC Hastings Law.

➢ Lead counsel: *GT Resources, LLC v. Black Hills Corporation*, No. 2020CV30751 (District Court for Denver County, Colorado). Secured a $41 million jury verdict for client for claims of tortious interference with a prospective business advantage and breach of the duty of good faith and fair dealing against Black Hills Corporation and two subsidiaries in connection with a dispute over a 2.3-million-acre oil and gas concession in Costa Rica. The trial lasted six days. And the jury deliberated one day before returning its **$41 million verdict** for the Burns Charest client. The National Law Journal ranked the verdict as a **Top 100 Verdict in the nation for 2022**.

➢ Lead trial counsel: *In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs*, Sub-Master Docket No. 17-cv-9001L (Fed. Cl.). Secured rulings on both liability (2108) and just compensation (2022) in bifurcated trial over bellwether properties in the "**largest Fifth Amendment takings cases in history**" according to the federal government, with aggregate estimated claims for roughly $1.3 billion. Serving as court-appointed co-lead counsel for Hurricane Harvey upstream flood victims.

➢ Co-lead counsel: *In re: HONX, Inc.*, No. 22-90035 (S.D. Tex. Bankr.). Represented roughly 900 individual claimants exposed to asbestos while working in a refinery on St. Croix, U.S.V.I. Negotiated a **total settlement pool of $105 million** for clients after defendant filed bankruptcy.

➢ Co-lead counsel: *Scola v. Facebook Inc. and Pro Unlimited Inc.*, No. 18-CIV05135 (Superior Court in the State of California). Negotiated $52 million class action settlement for a class of content moderators who worked for Facebook vendors. Settlement included Facebook improving safety of U.S.-based content moderators by improving review tools and providing counseling. Listed among the "**Top Commercial Litigation Moments of 2020**" by The Texas Lawbook.

➢ Co-lead counsel: *In re: Plaid Inc. Privacy Litigation*, No. 4:20-cv-3056 (N.D. Ca.). Finalized **$58 million class action settlement** on behalf of consumers against fintech apps for collecting sensitive transactional private banking data without consumers' knowledge or consent.

• Plaintiff Steering Committee: *In re: TikTok, Inc. Consumer Privacy Litigation*, Case No. 1:20-cv-04699 (N.D. Ill.). Received final approval for **$92 million class action** settlement on behalf of TikTok app users against TikTok, Inc. and ByteDance, Inc. for their use of biometric information obtained from app users without prior consent.

• Settlement Class Counsel for Self-Funded Subclass: *In re: Blue Cross Blue Shield Antitrust Litigation*, Case No. 2:13-cv-20000 (N.D. Ala.). Helped **negotiate $2.67 billion class settlement fund** on behalf of subscribers to address anti-competitive practices by Blue Cross Blue Shield insurers.

➢ Co-lead counsel: *Kosmos Energy Sao Tome and Principe v. ERHC Energy, Inc.*, No. 201771987 (157th District Court, Harris County, Texas), and *Kosmos Energy Sao Tome and Principe v. ERHC Energy (BVI), LTD*, No. 23177/TO (ICC International Court of Arbitration). Led international arbitration and a Texas State Court action in a fight over rights to a deep-water offshore drilling blocks off the coast of Africa. Obtained injunction, first, in Texas State Court and, later, from the ICC arbitration panel in London to preserve the client's deep-water offshore asset. Achieved **total victory for client** after multi-day arbitration proceeding in London.

• Co-lead counsel: *In re: Asbestos, Catalyst, and Silica Toxic Dust Exposure Litigation*, Master Docket No. SX-15-CV-096 (U.S.V.I. Sup. Ct.). Represented several hundred individual workers exposed to asbestos while working in a refinery on St. Croix, U.S.V.I. and negotiated a **total settlement pool of $84 million**.

• Co-lead counsel: *Shirley, et al. v. Limetree Bay Ventures, LLC, et al.*, No. 1:21-cv-00259-WAL-EAH (D.V.I.). Represent pollution victims on the western half of St. Croix whose homes were sprayed with oil during failed attempts to re-start a refinery on St. Croix. Obtained mandatory injunctive relief requiring defendant, Limetree Bay Terminals, to **provide clean drinking water to thousands of St. Croix residents**.

• Co-lead counsel: *Bhatia, et al. v. 3M Company*, No. 16-1304 (DWF/DTS) (D. Minn.). Secured a **$32.5 million settlement for class** of thousands of American dentists who purchased faulty material from one of the nation's largest dental manufacturers for use in dental crowns, which failed at unprecedented rates.

# Burns Charest Team.



Burns Charest is a **dynamic firm with an impressive pedigree.** Our founders and senior lawyers were partners and attorneys at some of the best litigation firms in the nation.

In 2015, we came together to build a new, aggressive platform to pursue our clients' interests. And we have achieved that ambition. By strategically enhancing experienced positions and hiring smart, ambitious associates, we have built **a team of battle-tested lawyers**. We focus on the development of our lawyers—through both on the job experience and internal firm training—to hone their skills, bring out their personal strengths, and instill solid trial habits.

We know that experience matters to clients and judges. **And we have it.** Our lawyers have actually tried complex cases to verdict. They have served in top leadership positions in complex, sprawling cases and multi-district litigations. They have secured judgments, settlements, and positive results for their clients. And they have represented individuals and businesses in complex, bet-the-company cases.

Burns Charest lawyers have been honored by nearly all relevant attorney-ratings platforms, including being named by the Texas Lawyer as Texas "**Attorney of the Year**" in 2020. They have received the award for "**Outstanding Achievement in Private Law Practice**" from the American Antitrust Institute. They have been elected to the American Law Institute. They regularly speak at bar events and CLE courses. They serve on Pattern Jury Instruction committees. Beyond that, they have been ranked by Chambers and Partners, admitted to the Litigation Counsel of America's Trial Law Institute and Order of Veritas, and named as both a "**Winning Litigator**" by National Law Journal and a "**Litigation Star**" by Benchmark Litigation. They have been listed as "**Leading Plaintiff Financial Lawyer**," as "**Leading Plaintiff Consumer Lawyer**," as "**Leading Environmental Lawyer**," and as "**Leading Litigator**" by Lawdragon. They are consistently identified as among "**International Who's Who of Competition Lawyers**," "**Best Lawyers**," "**Super Lawyers**," and "**Best Lawyers in America**."

**We have a strong team.** Our lawyers are some of the most experienced and talented of their generation. And the strength of our younger lawyers only enhances our team. We are happy to match our credentials against others.



| Dallas | New Orleans | Washington |
|---|---|---|
| 900 Jackson Street | 365 Canal Street | 4725 Wisconsin Avenue NW |
| Suite 500 | Suite 1170 | Suite 200 |
| Dallas, Texas 75202 | New Orleans, Louisiana 70130 | Washington, DC 20016 |
| Phone 469.904.4550 | Phone 504.799.2845 | Phone 202.577.3977 |
| Fax 469.444.5002 | Fax 504.881.1765 | Fax 469.444.5002 |

# EXHIBIT B
# TO JOINT DECLARATION
# OF CLASS COUNSEL

# Lieff Cabraser Firm Resume

## LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

Lieff Cabraser Heimann & Bernstein, LLP is a 125+ attorney AV-rated law firm founded in 1972 with offices in San Francisco, New York, Nashville, and Munich. We have a diversified practice successfully representing plaintiffs throughout the U.S. and Europe in the fields of personal injury and mass torts, securities and financial fraud, employment discrimination and unlawful employment practices, product defect, consumer protection, antitrust, environmental and toxic exposures, False Claims Act, digital privacy and data security, abuse and sexual abuse cases, and civil and human rights. Our clients include individuals, classes, and groups of people, businesses, and public and private entities.

Lieff Cabraser has served as Court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States. The Firm has, often with co-counsel, represented clients from across the globe in cases filed in American Courts and in foreign jurisdictions.

Lieff Cabraser has litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the past five decades. Lieff Cabraser has assisted its clients in recovering over $129 billion in verdicts and settlements. Thirty-one cases have been resolved for over $1 billion; another sixty-one have resulted in verdicts or settlements at or in excess of $100 million.

SAN FRANCISCO
NEW YORK
NASHVILLE
MUNICH
**lieffcabraser.com**

**Lieff Cabraser Heimann& Bernstein**
Attorneys at Law

# LIEFF CABRASER – Firm Acknowledgements

In August of 2022, The New York Law Journal selected Lieff Cabraser to receive the publication's "Litigation Department of the Year" award for Class Action Litigation. In January of 2021, The American Lawyer named Lieff Cabraser its "Boutique/Specialty Litigation Firm of the Year," and in December 2019, the publication included Lieff Cabraser in its "Top 50 Litigation Departments in the U.S.," the only all-plaintiff-side litigation firm included among the firms recognized. Law360 selected Lieff Cabraser as one of the "Top 50 Law Firms Nationwide for Litigation" and separately named our firm one of five "2017 California Powerhouses," the only plaintiffs' firm on the list.

U.S. News and Best Lawyers named Lieff Cabraser as a "Law Firm of the Year" for five consecutive years, and the firm has received a number of other recent honors and awards, including a 14-consecutive year selection by the National Law Journal to its "Elite Trial Lawyers." We have also been recognized among Law360's "Most Feared Plaintiffs' Firms, and Benchmark Litigation's "Top 10 Plaintiffs Firms in America," as well as being named Benchmark's 2019, 2020, and 2021 "California Plaintiff Firm of the Year."

This Firm Resume summarizes Lieff Cabraser's extensive and varied cases, including past successes and active matters; identifies the Firm's lawyers with links to their full biographies; and describes the Firm's community and legal organization engagement.

# LIEFF CABRASER FIRM RESUME – Table of Contents

Case Profiles: Cybersecurity and Data Privacy

Lawyer Profiles

Lieff Cabraser In the Community

SAN FRANCISCO
NEW YORK
NASHVILLE
MUNICH
**lieffcabraser.com**

**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

# CYBERSECURITY & DATA PRIVACY

Lieff Cabraser's Privacy & Cybersecurity practice group is a nationally-recognized leader in the pursuit of preserving individual privacy against the pervasive intrusions of digital technology into all aspects of our daily lives. Our firm has a proven track record of successfully taking-on the powerhouses of "big data" and social media. The Privacy & Cybersecurity practice group's honors include the National Law Journal's 2019 Elite Trial Lawyers award for privacy and data breach litigation and Law360's 2017 Data Privacy Practice Group of the Year.

## Representative Current Cases

### FACEBOOK PIXEL VIDEO PRIVACY PROTECTION ACT CASES

Lieff Cabraser, with co-counsel, has filed a series of privacy class action lawsuits alleging that defendants (video streaming services, media companies, etc.) disclose private customer information to Meta Platforms, Inc., f/k/a Facebook, in violation of a law called the Video Privacy Protection Act. Plaintiffs allege that defendants have secretly, and without users' consent, embedded tracking software known as the Meta "Pixel" on their websites, so that an ordinary person could identify a specific individual's video watching-behavior using that individual's Facebook ID.

These cases are in different procedural stages. On March 5, 2024, the court granted final approval of a $2.625 million class action settlement in Fiorentino v. FloSports, Inc., No. 1:22-cv-11502-AK (D. Mass.). Plaintiff survived a motion to dismiss and obtained a

favorable ruling in Czarnionka v. Epoch Times Ass'n, Inc., No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *1 (S.D.N.Y. Nov. 17, 2022), motion to certify appeal denied, No. 22 CIV.6348 (AKH), 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) (The Facebook ID disclosed by defendant "is sufficient for an ordinary person to identify Plaintiff and similarly situated individuals" and comprises PII under the VPPA). On January 22, 2023, the court granted preliminary approval of a class settlement.  In Vela, et al v. AMC Networks, Inc. d/b/a AMC+, No. 1:23-cv-02524-ALC (S.D.N.Y.), the Court granted preliminary approval of a proposed settlement on January 10, 2024.  And in Collins, et al. v. Pearson Education, Inc., on March 1, 2024, the Court denied Defendant's motion to strike and motion to dismiss. See Collins v. Pearson Educ., Inc., No. 23 CIV. 2219 (PAE), 2024 WL 895316, at *1 (S.D.N.Y. Mar. 1, 2024).

Other cases are in litigation and/or disclosed mediation postures.

### ORACLE/DATA BROKER CONSUMER PRIVACY VIOLATIONS

Lieff Cabraser represents consumers in a class action lawsuit in federal court in California against tech giant Oracle, one of the world's largest data brokers. The lawsuit alleges Oracle improperly collects and sells the personal information of consumers to third parties without their consent, including detailed data on their behaviors, movements,

social relationships, and interests. The complaint describes Oracle as key player in the "adtech" space, where massive volumes of personal information on the world's population is aggregated and used to identify and profile individuals for "targeted advertising" and/or other commercial and political purposes. As alleged in the complaint, this exploitation of personal information is based on invading consumers' privacy. Oracle's surreptitious data collection practices are not dependent upon any relationship that an Internet user has with Oracle, in fact, Oracle primarily collects data from persons with no privity whatsoever to Oracle. The Oracle case is currently in discovery.

### DELAPAZ, ET AL. V. HCA HEALTHCARE, INC., CASE NO. 3:23-CV-00718 (D. TENN.)

In July 2023, Lieff Cabraser and co-counsel filed a class action lawsuit in federal district court in the Middle District of Tennessee against HCA Healthcare Inc. for negligence, breach of confidence, deceptive trade practices, and unjust enrichment, among other charges, relating to a massive data breach that exposed private personal data relating to approximately 11 million patients. HCA Healthcare Inc. is a Nashville, Tennessee-based company which describes itself as "one of the nation's largest healthcare providers, with hundreds of hospitals and clinics across the country." On

July 10, 2023, HCA announced that a list with names, email addresses, phone numbers, birth dates, and appointment information had been fully exposed online. HCA indicated it was still investigating the exposure and would not confirm how many patients were affected, but noted that the list contained 27 million rows of data on about 11 million patients. The data privacy lawsuit seeks declaratory and injunctive relief as well as compensatory and general damages.

### HOWARD, ET AL. V. LABORATORY CORPORATION OF AMERICA, ET AL., 23-CV-00758-UA-JEP (M.D. N.C.)

Lieff Cabraser and co-counsel have filed a class action lawsuit in the Middle District of North Carolina against Laboratory Corporation of America and Laboratory Corporation of America Holdings for collecting and facilitating the collection of identifiable and sensitive health information from users of Labcorp's website using invisible tracking technology, including the Meta Pixel. The case is currently in the midst of motion to dismiss briefing.

### IN RE GOOGLE LLC LOCATION HISTORY LITIGATION, NO. 5:18-CV-05062-EJD (N.D. CAL.)

Lieff Cabraser serves as Co-Lead Interim Class Counsel representing individuals whose locations were tracked, and whose location information was stored and used by Google for its own purposes after



the consumers disabled a feature that was supposed to prevent Google from storing a record of their locations. Plaintiffs allege that, for years, Google deliberately misled its users that their "Location History" settings would prevent Google from tracking and storing a permanent record of their movements, when in fact despite users' privacy settings, Google did so anyway. Plaintiffs allege that Google's conduct violates its users' reasonable expectations of privacy and is unlawful under the California Constitutional Right to Privacy and the common law of intrusion upon seclusion, as well as giving rise to claims for unjust enrichment and disgorgement. In November 2023, the Court granted preliminary approval of a settlement with Google, which provides for a $62 million payment and valuable injunctive relief. A final approval hearing is scheduled for April 18, 2024.

### KARLING, ET AL. V. SAMSARA INC., 22-CV-295 (N.D. ILL.)

Lieff Cabraser and co-counsel represent a proposed class of individuals who had their biometric information collected by Samsara Inc. in violation of Illinois' Biometric Information Privacy Act. In July 2022, Judge Sara Ellis denied Samsara's motion to dismiss in full, sustaining four claims under BIPA. The case is presently in discovery.

### CHABAK V. SOMNIA, NO. 22-CV-9341 (S.D.N.Y.).

Lieff Cabraser serves as Co-Lead Counsel in class action litigation against Somnia, Inc., an anesthesiology services provider and practice management company that manages numerous anesthesiology providers, and individual anesthesiology providers for a 2022 data breach that impacted the personally identifiable information and private health information of almost half a million



patients. Plaintiffs allege that Somnia and the anesthesiology providers Somnia manages failed to fulfill their legal duty to protect customers' sensitive personal, financial, and health information by implementing insufficient data security practices and providing insufficient notice after the breach. The complaint asserts claims for negligence, negligence per se, breach of confidence, unjust enrichment, and violations of numerous California consumer protection statutes. Parties are currently briefing defendants' motion to dismiss.

### CAVANAUGH V. LYTX, INC., 21-CV-5427 (N.D. ILL.)

Lieff Cabraser was appointed interim co-lead counsel in a proposed class action on behalf of individuals who had their biometric information collected by Lytx Inc. in violation of Illinois' Biometric Information Privacy Act. Plaintiffs filed their amended complaint in November 2022 and are awaiting its resolution.

### IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC., CUSTOMER DATA SEC. BREACH LITIG., NO. 19-MD-2904 (D. N.J.)

Lieff Cabraser serves as Co-Lead Counsel on the Quest track in class action litigation against Quest Diagnostics Inc., Laboratory Corporation of America, and other blood testing and diagnostic companies that shared, or facilitated the sharing of, customers' personal

identifying financial and health information with a third-party debt collector American Medical Collection Agency that was breached. Plaintiffs allege that Quest (and other blood-testing labs) failed to fulfill its legal duty to protect customers' sensitive personal, financial, and health information by sharing it with a third-party that lacked adequate data security. The complaints against each lab company allege that they were negligent, unjustly enriched, and violated numerous state consumer protection statutes. In December 2021, the Court denied Defendants' motions to dismiss in part and in September 2023, the Court denied Defendants' second round of motions to dismiss in part. The case is nearing the close of discovery.

### META DMV DATA PRIVACY CLASS ACTION

Lieff Cabraser represents a proposed class the plaintiff in a class action lawsuit alleging that Meta Platforms, formerly known as Facebook, violated privacy laws by obtaining users' protected personal information from the California Department of Motor Vehicles, including names, disability information, and e-mail addresses, as well as confidential communications.

The complaint alleges that Meta does this through the implementation of a ubiquitous but hidden tracking code known as the Meta "Pixel," which sends Meta time-stamped, personally-identifiable records of users' personal information,



activities and communications on the California DMV website. Through the Pixel's surveillance, the complaint alleges that Meta is able to obtain vast quantities of private data on a daily basis from the DMV, including the first names of users who click into their "MyDMV" portal page; the identities of persons with disabilities who start disabled parking placard applications on the DMV website; e-mail addresses belonging to users who check the status of pending applications; and the personally identifying contents of communications between users and the DMV. The suit alleges that this widespread collection of personal information violates DMV website users' privacy rights under the Federal Driver's Privacy Protection Act and the California Invasion of Privacy Act.

### IN RE: MARRIOTT INT'L CUSTOMER DATA SEC. BREACH LITIG., NO. 19-MD-2879 (D. MD.)

Lieff Cabraser serves as a member of the Steering Committee in class action litigation against Marriott International Inc. and Accenture PLC for a 2018 data breach of Starwood Hotels affecting more than 100 million U.S. citizens. Plaintiffs allege that Marriott and Accenture failed to fulfill their legal duties to protect Marriott's customers' sensitive personal and financial information, causing class members' personally identifying information, including credit cards and passport numbers, to be exfiltrated by cybercriminals. In May 2022, then-U.S. District Court Judge Paul Grimm granted in part Plaintiffs' class certification motion, certifying three damages classes and four issues classes. In November 2023, after the Fourth Circuit remanded the action for the District Court to consider the import of Marriott's purported class action waiver, Judge John Preston Bailey reinstated the May 2022 classes certified by Judge Grimm.



# CYBERSECURITY & DATA PRIVACY
## Representative Achievements & Successes

***IN RE GOOGLE LLC STREET VIEW ELECTRONIC COMMUNICATIONS LITIGATION***, NO. 3:10-MD-021784-CRB (N.D. CAL.)

Lieff Cabraser represents individuals whose right to privacy was violated when Google intentionally equipped its Google Maps "Street View" vehicles with Wi-Fi antennas and software that collected data transmitted by those persons' Wi-Fi networks located in their nearby homes. Google collected not only basic identifying information about individuals' Wi-Fi networks, but also personal, private data being transmitted over their Wi-Fi networks such as emails, usernames, passwords, videos, and documents. Plaintiffs allege that Google's actions violated the federal Wiretap Act, as amended by the Electronic Communications Privacy Act. On September 10, 2013, the Ninth Circuit Court of Appeals held that Google's actions are not exempt from the Act.

On March 20, 2020, U.S. District Judge Charles R. Breyer granted final approval to a $13 million settlement over Google's illegal gathering of network data via its Street View vehicle fleet. Given the difficulties of assessing precise individual harms, the innovative settlement, which is intended in part to disincentivize companies like Google from future



privacy violations, will distribute its monies to eight nonprofit organizations with a history of addressing online consumer privacy issues. Judge Breyer's order to distribute the settlement funds to nonprofit organizations is currently on appeal.

***IN RE ANTHEM, INC. DATA BREACH LITIG.***, NO. 5:15-MD-02617 (N.D. CAL.)

Lieff Cabraser served on the Plaintiffs' Steering Committee representing individuals in a class action lawsuit against Anthem for its alleged failure to safeguard and secure the medical records and other personally identifiable information of its members. The second largest health insurer in the U.S., Anthem provides coverage for 37.5 million Americans. Anthem's customer database was allegedly attacked by international hackers on December 10, 2014. Anthem says it discovered the breach on January 27, 2015, and reported it about a week later on February 4, 2015. California customers were informed around March 18, 2015. The theft included names, birth dates, social security numbers, billing information, and highly confidential health information. The complaint charged that Anthem violated its duty to safeguard and protect consumers' personal information, and violated its duty to disclose the breach to consumers in a timely manner. In addition, the complaint charged that Anthem was on notice about the weaknesses in its computer security defenses for at least a year before the breach occurred.

In August 2018, Judge Lucy H. Koh of the U. S. District Court for the Northern District of California granted final approval to a class action settlement which required

Anthem to undertake significant additional cybersecurity measures to better safeguard information going forward, and to pay $115 million into a settlement fund from which benefits to settlement class members would be paid.

***IN RE PLAID INC. PRIVACY LITIG.***, NO. 4:20-CV-03056 (N.D. CAL.)

Lieff Cabraser served as Co-Lead Interim Class Counsel in a class action lawsuit alleging that financial tech company Plaid Inc. invaded consumers' privacy in their financial affairs. Plaid provides third-party bank account authentication services for several well-known payment apps, such as Venmo, Coinbase, Square's Cash App, and Stripe. Plaintiffs alleged that Plaid uses login screens that misleadingly look like those of real banks to obtain consumers' banking account credentials, and subsequently used consumers' credentials to access their bank accounts and improperly take their banking data. Plaintiffs argued that Plaid's intrusions violated established social norms, and exposed consumers to additional privacy risks. The lawsuit asserted claims under state and federal consumer protection and privacy laws. In July 2022, the court granted final approval to a $58 million settlement that included injunctive relief to stop the conduct and purge all improperly obtained data.

***BALDERAS V. TINY LAB PRODUCTIONS, ET AL.***, CASE 6:18-CV-00854 (D. NEW MEXICO)

Lieff Cabraser, with co-counsel, is working with the Attorney General of the State of New Mexico to represent parents, on behalf of their children, in a federal lawsuit seeking to protect children in the state from a foreign developer of child-directed apps

and its marketing partners, including Google's ad network, Google AdMob. The lawsuit alleges that Google, child-app developer Tiny Lab Productions, and their co-defendants surreptitiously harvested children's personal information for profiling and targeting children for commercial gain, without adequate disclosures and verified parental consent. When children played Tiny Lab's gaming apps on their mobile devices, Defendants collected and used their personal data, including geolocation, persistent identifiers, demographic characteristics, and other personal data in order to serve children with targeted advertisements or otherwise commercially exploit them.

The apps at issue, clearly and indisputably designed for children, include Fun Kid Racing, Candy Land Racing, and GummyBear and Friends Speed Racing. The action largely survived a motion to dismiss in 2020 and a motion for reconsideration of the same in 2021, and seeks redress under the federal Children's Online Privacy Protection Act and the common law. The State settled with Google in December 2021.

### CAMPBELL V. FACEBOOK, NO. 4:13-CV-05996 (N.D. CAL.)

Lieff Cabraser serves as Co-Lead Class Counsel in a nationwide class action lawsuit alleging that Facebook intercepts certain private data in users' personal and private messages on the social network and profits by sharing that information with third



parties. When a user composes a private Facebook message and includes a link (a "URL") to a third party website, Facebook allegedly scans the content of the message, follows the URL, and searches for information to profile the message-sender's web activity. This enables Facebook to data mine aspects of user data and profit from that data by sharing it with advertisers, marketers, and other data aggregators.

In December 2014, the Court in large part denied Facebook's motion to dismiss. In rejecting one of Facebook's core arguments, U.S. District Court Judge Phyllis Hamilton stated: "An electronic communications service provider cannot simply adopt any revenue-generating practice and deem it 'ordinary' by its own subjective standard." In August of 2017, Judge Hamilton granted final approval to an injunctive relief settlement of the action. As part of the settlement, Facebook has ceased the offending practices and has made changes to its operative relevant user disclosures.

### GOOGLE VIRUS-TRACING APP DATA EXPOSURE

Lieff Cabraser served as Lead Counsel in a privacy class action on behalf of Android users concerning Google's unlawful exposure of confidential medical information and personally identifying information through its digital contract tracing system designed by Google to slow or stop the spread of COVID-19 on Android mobile devices. Plaintiffs resolved the suit via a novel early resolution process with Plaintiffs' consulting expert's review of highly confidential information from Google, which generated significant injunctive relief to fix the fundamental error and legally-binding representations and warranties by Google. On October 31, 2022, Judge Nathanael M.



Cousins granted final approval to the settlement.

### IN RE INTUIT DATA LITIG., NO. 5:15-CV-01778-EJD (N.D. CAL.)

Lieff Cabraser represented identity theft victims in a nationwide class action lawsuit against Intuit for allegedly failing to protect consumers' data from foreseeable and preventable breaches, and by facilitating the filing of fraudulent tax returns through its TurboTax software program. The complaint alleged that Intuit failed to protect data provided by consumers who purchased TurboTax, used to file an estimated 30 million tax returns for American taxpayers every year, from easy access by hackers and other cybercriminals. The complaint further alleged that Intuit was aware of the widespread use of TurboTax exclusively for the filing of fraudulent tax returns. Yet, Intuit failed to adopt basic cyber security policies to prevent this misuse of TurboTax. As a result, fraudulent tax returns were filed in the names of the plaintiffs and thousands of other individuals across America, including persons who never purchased TurboTax. In May 2019, Judge Edward J. Davila of the U. S. District Court for the Northern District of California granted final approval to a settlement that provided all class members who filed a valid claim with free credit monitoring and identity restoration services, and required Intuit to commit to security changes for preventing future misuse of the TurboTax platform.

**MCDONALD, ET AL. V. KILOO A/S, ET AL.**, NO. 3:17-CV-04344-JD; **RUSHING, ET AL. V. THE WALT DISNEY CO., ET AL.**, NO. 3:17-CV-04419-JD; **RUSHING V. VIACOMCBS, ET AL.**, NO. 3:17-CV-04492-JD (N.D. CAL.)

Lieff Cabraser represents parents, on behalf of their children, in federal class action litigation against numerous online game and app producers including Disney, Viacom, and the makers of the vastly popular Subway Surfers game (Kiloo and Sybo), over allegations the companies unlawfully collected, used, and disseminated the personal information of children who played the gaming apps on smart phones, tablets, and other mobile device. The actions proceeded under time-honored laws protecting privacy: a California common law invasion of privacy claim, a California Constitution right of privacy claim, a California unfair competition claim, a New York General Business Law claim, a Massachusetts Unfair and Deceptive Trade Practices claim, and a Massachusetts statutory right to privacy claim.

In April 2021, U.S. District Judge James Donato granted final approval to settlements in the three related child privacy class action lawsuits addressing the illegal collection and monetization of personal data from children in mobile apps. The 16 settlements provide stringent and wide-ranging privacy protections and meaningful changes to



defendants' business practices, ensuring participants in the largely unpoliced mobile advertising industry proactively protect children's privacy in thousands of apps popular with children. Under the settlements, which The New York Times stated "could reshape the entire children's app market," Disney, Viacom, and others as well as their advertising technology partners must stop tracking children across apps and the internet for advertising purposes.

**MATERA V. GOOGLE INC.**, NO. 5:15-CV-04062 (N.D. CAL.)

Lieff Cabraser served as Co-Lead Class Counsel representing consumers in a digital privacy class action against Google Inc. over claims the popular Gmail service conducted unauthorized scanning of email messages to build marketing profiles and serve targeted ads. The complaint alleged that Google routinely scanned email messages that were sent by non-Gmail users to Gmail subscribers, analyzed the content of those messages, and then shared that data with third parties in order to target ads to Gmail users, an invasion of privacy that violated the California Invasion of Privacy Act and the federal Electronic Communications Privacy Act.

In February 2018, Judge Lucy H. Koh of the U. S. District Court for the Northern District of California granted final approval to a class action settlement. Under the settlement, Google made business-related changes to its Gmail service, as part of which, Google will no longer scan the contents of emails sent to Gmail accounts for advertising purposes, whether during the transmission process or after the emails have been delivered to the Gmail user's inbox. The proposed changes, which will not apply to scanning performed to prevent the spread of spam or malware, will run for at least three years.



**EBARLE ET AL. V. LIFELOCK INC.**, NO. 3:15-CV-00258 (N.D. CAL.)

Lieff Cabraser represented consumers who subscribed to LifeLock's identity theft protection services in a nationwide class action fraud lawsuit. The complaint alleged LifeLock did not protect the personal information of its subscribers from hackers and criminals, and specifically that, contrary to its advertisements and statements, LifeLock lacked a comprehensive monitoring network, failed to provide "up-to-the-minute" alerts of suspicious activity, and did an inferior job of providing the same theft protection services that banks and credit card companies provide, often for free. On September 21, 2016, U.S. District Judge Haywood Gilliam, Jr. granted final approval to a $68 million settlement of the case.

**IN RE CARRIER IQ PRIVACY LITIGATION**, MDL NO. 2330 (N.D. CAL.)

Lieff Cabraser represented a plaintiff in Multi-District Litigation against Samsung, LG, Motorola, HTC, and Carrier IQ alleging that smartphone manufacturers violated privacy laws by installing tracking software, called IQ Agent, on millions of cell phones and other mobile devices that use the Android operating system. Without notifying users or obtaining consent, IQ Agent tracks users' keystrokes, passwords, apps, text messages, photos, videos, and other personal information and transmits this data to

cellular carriers. In a 96-page order issued in January 2015, U.S. District Court Judge Edward Chen granted in part, and denied in part, defendants' motion to dismiss. Importantly, the Court permitted the core Wiretap Act claim to proceed as well as the claims for violations of the Magnuson-Moss Warranty Act and the California Unfair Competition Law and breach of the common law duty of implied warranty. In 2016, the Court granted final approval of a $9 million settlement plus injunctive relief provisions.

### *PERKINS V. LINKEDIN CORP.*, NO. 13-CV-04303-LHK (N.D. CAL.)

Lieff Cabraser represented individuals who joined LinkedIn's network and, without their consent or authorization, had their names and likenesses used by LinkedIn to endorse LinkedIn's services and send repeated emails to their contacts asking that they join LinkedIn. On February 16, 2016, the Court granted final approval to a $13 million settlement, one of the largest per-class member settlements ever in a digital privacy class action. In addition to the monetary relief, LinkedIn agreed to make significant changes to Add Connections disclosures and functionality. Specifically, LinkedIn revised disclosures to real-time permission screens presented to members using Add Connections, agreed to implement new functionality allowing LinkedIn members to manage their contacts, including viewing and deleting contacts and

sending invitations, and to stop reminder emails from being sent if users have sent connection invitations inadvertently.

### *CORONA V. SONY PICTURES ENTERTAINMENT,* NO. 2:14-CV-09660-RGK (C.D. CAL.)

Lieff Cabraser served as Plaintiffs' Co-Lead Counsel in class action litigation against Sony for failing to take reasonable measures to secure the data of its employees from hacking and other attacks. As a result, personally identifiable information of thousands of current and former Sony employees and their families was obtained and published on websites across the Internet. Among the staggering array of personally identifiable information compromised were medical records, Social Security Numbers, birth dates, personal emails, home addresses, salaries, tax information, employee evaluations, disciplinary actions, criminal background checks, severance packages, and family medical histories. The complaint charged that Sony owed a duty to take reasonable steps to secure the data of its employees from hacking. Sony allegedly breached this duty by failing to properly invest in adequate IT security, despite having already succumbed to one of the largest data breaches in history only three years ago. In October 2015, an $8 million settlement was reached under which Sony agreed to reimburse employees for losses and harm.





# FIRM ATTORNEYS

**NABILA ABDALLAH**, Associate. *Office*: San Francisco. *Education*: University of California, Berkeley School of Law (J.D., 2022); Stanford University (B.A., 2014).
Full online bio: https://www.lieffcabraser.com/attorneys/nabila-abdallah/

**PATRICK I. ANDREWS**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, Environmental and Toxic Exposures, False Claims Act, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: University of California, Hastings College of the Law (J.D., *magna cum laude*, 2016); University of California, Berkeley (B.A. 2011).
Full online bio: https://lieffcabraser.com/attorneys/patrick-i-andrews/

**DONALD C. ARBITBLIT**, Partner. *Office*: San Francisco. *Practice Areas*: Environmental and Toxic Exposures, Personal Injury and Products Liability. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 1979); Tufts University (B.S., *magna cum laude*, 1974).
Full online bio: https://lieffcabraser.com/attorneys/donald-c-arbitblit/

**TANYA ASHUR**, Staff Attorney. *Office*: San Francisco. *Education*: Chicago-Kent College of Law (J.D., 2000); University of Illinois (B.A., 1997).
Full online bio: https://lieffcabraser.com/attorneys/tanya-ashur/

**EDWARD A. BAKER**, Of Counsel. *Office*: New York. *Education*: University of Wisconsin-Madison Law School (J.D, cum laude, 2001); Yale University (M.A.); Tufts University (M.A.); Dartmouth College (B.A.).
Full online bio: https://www.lieffcabraser.com/attorneys/edward-baker/

**MICHELLE BAKER**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2003); University of California, San Diego (B.A., 1998).
Full online bio: https://lieffcabraser.com/attorneys/michelle-baker/

**MARGARET BECKO**, Associate. *Office*: New York. Education: Harvard Law School (J.D., 2020); Columbia University (B.A., magna cum laude, 2015).
Full online bio: https://https://lieffcabraser.com/attorneys/margaret-mattes/

**PHILIPPE BENOIT**, Staff Attorney. *Office*: San Francisco. *Education*: Boston College Law School (J.D., 2007); University of California, Los Angeles (B.A., 2001).
Full online bio: https://lieffcabraser.com/attorneys/philippe-benoit/

**KATHERINE LUBIN BENSON**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Securities Fraud and Financial Fraud. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2008); University of California Los Angeles (B.A., *cum laude*,2005); Universidad de Sevilla (2003).
Full online bio: https://lieffcabraser.com/attorneys/katherine-l-benson/

**WILLIAM BERNSTEIN**, Of Counsel. *Office*: San Francisco. *Practice Areas*: Antitrust, Consumer Protection, False Claims Act, Securities Fraud and Financial Fraud. *Education*: University of San Francisco (J.D., 1975); University of Pennsylvania (B.A., general honors, 1972).
Full online bio: https://lieffcabraser.com/attorneys/william-bernstein/

**ABBY BILKISS**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2003); University of California, Berkeley (M.A., 2007); Willamette University (B.S., *cum laude*, 2000).
Full online bio: https://lieffcabraser.com/attorneys/abby-bilkiss/

**KEVIN R. BUDNER**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Defective Products, False Claims Act, Personal Injury and Products Liability. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2012); University of California Hastings College of the Law (2009-2010); Wesleyan University (B.A., 2005).
Full online bio: https://lieffcabraser.com/attorneys/kevin-r-budner/

**MATIAS BUSTAMANTE**, Staff Attorney. *Office*: San Francisco. *Education*: University of Southern California Gould School of Law (J.D., 2011), California State University, Fresno (B.A., *summa cum laude*, 2008).
Full online bio: https://lieffcabraser.com/attorneys/matias-bustamante/

**KENNETH S. BYRD**, Partner. *Office*: Nashville. *Practice Areas*: Consumer Protection, Defective Products. *Education*: Boston College Law School (J.D., *cum laude*, 2004), Samford University (B.S., *cum laude*, 1995).
Full online bio: https://lieffcabraser.com/attorneys/kenneth-s-byrd/

**ELIZABETH J. CABRASER**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Defective Products, Native American Rights, Personal Injury and Products Liability, Securities Fraud and Financial Fraud, Survivor Rights and Advocacy. *Education*: University of California, Berkeley, School of Law (Berkeley Law), Berkeley, California (J.D., 1978); University of California at Berkeley (A.B., 1975).
Full online bio: https://lieffcabraser.com/attorneys/elizabeth-j-cabraser/

**LINDSAY CARR**, Staff Attorney. *Office*: San Francisco. *Education*: Tulane Law School (J.D., 2008), California State University at Monterey Bay (B.S., 2005).
Full online bio: https://lieffcabraser.com/attorneys/lindsay-carr/

**MARK P. CHALOS**, Managing Partner, Nashville Office. *Practice Areas*: Consumer Protection, Defective Products, Employment Discrimination and Unfair Employment Practices, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*:  Emory University School of Law (J.D., 1998); Vanderbilt University (B.A., 1995).
Full online bio: https://lieffcabraser.com/attorneys/mark-p-chalos/

**LIN Y. CHAN**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Employment Discrimination and Unfair Employment Practices, False Claims Act. *Education*: Stanford Law School (J.D. 2007); Wellesley College (B.A., *summa cum laude*, 2001).
Full online bio: https://lieffcabraser.com/attorneys/lin-y-chan/

**VICTORIA A. CHINN**, Staff Attorney. *Office*: San Francisco. *Education*: University of San Francisco School of Law (J.D., 1999), University of California, Davis (B.A., 1991).
Full online bio: https://lieffcabraser.com/attorneys/victoria-a-chinn/

**DANIEL P. CHIPLOCK**, Partner. *Practice Areas*: Consumer Protection, Securities Fraud and Financial Fraud. *Education*:  Stanford Law School (J.D., 2000); Columbia University (B.A., *summa cum laude*, 1994).
Full online bio: https://lieffcabraser.com/attorneys/daniel-p-chiplock/

**BRITT CIBULKA**, Staff Attorney. *Office*: San Francisco. *Education*: Northwestern University School of Law (J.D., 1999); Kalamazoo College (B.A., 1991).
Full online bio: https://lieffcabraser.com/attorneys/britt-cibulka/

**CHRISTOPHER COLEMAN**, Associate. *Office*: Nashville. *Practice Areas*: Consumer Protection, Civil/Human Rights and Social Justice, Defective Products, False Claims Act, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: Northwestern University School of Law (J.D., *cum laude*, 2003); Tilburg University, Tilburg, The Netherlands; Catholic University of Leuven, Leuven, Belgium, 2002; Northwestern University Graduate School (M.A., 2000); University of Virginia (M.A., English, 1995); Vanderbilt University (B.A., *magna cum laude*, 1993).
Full online bio: https://lieffcabraser.com/attorneys/christopher-e-coleman/

**DOUGLAS CUTHBERTSON**, Partner. *Practice Areas*: Consumer Fraud, Cybersecurity and Data Privacy, Securities Fraud and Financial Fraud. *Education*: Fordham University School of Law (J.D., *cum laude*, 2007); Bowdoin College (B.A., *summa cum laude*, 1999).
Full online bio: https://lieffcabraser.com/attorneys/douglas-cuthbertson/

**JALLÉ DAFA**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy, Survivor Rights and Advocacy. *Education*: University of California, Berkeley School of Law (J.D., 2011); Brown University (B.A., 2007).
Full online bio: https://lieffcabraser.com/attorneys/jalle-dafa/

**KELLY M. DERMODY**, Managing Partner, San Francisco Office. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy, Employment Discrimination and Unfair Employment Practices, Survivor Rights and Advocacy. *Education*:  University of California, Berkeley, School of Law (Berkeley Law) (J.D. 1993); Harvard University (A.B., *magna cum laude*, 1990).
Full online bio: https://lieffcabraser.com/attorneys/kelly-m-dermody/

**NIMISH R. DESAI**, Partner. *Office*: San Francisco. *Practice Areas*: Cybersecurity and Data Privacy, Defective Products, False Claims Act, Personal Injury and Product Liability. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2006) University of Texas, Austin, (B.S. & B.A., High Honors, 2002).
Full online bio: https://lieffcabraser.com/attorneys/nimish-r-desai/

**NICHOLAS DIAMAND**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy, Securities Fraud and Financial Fraud. *Education*: Columbia University School of Law (LL.M., 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude*, 1992).
Full online bio: https://lieffcabraser.com/attorneys/nicholas-diamand/

**PAULINA DO AMARAL**, Partner. *Office*: New York. *Practice Areas*: Defective Products, Environmental and Toxic Exposures, Personal Injury and Products Liability. *Education*:  University of California Hastings College of Law (J.D., 1996); University of Rochester (B.A., 1988).
Full online bio: https://lieffcabraser.com/attorneys/paulina-do-amaral/

**WESLEY DOZIER,** Associate. *Office*: Nashville. *Education*: Vanderbilt Law School (J.D., cum laude, May 2019); Vanderbilt University (B.A., 2016).
Full online bio: https://www.lieffcabraser.com/attorneys/wesley-dozier/

**DAN DRACHLER**, Of Counsel. *Office*: Seattle. *Practice Areas*: Antitrust, Consumer Protection, Native American Rights, Securities Fraud and Financial Fraud. *Education*: New York Law School (J.D., *cum laude*); Law Review; John Ben Snow Merit Scholar; University of South Carolina (B.A., *cum laude*).
Full online bio: https://lieffcabraser.com/attorneys/dan-drachler/

**WILSON M. DUNLAVEY**, Partner. *Office*: New York. *Practice Areas*: Environmental and Toxic Exposures, Personal Injury and Products Liability. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2015); Humboldt University in Berlin (Ph.D., *cum laude*, 2015; Dual M.A., Magister Artium, History and Philosophy, 2015); St. John's College (B.A., 2003).
Full online bio: https://lieffcabraser.com/attorneys/wilson-dunlavey/

**ERIC B. FASTIFF**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Native American Rights. *Education*: Cornell Law School (J.D., 1995); London School of Economics and Political Science (M. Sc. Econ. 1991); Tufts University (B.A., *cum laude*, *magno cum honore in thesi*, 1990).
Full online bio: https://lieffcabraser.com/attorneys/eric-b-fastiff/

**STEVEN E. FINEMAN**, Firm-Wide Managing Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Personal Injury and Products Liability, Securities Fraud and Financial Fraud. *Education*: University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (1983-84).
Full online bio: https://lieffcabraser.com/attorneys/steven-e-fineman/

**WENDY R. FLEISHMAN**, Partner. *Office*: New York. *Practice Areas*: Defective Products, False Claims Act, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: University of Pennsylvania (Post-Baccalaureate, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974).
Full online bio: https://lieffcabraser.com/attorneys/wendy-r-fleishman/

**JOSE GARCIA**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Los Angeles School of Law (J.D., 1985); Loyola University of Los Angeles (B.A.).
Full online bio: https://lieffcabraser.com/attorneys/jose-garcia/

**MELISSA GARDNER**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy, Personal Injury and Products Liability. *Education*: Harvard Law School (J.D. 2011); Western Washington University (B.A., *magna cum laude*, 2005).
Full online bio: https://lieffcabraser.com/attorneys/melissa-gardner/

**ROGER GEISSLER**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2012); University of Pennsylvania (B.A., *summa cum laude*, 1998).
Full online bio: https://lieffcabraser.com/attorneys/roger-geissler/

**RACHEL GEMAN**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Employment Discrimination and Unfair Employment Practices, False Claims Act. *Education*:  Columbia University School of Law (J.D. 1997); Harvard University (A.B., *cum laude*, 1993).
Full online bio: https://lieffcabraser.com/attorneys/rachel-geman/

**BRENDAN P. GLACKIN**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Securities Fraud and Financial Fraud. *Education*: Harvard Law School (J.D., *cum laude*, 1998); University of Chicago (A.B., 1995).
Full online bio: https://lieffcabraser.com/attorneys/brendan-p-glackin/

**KELLY GRALEWSKI**, Staff Attorney. *Office*: San Francisco. *Education*: California Western School of Law (J.D., 1997); California State University at Chico (B.S. & B.A., 1992).
Full online bio: https://lieffcabraser.com/attorneys/kelly-gralewski/

**CHRISTINA GRANDEL**, Associate. *Office*: Munich. *Practice Areas*: Antitrust, Consumer Protection, Defective Products, Personal Injury/Mass Tort. *Education*: Second German State Exam, Munich, Germany, 2018; First German State Exam, Augsburg, Germany, 2016.
Full online bio: https://www.lieffcabraser.com/attorneys/christina-grandel/

**LAURA M. HALEY**, Staff Attorney. *Office*: San Francisco. *Education*: University of San Francisco School of Law (J.D., 2013); University of California, Berkeley (B.A., 2009).
Full online bio: https://lieffcabraser.com/attorneys/laura-m-haley/

**AVERY S. HALFON**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: Harvard Law School (J.D., *cum laude*, 2015); Stanford University (B.A., 2010).
Full online bio: https://lieffcabraser.com/attorneys/avery-halfon/

**DEAN M. HARVEY**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Consumer Protection, Employment Discrimination and Unfair Employment Practices. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2006); University of Minnesota, Twin Cities (B.A., *summa cum laude*, 2002).
Full online bio: https://lieffcabraser.com/attorneys/dean-m-harvey/

**EMILY N. HARWELL**, Associate. *Office*: New York. *Practice Areas*: Environmental Law, Native American Rights. *Education*: Cornell Law School (J.D. 2022); Dartmouth College (B.A., 2016).
Full online bio: https://lieffcabraser.com/attorneys/emily-harwell/

**AMELIA HASELKORN**, Associate. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Civil/Human Rights and Social Justice, Cybersecurity and Data Privacy, Defective Products, Environmental and Toxic Exposures. *Education*: University of California, Irvine School of Law (J.D., *magna cum laude*, 2021); Pitzer College, Claremont (B.A., with honors, 2016).
Full online bio: https://lieffcabraser.com/attorneys/amelia-haselkorn/

**LEXI J. HAZAM**, Partner. *Office*: San Francisco. *Practice Areas*: False Claims Act, Personal Injury and Product Liability. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2001); Stanford University (B.A., 1995, M.A., 1996).
Full online bio: https://lieffcabraser.com/attorneys/lexi-j-hazam/

**RICHARD M. HEIMANN**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Consumer Protection, Personal Injury and Products Liability, Securities Fraud and Financial Fraud. *Education*: Georgetown University (J.D., 1972); University of Florida (B.S.B.A., with honors, 1969).
Full online bio: https://lieffcabraser.com/attorneys/richard-m-heimann/

**ROGER N. HELLER**, Partner. *Office*: San Francisco. *Practice Area*: Consumer Protection. *Education*: Columbia University School of Law (J.D., 2001); Emory University (B.A., 1997). Full online bio: https://lieffcabraser.com/attorneys/roger-n-heller/

**JAMES HERD**, Staff Attorney. *Office*: San Francisco. *Education*: Hastings College of the Law (J.D., 1992); California State University (B.A., 1989). Full online bio: https://lieffcabraser.com/attorneys/james-herd/

**NEEL HEROLD**, Associate. **Office**: Munich. **Education**: Second German State Exam, Kassel, Germany (2022); First German State Exam, Jena, Germany (2020). Full online bio: https://www.lieffcabraser.com/attorneys/neel-herold/

**DANIEL M. HUTCHINSON**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Employment Discrimination and Unfair Employment Practices, Survivor Rights and Advocacy. *Education*:  University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2005) University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999). Full online bio: https://lieffcabraser.com/attorneys/daniel-m-hutchinson/

**KAREN L. JONES**, Staff Attorney. *Office*: San Francisco. *Education*: University of California at Davis School of Law (J.D., 1989); University of California, Santa Cruz (B.A., 1985). Full online bio: https://lieffcabraser.com/attorneys/karen-l-jones/

**CHRISTOPHER JORDAN**, Staff Attorney. *Office*: San Francisco. *Education*: Stanford Law School (J.D., 2004); University of North Carolina (B.A., 2000). Full online bio: https://lieffcabraser.com/attorneys/christopher-jordan/

**ANDREW KAUFMAN**, Partner. *Office*: Nashville. *Practice Areas*: Consumer Protection, Personal Injury and Products Liability. *Education*: Harvard Law School (J.D., *cum laude*, 2012); Carleton College (B.A., *magna cum laude*, 2007). Full online bio: https://lieffcabraser.com/attorneys/andrew-kaufman/

**MURIEL KENFIELD-KELLEHER**, Associate. **Office**: New York. **Education**: Harvard Law School (J.D., 2021); The University of Illinois at Urbana-Champaign (B.A., 2015). Full online bio: https://www.lieffcabraser.com/attorneys/muriel-kenfield-kelleher/

**DENNY KIM**, Staff Attorney. *Office*: San Francisco. *Education*: University of San Diego School of Law (J.D., 2005); University of California, Berkeley (B.A., 1996). Full online bio: https://lieffcabraser.com/attorneys/denny-kim/

**JASON KIM**, Staff Attorney. *Office*: San Francisco. *Education*: Thomas Jefferson School of Law (J.D., 2009); Fordham University Law School, Fordham-SKKU Summer Institute of International Law (2008); University of California, Davis (B.A., 2002). Full online bio: https://lieffcabraser.com/attorneys/jason-kim/

**DR. KATHARINA KOLB**, Managing Partner, Munich Office. *Practice Area*: Antitrust. *Education*: Second German State Exam, Munich, Germany, 2010; Ludwig-Maximilians-University, Munich, Germany, Dissertation, 2008; First German State Exam, Munich, Germany, 2007. Full online bio: https://lieffcabraser.com/attorneys/katharina-kolb/

**MICHELLE LAMY**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Civil/Human Rights and Social Justice, Employment Discrimination and Unfair Employment Practices, Survivor Rights and Advocacy. *Education*: Stanford Law School (J.D., 2015); College of Arts & Sciences, Boston College (B.A., *summa cum laude*, 2009).
Full online bio: https://lieffcabraser.com/attorneys/michelle-lamy/

**ALEX LARRABEE**, Staff Attorney. *Office*: San Francisco. *Education*: University of California College of the Law, San Francisco (J.D. cum laude, 2012); Harvard University (B.A., 2008).
Full online bio: https://www.lieffcabraser.com/attorneys/alex-larrabee/

**HANNAH LAZARZ**, Associate. *Office*: Nashville. *Practice Area:* Personal Injury and Products Liability. *Education*: UCLA School of Law (J.D., 2020); Vanderbilt University (B.A., 2017).
Full online bio: https://www.lieffcabraser.com/attorneys/hannah-lazarz/

**LYDIA LEE**, Of Counsel. *Office*: San Francisco. *Practice Areas*: Securities Fraud and Financial Fraud. *Education*: Oklahoma City University, School of Law (J.D., 1983); University of Central Oklahoma (B.A., 1980).
Full online bio: https://lieffcabraser.com/attorneys/lydia-lee/

**NICK W. LEE**, Associate. *Office*: San Francisco. *Practice Areas*: Antitrust, Consumer Protection, Environmental and Toxic Exposures, Personal Injury and Products Liability. *Education*: University of California, Davis School of Law (J.D. 2020); University of California, San Diego (B.A. 2014).
Full online bio: https://lieffcabraser.com/attorneys/nick-w-lee/

**SHARON M. LEE**, Partner. *Office*: New York. *Practice Area*: Securities Fraud and Financial Fraud. *Education*: St. John's University School of Law (J.D., 2001); St. John's University (M.A. 1998); St. John's University (B.A. 1997).
Full online bio: https://lieffcabraser.com/attorneys/sharon-lee/

**JAMES LEGGETT**, Staff Attorney. *Office*: San Francisco. *Education*: Santa Clara University School of Law (J.D., *cum laude*, 2012) Thomas Jefferson School of Law (2009-2010); University of California, Davis (B.A., 2004).
Full online bio: https://lieffcabraser.com/attorneys/james-leggett/

**BRUCE W. LEPPLA**, Partner. *Practice Areas*: Antitrust, Securities Fraud and Financial Fraud. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D.); University of California at Berkeley (M.S.); Yale University (B.A., *magna cum laude*).
Full online bio: https://lieffcabraser.com/attorneys/bruce-w-leppla/

**MICHAEL LEVIN-GESUNDHEIT**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Employment Discrimination and Unfair Employment Practices, Personal Injury and Products Liability. *Education*: Stanford Law School (J.D., 2013); Harvard University (A.B., *magna cum laude*, 2008).
Full online bio: https://lieffcabraser.com/attorneys/michael-levin-gesundheit/

**FAITH E.A. LEWIS,** Associate. *Office*: San Francisco. *Practice Areas*: Defective Products, Employment Discrimination and Unfair Employment Practices. *Education*: Yale Law School (J.D., 2023); American University (B.A., 2020); London School of Economics and Political Science (2019).
Full online bio: https://www.lieffcabraser.com/attorneys/faith-e-a-lewis/

**JAHI LIBURD**, Associate. *Office*: New York. *Practice Areas*: Employment Discrimination and Unfair Employment Practices; Securities and Financial Fraud. *Education*: Brooklyn Law School (J.D., 2022); City University of New York (Baruch College) (B.A., 2013).
Full online bio: https://lieffcabraser.com/attorneys/jahi-liburd/

**JASON L. LICHTMAN**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, False Claims Act. *Education*: University of Michigan Law School (J.D., *cum laude*, 2006); Northwestern University (B.A., 2000).
Full online bio: https://lieffcabraser.com/attorneys/jason-l-lichtman/

**COLEEN LIEBMANN**, Staff Attorney. *Office*: San Francisco. *Education*: American University, Washington College of Law (LL.M., 2004); University of San Francisco School of Law (J.D., 2003); University of the Pacific (B.A., 1992).
Full online bio: https://lieffcabraser.com/attorneys/coleen-liebman/

**SARAH R. LONDON**, Partner. *Office*: San Francisco. *Practice Areas*: Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: National Institute for Trial Advocacy, Building Trial Skills: Boston (Winter 2013); University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2009); Northwestern University (B.A., *cum laude*, 2002).
Full online bio: https://lieffcabraser.com/attorneys/sarah-r-london/

**JOHN MAHER**, Associate. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy. *Education*: University of California, Berkeley School of Law – Berkeley, CA (J.D., 2016); Yale University – New Haven, CT (M.A., 2013); Oxford University (B.A., 2009, First Class Honors *summa cum laude*).
Full online bio: https://lieffcabraser.com/attorneys/john-maher/

**MIRIAM E. MARKS**, Associate. *Office*: San Francisco. *Practice Areas*: Personal Injury and Products Liability. *Education*: New York University School of Law (J.D., 2019); Stanford University (M.A. and B.A. with Departmental Honors, 2012).
Full online bio: https://lieffcabraser.com/attorneys/miriam-e-marks/

**ANNIKA K. MARTIN**, Partner. *Office*: New York. *Practice Areas*: Antitrust, Consumer Protection, Defective Products, Environmental and Toxic Exposures, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: Law Center, University of Southern California (J.D., 2004); Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999).
Full online bio: https://lieffcabraser.com/attorneys/annika-k-martin/

**KATHERINE MCBRIDE**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, False Claims Act, Personal Injury and Products Liability. *Education*: Stanford Law School (J.D., pro bono distinction, 2015) Boston College (B.A., *summa cum laude*, 2011).
Full online bio: https://lieffcabraser.com/attorneys/katherine-mcbride/

**JAY MCKIBBEN**, Staff Attorney. *Office*: San Francisco. *Education*: Empire College School of Law (J.D., 1991); UCLA School of Law; Stanford University (B.A., 1984).
Full online bio: https://lieffcabraser.com/attorneys/jay-mckibben/

**KELLY MCNABB**, Partner. *Office*: New York. *Practice Areas*: Personal Injury and Products Liability. *Education*: University of Minnesota Law School (J.D., *cum laude*, 2012); University of Minnesota Twin Cities College of Liberal Arts (B.A. 2008).
Full online bio: https://lieffcabraser.com/attorneys/kelly-mcnabb/

**MICHAEL J. MIARMI**, Partner. *Office*: New York. *Practice Areas*: Securities Fraud and Financial Fraud. *Education*: Fordham Law School (J.D., 2005); Yale University (B.A., *cum laude*, 2000).
Full online bio: https://lieffcabraser.com/attorneys/michael-miarmi/

**ANDREEA MICLUT**, Staff Attorney. *Office*: San Francisco. *Education*: Golden Gate University School of Law (J.D., 2007); University of California, Berkeley (B.A., 2004).
Full online bio: https://lieffcabraser.com/attorneys/andreea-miclut/

**SCOTT MILORO**, Staff Attorney. *Office*: New York. *Education*: Benjamin N. Cardozo School of Law (J.D., 2006); State University of New York at Buffalo (M.S., 1996); Cornell University (B.S., 1994).
Full online bio: https://lieffcabraser.com/attorneys/scott-miloro/

**JESSICA MOLDOVAN**, Associate. *Office*: New York. *Practice Areas*: Antitrust, Employment Discrimination and Unfair Employment Practices, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: New York University School of Law, New York, NY (J.D., *cum laude*, 2017); Trinity College Dublin, Dublin, Ireland (M. Phil., 2014); Yale University, New Haven, CT (B.A. *magna cum laude*, 2011).
Full online bio: https://lieffcabraser.com/attorneys/jessica-moldovan/

**ROBERT J. NELSON**, Partner. *Office*: San Francisco. *Practice Areas*: Defective Products, Environmental and Toxic Exposures, False Claims Act, Personal Injury and Products Liability. *Education*:  New York University School of Law (J.D., 1987): Cornell University (A.B., *cum laude*, 1982) London School of Economics (General Course, 1980-81).
Full online bio: https://lieffcabraser.com/attorneys/robert-j-nelson/

**PHIANH NGUYEN**, Staff Attorney. *Office*: San Francisco. *Education*: Golden Gate University School of Law (J.D., 2008); University of Florida, Gainesville (B.S., 2003).
Full online bio: https://lieffcabraser.com/attorneys/phianh-nguyen/

**PHONG-CHAU G. NGUYEN**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Defective Products, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: University of San Francisco School of Law (J.D. 2012); University of California, Berkeley (B.A., Highest Honors; Distinction in General Scholarship, 2008).
Full online bio: https://lieffcabraser.com/attorneys/phong-chau-g-nguyen/

**JOHN T. NICOLAOU**, Partner. *Office*: New York. *Practice Areas*: Securities Fraud and Financial Fraud. *Education*: Columbia Law School (J.D., 2012); Northwestern University (M.A., 2009); Vanderbilt University (B.A., *summa cum laude*, 2008).
Full online bio: https://lieffcabraser.com/attorneys/john-t-nicolaou/

**LEAH NUTTING**, Staff Attorney. *Office*: San Francisco. *Education*: Harvard Law School (J.D., 2002); University of California, Berkeley (B.A., Highest Distinction in General Scholarship, Highest Honors in Anthropology, Regents Scholar, 1999).
Full online bio: https://lieffcabraser.com/attorneys/leah-nutting/

**MARISSA OH**, Staff Attorney. *Office*: San Francisco. *Education*: Stanford Law School (J.D., 2004); Rice University (B.A., 1999).
Full online bio: https://lieffcabraser.com/attorneys/marissa-oh/

**GABRIEL PANEK**, Associate. *Office*: New York. *Practice Areas*: Consumer Protection, Civil/Human Rights and Social Justice, Defective Products, Securities Fraud and Financial Fraud, Survivor Rights and Advocacy. *Education*: New York University School of Law (J.D., *cum laude*, 2017); University of Chicago (A.B., with honors, 2013).
Full online bio: https://lieffcabraser.com/attorneys/gabriel-panek/

**JAE PARK**, Staff Attorney. *Office*: San Francisco. *Education*: University of Pennsylvania Law School (J.D., 2005); University of Texas at Austin (B.S., 1999).
Full online bio: https://lieffcabraser.com/attorneys/jae-park/

**SEAN A. PETTERSON**, Partner. *Office*: New York. *Education*: New York University School of Law (J.D., 2015); Brandeis University (B.A., *summa cum laude*, 2011).
Full online bio: https://lieffcabraser.com/attorneys/sean-a-petterson/

**KATHERINE VON KASESBERG POST**, Staff Attorney. *Office*: San Francisco. *Education*: University of San Francisco School of Law (J.D., 1983), LLM in Taxation (2017); Mills College (B.A., 1980).
Full online bio: https://lieffcabraser.com/attorneys/katherine-post/

**PETER ROOS**, Staff Attorney. *Office*: San Francisco. *Education*: Rijksuniversiteit Limburg Faculteit der Rechtsgeleerdheid (J.D., 1989); Maastricht Conservatory of Music (B.A., 1988); University of San Francisco (LL.M., 2001).
Full online bio: https://lieffcabraser.com/attorneys/peter-roos/

**JULES ROSS**, Associate. *Office:* San Francisco. *Education*: Stanford Law School (J.D., 2022); Carnegie Mellon University (B.S., 2019).
Full online bio: https://www.lieffcabraser.com/attorneys/jules-ross/

**DAVID RUDOLPH**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Cybersecurity and Data Privacy. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2004); Rutgers University (Ph.D. Program, 1999-2001); University of California, Berkeley (B.A. 1998).
Full online bio: https://lieffcabraser.com/attorneys/david-rudolph/

**PATRICK RYAN**, Staff Attorney. *Office*: San Francisco. *Education*: Golden Gate University School of Law (J.D., 2010); Bard College (B.A.).
Full online bio: https://lieffcabraser.com/attorneys/patrick-ryan/

**CAMERON SAUNDERS**, Staff Attorney. *Office*: San Francisco. *Education*: Golden Gate University, School of Law (J.D.); California Polytechnic State University – San Luis Obispo (B.A.).
Full online bio: https://lieffcabraser.com/attorneys/cameron-saunders/

**VERA SCHEDEL**, Associate. *Office*: Munich. *Practice Area*: Antitrust. *Education*: Second German State Exam, Berlin, Germany (2019); First German State Exam, University of Berlin, Germany (2015); Novosibirsk State Teacher Training University, Novosibirsk, Russia (M.A., French & English Teacher, 2008).
Full online bio: https://lieffcabraser.com/attorneys/vera-schedel/

**JONATHAN D. SELBIN**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, Survivor Rights and Advocacy. *Education*: Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989).
Full online bio: https://lieffcabraser.com/attorneys/jonathan-d-selbin/

**DANIEL E. SELTZ**, Partner. *Office*: New York. *Practice Areas*: Antitrust, Consumer Protection, Survivor Rights and Advocacy. *Education*: New York University School of Law (J.D., 2003); Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, 1997).
Full online bio: https://lieffcabraser.com/attorneys/daniel-e-seltz/

**ANNE B. SHAVER**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Employment Discrimination and Unfair Employment Practices. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2007); University of California, Santa Cruz (B.A., *cum laude*, 2003).
Full online bio: https://lieffcabraser.com/attorneys/anne-b-shaver/

**MIKE SHEEN**, Partner. *Office*: San Francisco. *Practice Areas*: Cybersecurity and Data Privacy, Securities Fraud and Financial Fraud. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2012); University of California, Berkeley (B.A., 2004).
Full online bio: https://lieffcabraser.com/attorneys/mike-sheen/

**JERRY SHINDELBOWER**, Staff Attorney. *Office*: San Francisco. *Education*: Golden Gate University School of Law (J.D., 2011); University of California, Davis (B.A., 2006).
Full online bio: https://lieffcabraser.com/attorneys/jerry-shindelbower/

**MICHAEL W. SOBOL**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy, Defective Products. *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983).
Full online bio: https://lieffcabraser.com/attorneys/michael-w-sobol/

**DAVID S. STELLINGS**, Partner. *Practice Areas*: Consumer Protection, Securities Fraud and Financial Fraud. *Education*: New York University School of Law (J.D., 1993); Cornell University (B.A., *cum laude*, 1990).
Full online bio: https://lieffcabraser.com/attorneys/david-s-stellings/

**REILLY STOLER**, Partner. *Office*: San Francisco. *Practice Areas*: Personal Injury and Products Liability. *Education*: University of California, Hastings College of the Law (J.D., *cum laude*, 2014); Brandeis University (B.A., *cum laude*, 2008).
Full online bio: https://lieffcabraser.com/attorneys/reilly-stoler/

**RYAN STURTEVANT**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2005); University of California at Santa Barbara (M.A., 2003); University of California at Santa Barbara (B.A., 2001).
Full online bio: https://lieffcabraser.com/attorneys/ryan-sturtevant/

**YUN SWENSON**, Staff Attorney. *Office*: San Francisco. *Education*: Cornell Law School (J.D., 2003); University of California, Berkeley (B.A., 1998).
Full online bio: https://lieffcabraser.com/attorneys/yun-swenson/

**DR. MARTHA SZABÓ-ANNIGHÖFER**, Associate. *Office*: Munich. *Practice Area*: Antitrust. *Education*: Second German State Exam, Göttingen, Germany (2020); Georg-August-University, Göttingen, Germany, Dissertation (2019); First German State Exam, Göttingen, Germany (2014).
Full online bio: https://lieffcabraser.com/attorneys/martha-szabo-annighofer/

**BENJAMIN A. TROUVAIS**, Associate. *Office*: San Francisco. *Education*: University of California, Berkeley School of Law (J.D., 2023); University of Illinois at Urbana-Champaign, College of Liberal Arts and Sciences (B.A., magna cum laude, 2020).
Full online bio: https://www.lieffcabraser.com/attorneys/benjamin-a-trouvais/

**OLIVIA VETESI**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2010); University of California, Berkeley (B.A., 2003).
Full online bio: https://lieffcabraser.com/attorneys/olivia-vetesi/

**FABRICE N. VINCENT**, Partner. *Office*. San Francisco. *Practice Areas* : Defective Products, Environmental and Toxic Exposures, False Claims Act, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989).
Full online bio: https://lieffcabraser.com/attorneys/fabrice-n-vincent/

**ROSE WALLER**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2001); University of California, Berkeley (B.A., 1996).
Full online bio: https://lieffcabraser.com/attorneys/rose-waller/

**ANNIE M. WANLESS**, Associate. *Office*: San Francisco. *Education*: Stanford Law School (J.D., 2021); University of Southern California (B.A., 2014).
Full online bio: https://www.lieffcabraser.com/attorneys/annie-m-wanless/

**DANIEL WASSON**, Associate. *Office*: San Francisco. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2002); University of California, Los Angeles (B.A., 1998).
Full online bio: https://lieffcabraser.com/attorneys/daniel-wasson/

**FRANK WHITE**, Associate. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Employment Discrimination and Unfair Employment Practices, Defective Products, Personal Injury and Products Liability. *Education*: University of Pennsylvania Law School (J.D., 2016); Wharton School of Business University of Pennsylvania (Certificate in Management, 2016); University of Chicago (B.A., General Honors, 2010).
Full online bio: https://lieffcabraser.com/attorneys/frank-white/

**GAIL WILLIAMS**, Staff Attorney. *Office*: San Francisco. *Education*: Boston College Law School (J.D., 2010); Yale University (B.A., 2007).
Full online bio: https://lieffcabraser.com/attorneys/gail-williams/

**AYA MACHIDA WINSTON**, Staff Attorney. *Office*: San Francisco. *Education*: University of California at Los Angeles School of Law (J.D., 2010); University of California at Los Angeles (B.A., 2006).
Full online bio: https://lieffcabraser.com/attorneys/aya-machida-winston/

**CAITLIN WOODS**, Associate. *Office*: San Francisco. *Practice Areas*: Antitrust, Civil/Human Rights and Social Justice, Employment Discrimination and Unfair Employment Practices, Personal Injury and Products Liability. *Education*: University of California, Berkeley School of Law (J.D., High Distinction in General Scholarship, 2020); University of California, Berkeley (B.A., High Honors in General Distinction, 2015); University of California, Santa Barbara (2013).
Full online bio: https://lieffcabraser.com/attorneys/caitlin-woods/

**SARAH D. ZANDI**, Associate. *Office*: San Francisco. *Practice Areas*: Antitrust, False Claims Act, Personal Injury and Products Liability. *Education*: Stanford Law School (J.D., June 2021); University of Pennsylvania (B.A., *summa cum laude*, 2017).
Full online bio: https://lieffcabraser.com/attorneys/sarah-d-zandi/

**JONATHAN ZAUL**, Staff Attorney. *Office*: San Francisco. *Education*: University of San Francisco School of Law (J.D., 2009); University of Hong Kong, Faculty of Law – Santa Clara University International Law Program, Hong Kong; University of California, Berkeley (B.A., 2004).
Full online bio: https://lieffcabraser.com/attorneys/jonathan-zaul/

**TISEME ZEGEYE**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Employment Discrimination and Unfair Employment Practices. *Education*: New York University School of Law (J.D. 2011); The College of William and Mary (B.A., *cum laude*, 2008).
Full online bio: https://lieffcabraser.com/attorneys/tiseme-zegeye/

# LIEFF CABRASER IN THE COMMUNITY

Lieff Cabraser proudly supports the goals of civil rights, human rights, increased access to legal services, and initiatives by the legal community to improve civil justice.

Lieff Cabraser has sponsored the Bay Area Minority Law Student Scholarship Program conducted by the Bar Association of San Francisco (BASF). We also support the National Association for Public Interest Law fellowship program. Fellowships made possible by Lieff Cabraser's sponsorship have included work at the East Bay Community Law Center in Oakland, California, the Employment Law Center in San Francisco, California, and the NOW Legal Defense in New York, New York.

## How to Be a Good Ally:
## A Strategic Engagement Conference

In late 2016 San Francisco office managing partner Kelly Dermody conceived and coordinated the enormously successful SF Bay Area "How to be a Good Ally" Strategic Engagement Conference, attended by 1,200 lawyers. Held at the Bill Graham Civic Auditorium in January 2017, the symposium united scores of California and national non-profit organizations with the legal community in an effort to assist communities in need, including in the areas of hate crimes and Anti-Semitism, government targeting of Muslims, attacks on immigrants and the undocumented, domestic violence and sexual assault, healthcare for people with disabilities and medical vulnerabilities, backlash against the LGBT community, criminalization of communities of color, reproductive rights, worker justice, and saving the environment.

## Lieff Cabraser's Additional Community Sponsorships

For over 20 years, Lieff Cabraser sponsored the radio series "Perspectives," airing on the public broadcasting station KQED-FM in the San Francisco Bay Area. The series offers listeners social and political opinion on a broad spectrum of contemporary issues. We remain committed to sponsoring public radio.

In 2007, Lieff Cabraser attorneys assisted in the launching of the Carver HEARTS Project. The project is a partnership among interested community members, George Washington Carver Elementary School in San Francisco, and UCSF's Department of Infant, Child and Adolescent Psychiatry. The project provides a therapist skilled in treating trauma and post-traumatic stress disorder (PTSD) on-site at Carver Elementary School.

In addition to the above-listed organizations, Lieff Cabraser supports the following:

AIDS Legal Referral Panel
American Constitution Society
American Association for Justice
Anti-Defamation Leage
Asian Law Caucus
Bay Area Lawyers for Individual Freedom
Consumer Attorneys of California

East Bay Community Law Center
Equal Rights Advocates
Family Violence Appellate Project
Health Law Advocates
The Impact Fund
Lawyers' Committee for Civil Rights of the San Francisco Bay Area
La Raza Centro Legal
Law Center to Prevent Gun Violence
Legal Aid Society of San Francisco – Employment Law Center
National Center for Lesbian Rights
National Employment Lawyers Association
New York State Trial Lawyers Association
Pride Law Fund
Public Justice
SeniorLiving.org – Preventing Elder Abuse
United Policyholders
Volunteer Legal Services Program
Workplace Fairness

We have been honored to receive the 2005 AIDS Legal Referral Panel "Firm of the Year" award and the 1998 Navigator of Civil Rights Award presented by the NAACP Legal Defense and Educational Fund.

# FIRM ACKNOWLEDGEMENTS

## Best Lawyers

**34 OUTSTANDING ATTORNEY LEADERS**

**34 OUTSTANDING LEADERS**

**14 TIER 1 FIRM RANKINGS**

**3 LAWYERS OF THE YEAR**

## Daily Journal

**LEADING COMMERCIAL LITIGATORS**

**CALIFORNIA LAWYERS OF THE YEAR AWARD**

**TOP WOMEN LAWYERS**

**TOP LABOR & EMPLOYMENT LAWYERS**

**TOP 100 LAWYERS**

**TOP 40 UNDER 40**

**TOP PLAINTIFF LAWYERS IN CALIFORNIA**

## LAWDRAGON 500

**7 LEADING LAWYERS IN AMERICA**

**27 500 LEADING PLAINTIFF CONSUMER LAWYERS**

**22 LEADING PLAINTIFF FINANCIAL LAWYERS**

**13 LAWDRAGON 500 X - NEXT GENERATION LAWYERS**

**9 LEADING PLAINTIFF EMPLOYMENT & CIVIL RIGHTS
  LAWYERS**

## LAW.COM

**ALM LITIGATORS OF THE WEEK**

**ALM DISTINGUISHED LEADER**

## THE NATIONAL LAW JOURNAL

**PLAINTIFFS TRAILBLAZER**

**PRODUCT LIABILITY ELITE**

**ANTI-DISCRIMINATION ELITE**

**PLAINTIFFS FIRM OF THE YEAR, FINALIST**

**CLASS ACTION ELITE, FINALIST**

**CONSUMER PROTECTION ELITE, FINALIST**

**PRODUCT LIABILITY ELITE, FINALIST**

**SECURITIES/SHAREHOLDER RIGHTS ELITE, FINALIST**

## Super Lawyers

**41 SUPER LAWYERS & RISING STARS**

## BUSINESS TODAY

**TOP 10 LEADING LAWYERS FOR 2023**



**EMPLOYMENT LAW PRACTICE GROUP OF THE YEAR**

**2023 CALIFORNIA POWERHOUSE FIRM**

**LEGAL LIONS OF THE WEEK**

**CLASS ACTION MVP 2023**

**EMPLOYMENT MVP 2023**

**ENVIRONMENT MVP 2023**

**PRODUCT LIABILITY MVP 2023**

**RISING STARS**

# APPENDIX EXHIBIT 3

# Declaration of Steven Weisbrot, Esq. re: Angeion Group Qualifications & the Proposed Notice Plan

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

|  |  |
|---|---|
| CHRISTOPHER GUIDA, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>GAIA, INC.,<br><br>        Defendant. | Case No. 1:22-cv-02350-GPG-MEH |

**DECLARATION OF STEVEN WEISBROT, ESQ.**
**RE: ANGEION GROUP QUALIFICATIONS & THE PROPOSED NOTICE PLAN**

I, Steven Weisbrot, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am the President and Chief Executive Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

2.      I have personal knowledge of the matters stated herein. In forming my opinions regarding notice in this action, I have drawn from my extensive class action experience, as described below.

3.      I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs, including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice

Programs, as well as Claims Administration, generally. I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

4.    I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23* and the soon to be published George Washington Law School *Best Practices Guide to Class Action Litigation*.

5.    I have given public comment and written guidance to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media, and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and offered an educational curriculum for the judiciary concerning notice procedures.

6.    Prior to joining Angeion's executive team, I was employed as Director of Class Action Services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

7.    My notice work comprises a wide range of class actions that include privacy matters, product defects, false advertising, data breach, mass disasters, employment discrimination, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.

8.    I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. Courts have repeatedly recognized my work in the design of class action notice programs. A comprehensive summary of judicial recognition Angeion has received is attached hereto as **Exhibit A**.

9.     By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $15 billion to class members. The executive profiles as well as the company overview are available at www.angeiongroup.com.

10.     As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of class actions and claims processing services.

11.     Angeion has extensive experience administering landmark settlements involving some of the world's most prominent companies, including:

**In re: Facebook, Inc Consumer Privacy User Profile Litigation**
Case No. 3:18-md-02843-VC (N.D. Cal.)
Meta agreed to pay $725 million to settle allegations that the social media company allowed third parties, including Cambridge Analytica, to access personal information. Angeion undertook an integrated in-app notification and media campaign to a class in the hundreds of millions of individuals and processed 28.6 million claims, the most claims filed in the history of class action. In fact, during the September 7, 2023 Final Approval Hearing, U.S. District Judge Chhabria acknowledged the record number of claims filed, stating, "I was kind of blown away by how many people made claims."

**In re Apple Inc. Device Performance Litigation**
Case No. 5:18-cv-02827-EJD (N.D. Cal.)
Apple agreed to pay $310 million to settle allegations of diminished performance in iPhone 6's and 7's. Angeion's direct notification efforts were recognized as reaching 99%+ of the current and former owners of 129 million class devices. Millions of claims were processed.

**City of Long Beach, et al. v. Monsanto, et al.**
Case No. 2:16-cv-03493-FMO-AS (C.D. Cal.)
Bayer agreed to pay $650 million to settle allegations of waterbodies impaired by PCBs. Angeion's notice administration was extraordinarily successful. The claims administration includes multiple complex claims filing workflows for different funding allocations, including separate fund for "special needs" claimants.

**Beckett v. Aetna Inc.**
Case No. 2:17-cv-03864-JS (E.D. Pa.)
A consolidated data breach class action that arose from the alleged improper disclosure of Protected Health Information by a health insurer and previous claims administrator, including confidential HIV-related information. Angeion provided specialized training to our support team concerning the sensitive nature of the case and underlying health information. Angeion implemented robust privacy protocols to communicate with and verify the claims of the affected class members, including anonymized notice packets and allowing claimants to lodge objections under pseudonyms.

12.     Angeion will further draw on its extensive experience from administering prior high-profile litigations involving privacy concerns:

| High-Profile Privacy Cases | Case No. | Court |
|---|---|---|
| Vela, et al. v. AMC Networks Inc. ("VPPA") | 1:23-cv-02524 | S.D.N.Y. |
| In re: Facebook, Inc., Consumer Privacy User Profile Litigation | 3:18-md-02843 | N.D. Cal. |
| In re: TikTok Inc., Consumer Privacy Litigation | 1:20-cv-04699 | N.D. Ill. |
| Lundy v. Meta Platforms Inc. | 3:18-cv-06793 | N.D. Cal. |
| In re: Facebook Internet Tracking Litigation | 5:12-md-02314 | N.D. Cal. |
| Boone, et al. v. Snap Inc. | 2022LA000708 | Ill. Cir. Ct. |
| In re: Plaid Inc. Privacy Litigation | 4:20-cv-03056 | N.D. Cal. |
| T.K. et al. v. Bytedance Technology Co. Ltd. Et al. | 1:19-cv-07915 | N.D. Ill. |
| In re: Google Plus Profile Litigation | 5:18-cv-06164 | N.D. Cal. |
| Parris, et al. v. Meta Platforms Inc. | 2023LA000672 | Ill. Cir. Ct. |
| McDonald, et al. v. Kiloo A/S, et al.<br>Rushing, et al. v. The Walt Disney Co., et al.<br>Rushing, et al. v. ViacomCBS Inc., et al. | 2:20-cv-09534<br>3:17-cv-04419<br>3:17-cv-04492 | N.D. Cal. |

## DATA SECURITY & INSURANCE

13.     Angeion recognizes the critical need to secure our physical and network environments and protect data in our custody. It is our commitment to these matters that has made us the go-to administrator for many of the most prominent data security matters of this decade. We are ever improving upon our robust policies, procedures,

and infrastructure by periodically updating data security policies as well as our approach to managing data security in response to changes to physical environment, new threats and risks, business circumstances, legal and policy implications, and evolving technical environments.

14.     Angeion's privacy practices are compliant with the California Consumer Privacy Act, as currently drafted. Consumer data obtained for the delivery of each project is used only for the purposes intended and agreed in advance by all contracted parties, including compliance with orders issued by State or Federal courts as appropriate. Angeion imposes additional data security measures for the protection of Personally Identifiable Information (PII) and Personal Health Information (PHI), including redaction, restricted network and physical access on a need-to-know basis, and network access tracking. Angeion requires background checks of all employees, requires background checks and ongoing compliance audits of its contractors, and enforces standard protocols for the rapid removal of physical and network access in the event of an employee or contractor termination.

15.     Data is transmitted using Transport Layer Security (TLS) 1.3 protocols. Network data is encrypted at rest with the government and financial institution standard of AES 256-bit encryption. We maintain an offline, air-gapped backup copy of all data, ensuring that projects can be administered without interruption.

16.     Further, our team conscientiously monitors the latest compliance requirements, such as GDPR, HIPAA, PCI DSS, and others, to ensure that our organization is meeting all necessary regulatory obligations as well as aligning to industry best practices and standards set forth by frameworks like CIS and NIST. Angeion is cognizant of the ever-evolving digital landscape and continually improves its security infrastructure and processes, including partnering with best-in-class security service providers. Angeion's robust policies and processes cover all aspects of information security to form part of an industry leading security and compliance program, which is regularly assessed by independent third parties. Angeion is also committed to a culture

of security mindfulness. All employees routinely undergo cybersecurity training to ensure that safeguarding information and cybersecurity vigilance is a core practice in all aspects of the work our teams complete.

17.    Angeion currently maintains a comprehensive insurance program, including sufficient Errors & Omissions coverage.

## SUMMARY OF THE NOTICE PLAN

18.    This declaration will describe the notice plan that we will implement in this matter, including the considerations that informed the development of the plan and why it will provide due process to the Settlement Class. In my professional opinion, the proposed Notice Plan described herein is the best practicable notice under the circumstances and fulfills all due process requirements, fully complying with Fed. R. Civ. P. 23.

19.    The proposed Notice Plan provides for individual direct notice to all reasonably identifiable Settlement Class Members via email combined with the implementation of a dedicated website and toll-free telephone line where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement.

## DIRECT NOTICE

**Settlement Class Member Data**

20.    Angeion will receive, review, and analyze the Settlement Class Member data provided to it. Angeion performs a thorough analysis to identify duplicative records, as well as missing/incomplete data fields. Angeion will then assign identification numbers to each unique record, which will comprise the final Settlement Class Member list ("Class List").

**Email Notice**

21.    As part of the Notice Plan, Angeion will send direct email notice to Settlement Class Members who have valid email addresses included on the Class List provided to Angeion.

22.     Angeion follows best practices to both validate emails and increase deliverability.  Specifically, prior to distributing the email notice, Angeion subjects the email addresses on the Class List to a cleansing and validation process. The email cleansing process removes extra spaces, fixes common typographical errors in domain names, and corrects insufficient domain suffixes (*e.g.*, gmal.com to gmail.com, gmail.co to gmail.com, yaho.com to yahoo.com, etc.). The email addresses are then subjected to an email validation process whereby each email address will be compared to known bad email addresses.[1] Email addresses that are not designated as a known bad address will then be further verified by contacting the Internet Service Provider ("ISP") to determine if the email address exists.

23.     Further, Angeion designs its email notices to avoid many common "red flags" that might otherwise cause an email recipient's spam filter to block or identify the email notice as spam. For example, Angeion does not include attachments like the Long Form Notice to the email notice, because attachments are often interpreted by various Internet Service Providers ("ISP") as spam.

24.     Angeion also accounts for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete, Angeion, after an approximate 24- to 72-hour rest period (which allows any temporary block at the ISP level to expire) causes a second round of email noticing to continue to any email addresses that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery.

25.     In addition to the comprehensive methods described above, Angeion will cause any email address for which email notice could not be delivered to be subjected to an email change of address search in an attempt to locate updated email addresses.

---

[1] Angeion maintains a database of email addresses that were returned as permanently undeliverable, commonly referred to as a hard bounce, from prior campaigns. Where an address has been returned as a hard bounce within the last year, that email is designated as a known bad email address.

Angeion will then send email notice to any updated email addresses obtained via this process.

26.     At the completion of the email campaign, Angeion will report to the Court concerning the rate of delivered emails accounting for any emails that are blocked at the ISP level. In short, the Court will possess a detailed, verified account of the success rate of the entire direct email notice campaign.

**Reminder Notice**

27.     Pursuant to the terms of the Class Action Settlement Agreement, at the election of Class Counsel, Angeion may cause a reminder notice to be sent on one or two occasions prior to the Claims Deadline.

<u>**SETTLEMENT WEBSITE & TELEPHONE SUPPORT**</u>

28.     The Notice Plan will also implement the creation of a case-specific Settlement Website, where Settlement Class Members can easily view general information about this Settlement, and review relevant Court documents, including the Long Form Notice, the Claim Form, a copy of the Settlement Agreement and the Preliminary Approval Order. The Settlement Website will be designed to be user-friendly to make it easy for Settlement Class Members to find information about the case, view dates and deadlines, and will have a "Contact Us" page containing a dedicated email address by which Settlement Class Members can send additional questions regarding the Settlement. The Settlement Website will also feature functionality to allow Settlement Class Members to securely submit a Claim Form online via the Settlement Website.

29.     The Settlement Website will be designed to be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices. Additionally, the Settlement Website will be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the Settlement Website's metadata to maximize search engine rankings.

30.     A toll-free hotline devoted to this case will be created and provided on the Settlement Website to further apprise Settlement Class Members of the rights and options in the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and other essential information regarding the Settlement. The hotline will be accessible 24 hours a day, 7 days a week. Settlement Class Members will have the ability to request a copy of the Notice and/or Claim Form via the toll-free hotline.

## FRAUD DETECTION

31.     Angeion has developed and deployed a real-time fraud detection system, AngeionAffirm, which is the first and only comprehensive solution to identify fraud in real time based on both state-of-the-art technology and analysis of over a decade of historical claims data. AngeionAffirm was developed to combat the rising tide of fraudulent claims in class action settlements and the increasingly sophisticated technologies and techniques used by fraudulent actors in their attempt to perpetuate fraud.

32.     Key highlights of AngeionAffirm include: (1) The implementation of enhanced, machine-learning-based fraud prevention mechanisms on all Web Application Firewalls focused on detecting and blocking fraudulent activities even before they infiltrate the system; (2) Employing advanced artificial intelligence to identify bot and scripted browser traffic; (3) Performing proprietary behavioral analysis techniques to identify abnormal patterns that could indicate fraudulent submissions, to help ensure that claims are genuine and justifiable; (4) Analyzing a broad array of technical characteristics garnered from claimant email addresses and other digital fingerprints to determine a claim's propensity for fraud; (5) Deploying a dynamic IP monitoring system to identify and flag suspicious activities across all case engagements; (6) Analysis of over one hundred million claims, which has proven instrumental in identifying characteristics, anomalies, and known bad actors, that may signify fraudulent intent, thus ensuring only bona fide claims are approved; and (7) Utilization of multiple security measures to address the increasing scale and sophistication of cyber criminals' adaptive behavior.

33.     AngeionAffirm will be implemented to detect fraudulent claim submissions in this Settlement as part of the ongoing, comprehensive anti-fraud efforts.

**NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005**

34.     Within ten (10) days of Settlement Agreement filed with this Court, Angeion will cause notice of the settlement to be disseminated to the appropriate state and federal officials pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.

**CONCLUSION**

35.     The Notice Plan outlined above includes direct notice to all reasonably identifiable Settlement Class Members combined with the implementation of a dedicated Settlement Website and toll-free hotline to further inform Settlement Class Members of their rights and options in the Settlement.

36.     It is my professional opinion that the Notice Plan will provide full and proper notice to Settlement Class Members before any applicable settlement deadlines, and that the proposed Notice Plan is the best notice that is practicable under the circumstances, will fully comport with due process requirements and is fully compliant with Fed. R. Civ. P. 23. Angeion will report on the successful implementation of the Notice Plan after it has concluded.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: July 8, 2024

_____
STEVEN WEISBROT

# Exhibit A




**Writing the Rules**

# INNOVATION
## IT'S PART OF OUR DNA

**Class Action Administration | Mass Arbitration Administration
Mass Tort Services | Regulatory Remediation**

## Judicial Recognition

© Angeion Group, LLC

## IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION

**Case No. 3:18-md-02843 (N.D. Cal.)**

The Honorable Vincent Chhabria (March 29, 2023): The Court approves the Settlement Administration Protocol & Notice Plan, amended Summary Notice (Dkt. No. 1114-8), second amended Class Notice (Dkt. No. 1114-6), In-App Notice, amended Claim Form (Dkt. No. 1114-2), Opt-Out Form (Dkt. No. 1122-1), and Objection Form (Dkt. No. 1122-2) and finds that their dissemination substantially in the manner and form set forth in the Settlement Agreement and the subsequent filings referenced above meets the requirements of Federal Rule of Civil Procedure 23 and due process, constitutes the best notice practicable under the circumstances, and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, the effect of the proposed Settlement (including the releases contained therein), the anticipated motion for Attorneys' Fees and Expenses Award and for Service Awards, and their rights to participate in, opt out of, or object to any aspect of the proposed Settlement.

## IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

**Case No. 8:22-ml-03052 (C.D. Cal.)**

The Honorable James V. Selna (October 31, 2023): The Court has considered the form and content of the Class notice program and finds that the Class notice program and methodology as described in the Settlement Agreement (a) meet the requirements of due process and Federal Rules of Civil Procedure 23(c) and (e); (b) constitute the best notice practicable under the circumstances to all persons entitled to notice; and (c) satisfies the constitutional requirements regarding notice.

## IN RE: PHILLIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION

**Case No. 2:21-mc-01230 (MDL No. 3014) (W.D. Pa.)**

The Honorable Joy Flowers Conti (October 10, 2023): The Court finds that the method of giving notice to the Settlement Class ("Notice Plan")...(a) constitute the best notice practicable under the circumstances, (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms and benefits of the proposed Settlement...(c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and any other persons entitled to receive notice, (d) meet all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Rule 23(c), the Due Process Clause(s) of the United States Constitution, and any other applicable laws...

## IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION

**Case No. 2:18-mn-02873 (D.S.C.)**

The Honorable Richard Mark Gergel (August 29, 2023): The Court also approves the proposed Notice Plan set forth in Exhibit C to the Settlement Agreement. The Court finds that the proposal for (i) direct mailing of the Notice, as well as emailing of the Summary Notice, to each known Class Member, (ii) personalized outreach to national and local water organizations, (iii) national publication of the Summary Notice and a media campaign targeting all Active Public Water Systems that may potentially meet the qualifications to become Class Members, and (iv) a website that potential Class Members will be directed to displaying a long-form Notice that sets forth the details of the proposed Settlement and provides a toll-free hotline, meets the requirements of Rule 23 and due process and shall constitute due and sufficient notice to all Persons potentially entitled to

participate in the proposed Settlement. The proposed Notice Plan is the best practicable notice under the circumstances of this case; is reasonably calculated under the circumstances to apprise potential Class Members of the Settlement Agreement and of their right to object to or exclude themselves from the proposed Settlement Class; is reasonable and constitutes due, adequate, and sufficient notice to all Persons entitled to receive it; and meets all applicable requirements of Federal Rule of Civil Procedure 23, the United States Constitution, and other applicable laws and rules.

### KUKORINIS v. WALMART, INC.

**Case No. 8:22-cv-02402 (M.D. Fla.)**

The Honorable Virginia M. Hernandez Covington (January 19, 2024): The Notice Plan, including the form of the notices and methods for notifying the Settlement Class of the Settlement and its terms and conditions…a. meet the requirements of the Federal Rules of Civil Procedure (including Rule 23 (c)-(e)), the United States Constitution (including the Due Process Clause), and the Rules of this Court; b. constitute the best notice to Settlement Class Members practicable under the circumstances…

### LE ET AL. v. ZUFFA, LLC

**Case No. 2:15-cv-01045 (D. Nev.)**

The Honorable Richard F. Boulware, II (November 17, 2023): The proposed Notice Plan, including the proposed forms and manner of notice, constitutes the best notice practicable under the circumstances and satisfies the requirements of due process and Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure.

### AMANS v. TESLA, INC.

**Case No. 3:21-cv-03577 (N.D. Cal.)**

The Honorable Vince Chhabria (October 20, 2023): The Court further finds that the Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court also finds that the Notice constitutes valid, due, and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice is reasonably calculated, under all circumstances, to apprise members of the Settlement Class of the pendency of this case, the terms of the Settlement Agreement, the right to object to the Settlement, and the right to exclude themselves from the Settlement Class.

### LUNDY v. META PLATFORMS, INC.

**Case No. 3:18-cv-06793 (N.D. Cal.)**

The Honorable James Donato (April 26, 2023): For purposes of Rule 23(e), the Notice Plan submitted with the Motion for Preliminary Approval and the forms of notice attached thereto are approved…The form, content, and method of giving notice to the Settlement Class as described in the Notice Plan submitted with the Motion for Preliminary Approval are accepted at this time as practicable and reasonable in light of the rather unique circumstances of this case.

## IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION

**Case No. 5:18-md-02827 (N.D. Cal.)**

The Honorable Edward J. Davila (March 17, 2021): Angeion undertook a comprehensive notice campaign…The notice program was well executed, far-reaching, and exceeded both Federal Rule of Civil Procedure 23(c)(2)(B)'s requirement to provide the "best notice that is practicable under the circumstances" and Rule 23(e)(1)(B)'s requirement to provide "direct notice in a reasonable manner."

## IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION

**Case No. 1:20-cv-04699 (N.D. Ill.)**

The Honorable John Z. Lee (August 22, 2022): The Class Notice was disseminated in accordance with the procedures required by the Court's Order Granting Preliminary Approval…in accordance with applicable law, satisfied the requirements of Rule 23(e) and due process, and constituted the best notice practicable…

## IN RE: GOOGLE PLUS PROFILE LITIGATION

**Case No. 5:18-cv-06164 (N.D. Cal.)**

The Honorable Edward J. Davila (January 25, 2021):  The Court further finds that the program for disseminating notice to Settlement Class Members provided for in the Settlement, and previously approved and directed by the Court (hereinafter, the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and such Notice Program, including the approved forms of notice, is reasonable and appropriate and satisfies all applicable due process and other requirements, and constitutes best notice reasonably calculated under the circumstances to apprise Settlement Class Members…

## MEHTA v. ROBINHOOD FINANCIAL LLC

**Case No. 5:21-cv-01013 (N.D. Cal.)**

The Honorable Susan van Keulen (August 29, 2022): The proposed notice plan, which includes direct notice via email, will provide the best notice practicable under the circumstances. This plan and the Notice are reasonably calculated, under the circumstances, to apprise Class Members of the nature and pendency of the Litigation, the scope of the Settlement Class, a summary of the class claims, that a Class Member may enter an appearance through an attorney, that the Court will grant timely exclusion requests, the time and manner for requesting exclusion, the binding effect of final approval of the proposed Settlement, and the anticipated motion for attorneys' fees, costs, and expenses and for service awards. The plan and the Notice constitute due, adequate, and sufficient notice to Class Members and satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and all other applicable laws and rules.

## ADTRADER, INC. v. GOOGLE LLC

**Case No. 5:17-cv-07082 (N.D. Cal.)**

The Honorable Beth L. Freeman (May 13, 2022):  The Court approves, as to form, content, and distribution, the Notice Plan set forth in the Settlement Agreement, including the Notice Forms attached to the Weisbrot Declaration, subject to the Court's one requested change as further described in Paragraph 8 of this Order, and finds that such Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court further finds that the Notice is reasonably calculated to, under

all circumstances, reasonably apprise members of the AdWords Class of the pendency of this Action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the AdWords Class. The Court also finds that the Notice constitutes valid, due and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice Plan fully complies with the Northern District of California's Procedural Guidance for Class Action Settlements.

### IN RE: FACEBOOK INTERNET TRACKING LITIGATION
**Case No. 5:12-md-02314 (N.D. Cal.)**

The Honorable Edward J. Davila (November 10, 2022): The Court finds that Plaintiffs' notice meets all applicable requirements of due process and is particularly impressed with Plaintiffs' methodology and use of technology to reach as many Class Members as possible. Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### CITY OF LONG BEACH v. MONSANTO COMPANY
**Case No. 2:16-cv-03493 (C.D. Cal.)**

The Honorable Fernando M. Olguin (March 14, 2022): The court approves the form, substance, and requirements of the class Notice, (Dkt.278-2, Settlement Agreement, Exh. I). The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

### STEWART v. LEXISNEXIS RISK DATA RETRIEVAL SERVICES, LLC
**Case No. 3:20-cv-00903 (E.D. Va.)**

The Honorable John A. Gibney Jr. (February 25, 2022): The proposed forms and methods for notifying the proposed Settlement Class Members of the Settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to notice…Based on the foregoing, the Court hereby approves the notice plans developed by the Parties and the Settlement Administrator and directs that they be implemented according to the Agreement and the notice plans attached as exhibits.

### WILLIAMS v. APPLE INC.
**Case No. 3:19-cv-04700 (N.D. Cal.)**

The Honorable Laurel Beeler (February 24, 2022): The Court finds the Email Notice and Website Notice (attached to the Agreement as Exhibits 1 and 4, respectively), and their manner of transmission, implemented pursuant to the Agreement (a) are the best practicable notice, (b) are reasonably calculated, under the circumstances, to apprise the Subscriber Class of the pendency of the Action and of their right to object to or to exclude themselves from the proposed settlement, (c) are reasonable and constitute due, adequate and sufficient notice to all persons entitled to receive notice, and (d) meet all requirements of applicable law.

### CLEVELAND v. WHIRLPOOL CORPORATION
**Case No. 0:20-cv-01906 (D. Minn.)**

The Honorable Wilhelmina M. Wright (December 16, 2021): It appears to the Court that the proposed Notice Plan described herein, and detailed in the Settlement Agreement, comports with

due process, Rule 23, and all other applicable law. Class Notice consists of email notice and postcard notice when email addresses are unavailable, which is the best practicable notice under the circumstances…The proposed Notice Plan complies with the requirements of Rule 23, Fed. R. Civ. P., and due process, and Class Notice is to be sent to the Settlement Class Members as set forth in the Settlement Agreement and pursuant to the deadlines above.

### RASMUSSEN v. TESLA, INC. d/b/a TESLA MOTORS, INC.
**Case No. 5:19-cv-04596 (N.D. Cal.)**

The Honorable Beth Labson Freeman (December 10, 2021): The Court has carefully considered the forms and methods of notice to the Settlement Class set forth in the Settlement Agreement ("Notice Plan"). The Court finds that the Notice Plan constitutes the best notice practicable under the circumstances and fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, and the requirements of any other applicable law, such that the terms of the Settlement Agreement, the releases provided for therein, and this Court's final judgment will be binding on all Settlement Class Members.

### CAMERON v. APPLE INC.
**Case No. 4:19-cv-03074 (N.D. Cal.)**

The Honorable Yvonne Gonzalez Rogers (November 16, 2021): The parties' proposed notice plan appears to be constitutionally sound in that plaintiffs have made a sufficient showing that it is: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law.

### RISTO v. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS et al.
**Case No. 2:18-cv-07241 (C.D. Cal.)**

The Honorable Christina A. Snyder (November 12, 2021): The Court approves the publication notice plan presented to this Court as it will provide notice to potential class members through a combination of traditional and digital media that will consist of publication of notice via press release, programmatic display digital advertising, and targeted social media, all of which will direct Class Members to the Settlement website…The notice plan satisfies any due process concerns as this Court certified the class under Federal Rule of Civil Procedure 23(b)(1)…

### JENKINS v. NATIONAL GRID USA SERVICE COMPANY, INC.
**Case No. 2:15-cv-01219 (E.D.N.Y.)**

The Honorable Joanna Seybert (November 8, 2021): Pursuant to Fed. R. Civ. P. 23(e)(1) and 23(c)(2)(B), the Court approves the proposed Notice Plan and procedures set forth at Section 8 of the Settlement, including the form and content of the proposed forms of notice to the Settlement Class attached as Exhibits C-G to the Settlement and the proposed procedures for Settlement Class Members to exclude themselves from the Settlement Class or object. The Court finds that the proposed Notice Plan meets the requirements of due process under the United States Constitution and Rule 23, and that such Notice Plan—which includes direct notice to Settlement Class Members

sent via first class U.S. Mail and email; the establishment of a Settlement Website (at the URL, www.nationalgridtcpasettlement.com) where Settlement Class Members can view the full settlement agreement, the detailed long-form notice (in English and Spanish), and other key case documents; publication notice in forms attached as Exhibits E and F to the Settlement sent via social media (Facebook and Instagram) and streaming radio (e.g., Pandora and iHeart Radio). The Notice Plan shall also include a paid search campaign on search engine(s) chosen by Angeion (e.g., Google) in the form attached as Exhibits G and the establishment of a toll-free telephone number where Settlement Class Members can get additional information—is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

### NELLIS v. VIVID SEATS, LLC
**Case No. 1:20-cv-02486 (N.D. Ill.)**

The Honorable Robert M. Dow, Jr. (November 1, 2021):  The Notice Program, together with all included and ancillary documents thereto, (a) constituted reasonable notice; (b) constituted notice that was reasonably calculated under the circumstances to apprise members of the Settlement Class of the pendency of the Litigation...(c) constituted reasonable, due, adequate and sufficient notice to all Persons entitled to receive notice; and (d) met all applicable requirements of due process and any other applicable law. The Court finds that Settlement Class Members have been provided the best notice practicable of the Settlement and that such notice fully satisfies all requirements of law as well as all requirements of due process.

### PELLETIER v. ENDO INTERNATIONAL PLC
**Case No. 2:17-cv-05114 (E.D. Pa.)**

The Honorable Michael M. Baylson (October 25, 2021): The Court approves, as to form and content, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), the Proof of Claim and Release form (the "Proof of Claim"), and the Summary Notice, annexed hereto as Exhibits A-1, A-2, and A-3, respectively, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice, substantially in the manner and form set forth in ¶¶7-10 of this Order, meet the requirements of Rule 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

### BIEGEL v. BLUE DIAMOND GROWERS
**Case No. 7:20-cv-03032 (S.D.N.Y.)**

The Honorable Cathy Seibel (October 25, 2021):  The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action...and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

### QUINTERO v. SAN DIEGO ASSOCIATION OF GOVERNMENTS
**Case No. 37-2019-00017834-CU-NP-CTL (Cal. Super. Ct.)**

The Honorable Eddie C. Sturgeon (September 27, 2021):  The Court has reviewed the class notices for the Settlement Class and the methods for providing notice and has determined that the parties will employ forms and methods of notice that constitute the best notice practicable under the circumstances; are reasonably calculated to apprise class members of the terms of the Settlement

and of their right to participate in it, object, or opt-out; are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and meet all constitutional and statutory requirements, including all due process requirements and the California Rules of Court.

## HOLVE v. MCCORMICK & COMPANY, INC.
### Case No. 6:16-cv-06702 (W.D.N.Y.)
The Honorable Mark W. Pedersen (September 23, 2021): The Court finds that the form, content and method of giving notice to the Class as described in the Settlement Agreement and the Declaration of the Settlement Administrator: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action…(c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.

## CULBERTSON ET AL. v. DELOITTE CONSULTING LLP
### Case No. 1:20-cv-03962 (S.D.N.Y.)
The Honorable Lewis J. Liman (August 27, 2021): The notice procedures described in the Notice Plan are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

## PULMONARY ASSOCIATES OF CHARLESTON PLLC v. GREENWAY HEALTH, LLC
### Case No. 3:19-cv-00167 (N.D. Ga.)
The Honorable Timothy C. Batten, Sr. (August 24, 2021):  Under Rule 23(c)(2), the Court finds that the content, format, and method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot filed on July 2, 2021, and the Settlement Agreement and Release, including notice by First Class U.S. Mail and email to all known Class Members, is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and due process.

## IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO II)
### Case No. 6:20-md-02977 (E.D. Okla.)
The Honorable Robert J. Shelby (August 23, 2021):  The Court approves the method of notice to be provided to the Settlement Class as set forth in Plaintiffs' Motion and Memorandum of Law in Support of Motion for Approval of the Form and Manner of Class Notice and Appointment of Settlement Administrator and Request for Expedited Treatment and the Declaration of Steven Weisbrot on Angeion Group Qualifications and Proposed Notice Plan…The Court finds and concludes that such notice: (a) is the best notice that is practicable under the circumstances, and is reasonably calculated to reach the members of the Settlement Class and to apprise them of the Action, the terms and conditions of the Settlement, their right to opt out and be excluded from the Settlement Class, and to object to the Settlement; and (b) meets the requirements of Federal Rule of Civil Procedure 23 and due process.

## ROBERTS ET AL. V. AT&T MOBILITY, LLC

**Case No. 3:15-cv-03418 (N.D. Cal.)**

The Honorable Edward M. Chen (August 20, 2021):  The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort, as well as supplemental notice via a social media notice campaign and reminder email and SMS notices; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of this Action ...(d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, Due Process under the U.S. Constitution, and any other applicable law.

## PYGIN V. BOMBAS, LLC

**Case No. 4:20-cv-04412 (N.D. Cal.)**

The Honorable Jeffrey S. White (July 12, 2021):  The Court also concludes that the Class Notice and Notice Program set forth in the Settlement Agreement satisfy the requirements of due process and Rule 23 and provide the best notice practicable under the circumstances. The Class Notice and Notice Program are reasonably calculated to apprise Settlement Class Members of the nature of this Litigation, the Scope of the Settlement Class, the terms of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court approves the Class Notice and Notice Program and the Claim Form.

## WILLIAMS ET AL. V. RECKITT BENCKISER LLC ET AL.

**Case No. 1:20-cv-23564 (S.D. Fla.)**

The Honorable Jonathan Goodman (April 23, 2021): The Court approves, as to form and content, the Class Notice and Internet  Notice submitted by the parties (Exhibits B and D to the Settlement Agreement or Notices substantially similar thereto) and finds that the procedures described therein meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and provide the best notice practicable under the circumstances. The proposed Class Notice Plan -- consisting of (i) internet and social media notice; and (ii) notice via an established Settlement Website -- is reasonably calculated to reach no less than 80% of the Settlement Class Members.

## NELSON ET AL. V. IDAHO CENTRAL CREDIT UNION

**Case No. CV03-20-00831, CV03-20-03221 (Idaho Jud. Dist.)**

The Honorable Robert C. Naftz  (January 19, 2021):  The Court finds that the Proposed Notice here is tailored to this Class and designed to ensure broad and effective reach to it...The Parties represent that the operative notice plan is the best notice practicable and is reasonably designed to reach the settlement class members. The Court agrees.

## IN RE: HANNA ANDERSSON AND SALESFORCE.COM DATA BREACH LITIGATION

**Case No. 3:20-cv-00812 (N.D. Cal.)**

The Honorable Edward M. Chen (December 29, 2020):  The Court finds that the Class Notice and Notice Program satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances.

## IN RE: PEANUT FARMERS ANTITRUST LITIGATION

**Case No. 2:19-cv-00463 (E.D. Va.)**

The Honorable Raymond A. Jackson (December 23, 2020): The Court finds that the Notice Program…constitutes the best notice that is practicable under the circumstances and is valid, due and sufficient notice to all persons entitled thereto and complies fully with the requirements of Rule 23(c)(2) and the due process requirements of the Constitution of the United States.

## BENTLEY ET AL. V. LG ELECTRONICS U.S.A., INC.

**Case No. 2:19-cv-13554 (D.N.J.)**

The Honorable Madeline Cox Arleo (December 18, 2020): The Court finds that notice of this Settlement was given to Settlement Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Litigation, the Settlement, and the Settlement Class Members' rights to object to the Settlement or opt out of the Settlement Class, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

## IN RE: ALLURA FIBER CEMENT SIDING PRODUCTS LIABILITY LITIGATION

**Case No. 2:19-mn-02886 (D.S.C.)**

The Honorable David C. Norton (December 18, 2020): The proposed Notice provides the best notice practicable under the circumstances. It allows Settlement Class Members a full and fair opportunity to consider the proposed settlement. The proposed plan for distributing the Notice likewise is a reasonable method calculated to reach all members of the Settlement Class who would be bound by the settlement. There is no additional method of distribution that would be reasonably likely to notify Settlement Class Members who may not receive notice pursuant to the proposed distribution plan.

## ADKINS ET AL. V. FACEBOOK, INC.

**Case No. 3:18-cv-05982 (N.D. Cal.)**

The Honorable William Alsup (November 15, 2020): Notice to the class is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co., 399 U.S. 306, 314 (1650).*

## IN RE: 21ST CENTURY ONCOLOGY CUSTOMER DATA SECURITY BREACH LITIGATION

**Case No. 8:16-md-02737 (M.D. Fla.)**

The Honorable Mary S. Scriven (November 2, 2020): The Court finds and determines that mailing the Summary Notice and publication of the Settlement Agreement, Long Form Notice, Summary Notice, and Claim Form on the Settlement Website, all pursuant to this Order, constitute the best notice practicable under the circumstances, constitute due and sufficient notice of the matters set forth in the notices to all persons entitled to receive such notices, and fully satisfies the of due process, Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and all other applicable laws and rules. The Court further finds that all of the notices are written in plain language and are readily understandable by Class Members.

## MARINO ET AL. V. COACH INC.

**Case No. 1:16-cv-01122 (S.D.N.Y.)**

The Honorable Valerie Caproni (August 24, 2020): The Court finds that the form, content, and method of giving notice to the Settlement Class as described in paragraph 8 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that all of the notices are written in plain language, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

## BROWN V. DIRECTV, LLC

**Case No. 2:13-cv-01170 (C.D. Cal.)**

The Honorable Dolly M. Gee (July 23, 2020): Given the nature and size of the class, the fact that the class has no geographical limitations, and the sheer number of calls at issue, the Court determines that these methods constitute the best and most reasonable form of notice under the circumstances.

## IN RE: SSA BONDS ANTITRUST LITIGATION

**Case No. 1:16-cv-03711 (S.D.N.Y.)**

The Honorable Edgardo Ramos (July 15, 2020): The Court finds that the mailing and distribution of the Notice and the publication of the Summary Notice substantially in the manner set forth below meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled to notice.

## KJESSLER ET AL. V. ZAAPPAAZ, INC. ET AL.

**Case No. 4:18-cv-00430 (S.D. Tex.)**

The Honorable Nancy F. Atlas (July 14, 2020): The Court also preliminarily approves the proposed manner of communicating the Notice and Summary Notice to the putative Settlement Class, as set out below, and finds it is the best notice practicable under the circumstances, constitutes due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfies the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23.

## HESTER ET AL. V. WALMART, INC.

**Case No. 5:18-cv-05225 (W.D. Ark.)**

The Honorable Timothy L. Brooks (July 9, 2020): The Court finds that the Notice and Notice Plan substantially in the manner and form set forth in this Order and the Agreement meet the requirements of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

## CLAY ET AL. V. CYTOSPORT INC.

**Case No. 3:15-cv-00165 (S.D. Cal.)**

The Honorable M. James Lorenz (June 17, 2020):  The Court approves the proposed Notice Plan for giving notice to the Settlement Class through publication, both print and digital, and through the establishment of a Settlement Website, as more fully described in the Agreement and the Claims Administrator's affidavits (docs. no. 222-9, 224, 224-1, and 232-3 through 232-6). The Notice Plan, in form, method, and content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.


## GROGAN V. AARON'S INC.

**Case No. 1:18-cv-02821 (N.D. Ga.)**

The Honorable J.P. Boulee (May 1, 2020):  The Court finds that the Notice Plan as set forth in the Settlement Agreement meets the requirements of Fed. R. Civ. P. 23 and constitutes the best notice practicable under the circumstances, including direct individual notice by mail and email to Settlement Class Members where feasible and a nationwide publication website-based notice program, as well as establishing a Settlement Website at the web address of www.AaronsTCPASettlement.com, and satisfies fully the requirements the Federal Rules of Civil Procedure, the U.S. Constitution, and any other applicable law, such that the Settlement Agreement and Final Order and Judgment will be binding on all Settlement Class Members.


## CUMMINGS V. BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO ET AL.

**Case No. D-202-CV-2001-00579 (N.M. Jud. Dist.)**

The Honorable Carl Butkus (March 30, 2020): The Court has reviewed the Class Notice, the Plan of Allocation and Distribution and Claim Form, each of which it approves in form and substance. The Court finds that the form and methods of notice set forth in the Agreement: (i) are reasonable and the best practicable notice under the circumstances; (ii) are reasonably calculated to apprise Settlement Class Members of the pendency of the Lawsuit, of their rights to object to or opt-out of the Settlement, and of the Final Approval Hearing; (iii) constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet the requirements of the New Mexico Rules of Civil Procedure, the requirements of due process under the New Mexico and United States Constitutions, and the requirements of any other applicable rules or laws.


## SCHNEIDER ET AL. V. CHIPOTLE MEXICAN GRILL, INC.

**Case No. 4:16-cv-02200 (N.D. Cal.)**

The Honorable Haywood S. Gilliam, Jr. (January 31, 2020):  Given that direct notice appears to be infeasible, the third-party settlement administrator will implement a digital media campaign and provide for publication notice in People magazine, a nationwide publication, and the East Bay Times. SA § IV.A, C; Dkt. No. 205-12 at ¶¶ 13–23. The publication notices will run for four consecutive weeks. Dkt. No. 205 at ¶ 23. The digital media campaign includes an internet banner notice implemented using a 60-day desktop and mobile campaign. Dkt. No. 205-12 at ¶ 18. It will rely on "Programmatic Display Advertising" to reach the "Target Audience," Dkt. No. 216-1 at ¶ 6, which is estimated to include 30,100,000 people and identified using the target definition of "Fast Food & Drive-In Restaurants Total Restaurants Last 6 Months [Chipotle Mexican Grill]," Dkt. No. 205-12 at ¶ 13. Programmatic display advertising utilizes "search targeting," "category contextual targeting," "keyword contextual targeting," and "site targeting," to place ads. Dkt. No. 216-1 at ¶¶ 9–12. And

through "learning" technology, it continues placing ads on websites where the ad is performing well. Id. ¶ 7. Put simply, prospective Class Members will see a banner ad notifying them of the settlement when they search for terms or websites that are similar to or related to Chipotle, when they browse websites that are categorically relevant to Chipotle (for example, a website related to fast casual dining or Mexican food), and when they browse websites that include a relevant keyword (for example, a fitness website with ads comparing fast casual choices). Id. ¶¶ 9–12. By using this technology, the banner notice is "designed to result in serving approximately 59,598,000 impressions." Dkt. No. 205-12 at ¶ 18.

The Court finds that the proposed notice process is "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." Roes, 944 F.3d at 1045 (citation omitted).

## HANLEY v. TAMPA BAY SPORTS AND ENTERTAINMENT LLC
### Case No. 8:19-cv-00550 (M.D. Fla.)
The Honorable Charlene Edwards Honeywell (January 7, 2020): The Court approves the form and content of the Class notices and claim forms substantially in the forms attached as Exhibits A-D to the Settlement. The Court further finds that the Class Notice program described in the Settlement is the best practicable under the circumstances. The Class Notice program is reasonably calculated under the circumstances to inform the Settlement Class of the pendency of the Action, certification of a Settlement Class, the terms of the Settlement, Class Counsel's attorney's fees application and the request for a service award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Class notices and Class Notice program constitute sufficient notice to all persons entitled to notice. The Class notices and Class Notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of Due Process.

## CORCORAN ET AL. V. CVS HEALTH ET AL.
### Case No. 4:15-cv-03504 (N.D. Cal.)
The Honorable Yvonne Gonzalez Rogers (November 22, 2019): Having reviewed the parties' briefings, plaintiffs' declarations regarding the selection process for a notice provider in this matter and regarding Angeion Group LLC's experience and qualifications, and in light of defendants' non-opposition, the Court APPROVES Angeion Group LLC as the notice provider. Thus, the Court GRANTS the motion for approval of class notice provider and class notice program on this basis.

Having considered the parties' revised proposed notice program, the Court agrees that the parties' proposed notice program is the "best notice that is practicable under the circumstances." The Court is satisfied with the representations made regarding Angeion Group LLC's methods for ascertaining email addresses from existing information in the possession of defendants. Rule 23 further contemplates and permits electronic notice to class members in certain situations. See Fed. R. Civ. P. 23(c)(2)(B). The Court finds, in light of the representations made by the parties, that this is a situation that permits electronic notification via email, in addition to notice via United States Postal Service. Thus, the Court APPROVES the parties' revised proposed class notice program, and GRANTS the motion for approval of class notice provider and class notice program as to notification via email and United States Postal Service mail.

## PATORA v. TARTE, INC.

**Case No. 7:18-cv-11760 (S.D.N.Y.)**

The Honorable Kenneth M. Karas (October 2, 2019): The Court finds that the form, content, and method of giving notice to the Class as described in Paragraph 9 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the Proposed Settlement, and their rights under the Proposed Settlement, including but not limited to their rights to object to or exclude themselves from the Proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clauses of the United States Constitution. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

## CARTER ET AL. v. GENERAL NUTRITION CENTERS, INC., AND GNC HOLDINGS, INC.

**Case No. 2:16-cv-00633 (W.D. Pa.)**

The Honorable Mark R. Hornak (September 9, 2019): The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise proposed Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the proposed Settlement Class. The Court finds that the notice is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, Rule 23 of the Federal Rules of Ci vii Procedure, and any other applicable laws.

## CORZINE v. MAYTAG CORPORATION ET AL.

**Case No. 5:15-cv-05764 (N.D. Cal.)**

The Honorable Beth L. Freeman (August 21, 2019): The Court, having reviewed the proposed Summary Notice, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

## MEDNICK v. PRECOR, INC.

**Case No. 1:14-cv-03624 (N.D. Ill.)**

The Honorable Harry D. Leinenweber (June 12, 2019): Notice provided to Class Members pursuant to the Preliminary Class Settlement Approval Order constitutes the best notice practicable under the circumstances, including individual email and mail notice to all Class Members who could be identified through reasonable effort, including information provided by authorized third-party retailers of Precor. Said notice provided full and adequate notice of these proceedings and of the matter set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of F.R.C.P. Rule 23 (e) and (h) and the requirements of due process under the United States and California Constitutions.

## GONZALEZ v. TCR SPORTS BROADCASTING HOLDING LLP ET AL.

**Case No. 1:18-cv-20048 (S.D. Fla.)**

The Honorable Darrin P. Gayles (May 24, 2019):  The Court finds that notice to the class was reasonable and the best notice practicable under the circumstances, consistent with Rule 23(e)(1) and Rule 23(c)(2)(B).

## ANDREWS ET AL. V. THE GAP, INC. ET AL.

**Case No. CGC-18-567237 (Cal. Super. Ct.)**

The Honorable Richard B. Ulmer Jr. (May 10, 2019): The Court finds that (a) the Full Notice, Email Notice, and Publication constitute the best notice practicable under the circumstances, (b) they constitute valid, due, and sufficient notice to all members of the Class, and (c) they comply fully with the requirements of California Code of Civil Procedure section 382, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.

## COLE ET AL. V. NIBCO, INC.

**Case No. 3:13-cv-07871 (D.N.J.)**

The Honorable Freda L. Wolfson (April 11, 2019):  The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order. The Court finds that the Notice Plan constitutes: (i) the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this…, (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.

## DIFRANCESCO ET AL. V. UTZ QUALITY FOODS, INC.

**Case No. 1:14-cv-14744 (D. Mass.)**

The Honorable Douglas P. Woodlock (March 15, 2019):  The Court finds that the Notice plan and all forms of Notice to the Class as set forth in the Settlement Agreement and Exhibits 2 and 6 thereto, as amended (the "Notice Program"), is reasonably calculated to, under all circumstances, apprise the members of the Settlement Class of the pendency of this action, the certification of the Settlement Class, the terms of the Settlement Agreement, and the right of members to object to the settlement or to exclude themselves from the Class. The Notice Program is consistent with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

## IN RE: CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

**Case No. 3:17-md-02777 (N.D. Cal.)**

The Honorable Edward M. Chen (February 11, 2019):  Also, the parties went through a sufficiently rigorous selection process to select a settlement administrator. See Proc. Guidance for Class Action Sett. ¶ 2; see also Cabraser Decl. ¶¶ 9-10. While the settlement administration costs are significant – an estimated $1.5 million – they are adequately justified given the size of the class and the relief being provided.

In addition, the Court finds that the language of the class notices (short and long-form) is appropriate and that the means of notice – which includes mail notice, electronic notice, publication notice, and social media "marketing" – is the "best notice…practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see also Proc. Guidance for Class Action Sett. ¶¶ 3-5, 9 (addressing class notice, opt-outs, and objections). The Court notes that the means of notice has changed somewhat, as explained in the Supplemental Weisbrot Declaration filed on February 8, 2019, so that notice will be more targeted and effective. See generally Docket No. 525 (Supp. Weisbrot Decl.) (addressing, inter alia, press release to be distributed via national newswire service, digital and social media marketing designed to enhance notice, and "reminder" first-class mail notice when AEM becomes available).

Finally, the parties have noted that the proposed settlement bears similarity to the settlement in the Volkswagen MDL. See Proc. Guidance for Class Action Sett. ¶ 11.

### RYSEWYK ET AL. V. SEARS HOLDINGS CORPORATION ET AL.

**Case No. 1:15-cv-04519 (N.D. Ill.)**

The Honorable Manish S. Shah (January 29, 2019): The Court holds that the Notice and notice plan as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held the Notice and notice plan to be reasonable and the best practicable under the circumstances in its Preliminary Approval Order dated August 6, 2018. (Dkt. 191) Based on the declaration of Steven Weisbrot, Esq. of Angeion Group (Dkt. No. 209-2), which sets forth compliance with the Notice Plan and related matters, the Court finds that the multi-pronged notice strategy as implemented has successfully reached the putative Settlement Class, thus constituting the best practicable notice and satisfying due process.

### MAYHEW ET AL. V. KAS DIRECT, LLC, AND S.C. JOHNSON & SON, INC.

**Case No. 7:16-cv-06981 (S.D.N.Y.)**

The Honorable Vincent J. Briccetti (June 26, 2018): In connection with their motion, plaintiffs provide the declaration of Steven Weisbrot, Esq., a principal at the firm Angeion Group, LLC, which will serve as the notice and settlement administrator in this case. (Doc. #101, Ex. F: Weisbrot Decl.) According to Mr. Weisbrot, he has been responsible for the design and implementation of hundreds of class action administration plans, has taught courses on class action claims administration, and has given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, and digital media in due process notice. Mr. Weisbrot states that the internet banner advertisement campaign will be responsive to search terms relevant to "baby wipes, baby products, baby care products, detergents, sanitizers, baby lotion, [and] diapers," and will target users who are currently browsing or recently browsed categories "such as parenting, toddlers, baby care, [and] organic products." (Weisbrot Decl. ¶ 18). According to Mr. Weisbrot, the internet banner advertising campaign will reach seventy percent of the proposed class members at least three times each. (Id. ¶ 9). Accordingly, the Court approves of the manner of notice proposed by the parties as it is reasonable and the best practicable option for confirming the class members receive notice.

## IN RE: OUTER BANKS POWER OUTAGE LITIGATION
**Case No. 4:17-cv-00141 (E.D.N.C.)**

The Honorable James C. Dever III (May 2, 2018): The court has reviewed the proposed notice plan and finds that the notice plan provides the best practicable notice under the circumstances and, when completed, shall constitute fair, reasonable, and adequate notice of the settlement to all persons and entities affected by or entitled to participate in the settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process. Thus, the court approves the proposed notice plan.


## GOLDEMBERG ET AL. V. JOHNSON & JOHNSON CONSUMER COMPANIES, INC.
**Case No. 7:13-cv-03073 (S.D.N.Y.)**

The Honorable Nelson S. Roman (November 1, 2017): Notice of the pendency of the Action as a class action and of the proposed Settlement, as set forth in the Settlement Notices, was given to all Class Members who could be identified with reasonable effort, consistent with the terms of the Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law in the United States. Such notice constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.


## HALVORSON V. TALENTBIN, INC.
**Case No. 3:15-cv-05166 (N.D. Cal.)**

The Honorable Joseph C. Spero (July 25, 2017): The Court finds that the Notice provided for in the Order of Preliminary Approval of Settlement has been provided to the Settlement Class, and the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances, and was in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the United States Constitution, and any other applicable law. The Notice apprised the members of the Settlement Class of the pendency of the litigation; of all material elements of the proposed settlement, including but not limited to the relief afforded the Settlement Class under the Settlement Agreement; of the res judicata effect on members of the Settlement Class and of their opportunity to object to, comment on, or opt-out of, the Settlement; of the identity of Settlement Class Counsel and of information necessary to contact Settlement Class Counsel; and of the right to appear at the Fairness Hearing. Full opportunity has been afforded to members of the Settlement Class to participate in the Fairness Hearing. Accordingly, the Court determines that all Final Settlement Class Members are bound by this Final Judgment in accordance with the terms provided herein.


## IN RE: ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION
**MDL No. 2669/Case No. 4:15-md-02669 (E.D. Mo.)**

The Honorable John A. Ross (July 21, 2017): The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program, dated July 13, 2017, and the Parties' Stipulation—including an extensive and targeted publication campaign composed of both consumer magazine publications in People and Sports Illustrated, as well as serving 11,484,000 highly targeted digital banner ads to reach the prospective class members that will deliver approximately 75.3% reach with an average frequency of 3.04 —is

the best method of notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process.

The Court further finds that the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice, the Claim Form, and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

## TRAXLER ET AL. V. PPG INDUSTRIES INC. ET AL.
### Case No. 1:15-cv-00912 (N.D. Ohio)
The Honorable Dan Aaron Polster (April 27, 2017):  The Court hereby approves the form and procedure for disseminating notice of the proposed settlement to the Settlement Class as set forth in the Agreement. The Court finds that the proposed Notice Plan contemplated constitutes the best notice practicable under the circumstances and is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e). In addition, Class Notice clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Settlement Class; (iii) the claims and issues of the Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

## IN RE: THE HOME DEPOT, INC., CUSTOMER DATA SECURITY BREACH LITIGATION
### Case No. 1:14-md-02583 (N.D. Ga.)
The Honorable Thomas W. Thrash Jr. (March 10, 2017): The Court finds that the form, content, and method of giving notice to the settlement class as described in the settlement agreement and exhibits: (a) constitute the best practicable notice to the settlement class; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by settlement class members.

## ROY V. TITEFLEX CORPORATION T/A GASTITE AND WARD MANUFACTURING, LLC
### Case No. 384003V (Md. Cir. Ct.)
The Honorable Ronald B. Rubin (February 24, 2017): What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make decision. To me that is a key piece of this deal. *I think the notice provisions are exquisite* [emphasis added].

## IN RE: LG FRONT LOADING WASHING MACHINE CLASS ACTION LITIGATION

**Case No. 2:08-cv-00051 (D.N.J.)**

The Honorable Madeline Cox Arleo (June 17, 2016): This Court further approves the proposed methods for giving notice of the Settlement to the Members of the Settlement Class, as reflected in the Settlement Agreement and the joint motion for preliminary approval. The Court has reviewed the notices attached as exhibits to the Settlement, the plan for distributing the Summary Notices to the Settlement Class, and the plan for the Publication Notice's publication in print periodicals and on the internet, and finds that the Members of the Settlement Class will receive the best notice practicable under the circumstances. The Court specifically approves the Parties' proposal to use reasonable diligence to identify potential class members and an associated mailing and/or email address in the Company's records, and their proposal to direct the ICA to use this information to send absent class members notice both via first class   mail and email. The Court further approves the plan for the Publication Notice's publication in two national print magazines and on the internet. The Court also approves payment of notice costs as provided in the Settlement. The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy.

## FENLEY v. APPLIED CONSULTANTS, INC.

**Case No. 2:15-cv-00259 (W.D. Pa.)**

The Honorable Mark R. Hornak (June 16, 2016):  The Court would note that it approved notice provisions of the settlement agreement in the proceedings today. That was all handled by the settlement and administrator Angeion. The notices were sent. The class list utilized the Postal Service's national change of address database along with using certain proprietary and other public resources to verify addresses. the requirements of Fed.R.Civ.P. 23(c)(2), Fed.R.Civ.P. 23(e) (l), and Due Process....

The Court finds and concludes that the mechanisms and methods of notice to the class as identified were reasonably calculated to provide all notice required by the due process clause, the applicable rules and statutory provisions, and that the results of ***the efforts of Angeion were highly successful and fulfilled all of those requirements*** [emphasis added].

## FUENTES et al. v. UNIRUSH, LLC d/b/a UNIRUSH FINANCIAL SERVICES et al.

**Case No. 1:15-cv-08372 (S.D.N.Y.)**

The Honorable J. Paul Oetken (May 16, 2016): The Court approves, as to form, content, and distribution, the Claim Form attached to the Settlement Agreement as Exhibit A, the Notice Plan, and all forms of Notice to the Settlement Class as set forth in the Settlement Agreement and Exhibits B-D, thereto, and finds that such Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court also finds that the Notice constitutes valid, due and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice is reasonably calculated to, under all circumstances, reasonably apprise members of the Settlement Class of the pendency of the Actions, the terms of the Settlement Agreement, and the right to object to the settlement and to exclude themselves from the Settlement Class. The Parties, by agreement, may revise the Notices and Claim Form in ways that are not material, or in ways that are appropriate to update those documents for purposes of accuracy or formatting for publication.

## IN RE: WHIRLPOOL CORP. FRONTLOADING WASHER PRODUCTS LIABILITY LITIGATION

**MDL No. 2001/Case No. 1:08-wp-65000 (N.D. Ohio)**

The Honorable Christopher A. Boyko (May 12, 2016): The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

## SATERIALE ET AL. V. R.J. REYNOLDS TOBACCO CO.

**Case No. 2:09-cv-08394 (C.D. Cal.)**

The Honorable Christina A. Snyder (May 3, 2016): The Court finds that the Notice provided to the Settlement Class pursuant to the Settlement Agreement and the Preliminary Approval Order has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.

## FERRERA ET AL. V. SNYDER'S-LANCE, INC.

**Case No. 0:13-cv-62496 (S.D. Fla.)**

The Honorable Joan A. Lenard (February 12, 2016): The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.

## IN RE: POOL PRODUCTS DISTRIBUTION MARKET ANTITRUST LITIGATION

**MDL No. 2328/Case No. 2:12-md-02328 (E.D. La.)**

The Honorable Sarah S. Vance (December 31, 2014): To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web- based forms of communication in the plan. The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process. The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement. Moreover, the plan to combine notice for the Zodiac and Hayward settlements should streamline the process and avoid confusion

that might otherwise be caused by a proliferation of notices for different settlements. Therefore, the Court approves the proposed notice forms and the plan of notice.

## SOTO ET AL. V. THE GALLUP ORGANIZATION, INC.

**Case No. 0:13-cv-61747 (S.D. Fla.)**

The Honorable Marcia G. Cooke (June 16, 2015): The Court approves the form and substance of the notice of class action settlement described in ¶ 8 of the Agreement and attached to the Agreement as Exhibits A, C and D. The proposed form and method for notifying the Settlement Class Members of the settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to the notice. The Court finds that the proposed notice is clearly designed to advise the Settlement Class Members of their rights.

## OTT V. MORTGAGE INVESTORS CORPORATION OF OHIO, INC.

**Case No. 3:14-cv-00645 (D. Or.)**

The Honorable Janice M. Stewart (July 20, 2015): The Notice Plan, in form, method, and content, fully complies with the requirements of Rule 23 and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled thereto. The Court finds that the Notice Plan is reasonably calculated to, under all circumstances, reasonably apprise the persons in the Settlement Class of the pendency of this action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the Settlement Class.