UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| CHRISTOPHER GUIDA, *on behalf of himself and all others similarly situated*, | Case No. 1:22-cv-02350-GPG-MEH |
| Plaintiffs, | |
| v. | Hon. Gordon P. Gallagher |
| GAIA, INC., | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF**

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), the Class Action Settlement Agreement (Dkt. 75-2 at 16), and this Court's Preliminary Approval Order (Dkt. 76), Plaintiff Christopher Guida ("Plaintiff") respectfully requests that this Court grant final approval of the Settlement. The Settlement is the product of arm's-length negotiation and mediation after robust informal discovery. It will fully resolve this litigation, create a $2,000,000 non-reversionary cash fund for the benefit of the Settlement Class, and require Gaia to suspend operation of the Facebook Pixel on portions of its website relevant to compliance with the Video Privacy Protection Act ("VPPA")—*i.e.*, webpages that include video content and have a URL that identifies the video content viewed—thereby providing Settlement Class Members with valuable injunctive relief. Based on the views of experienced counsel, who were informed by the strengths and weaknesses of their respective clients' cases and defenses, these benefits are immediate and substantial, especially considering the costs, risks, and delay of continued litigation, trial, and possible appeals.

The notice program has been highly successful. Following preliminary approval of the Settlement, Class Counsel worked to ensure that the notice terms were clear and would provide fair notice to Class Members. (*See* Dkts. 79, 81.) The Settlement Administrator thereafter successfully disseminated Notice to the Settlement Class, reaching 96.06% of the Class. (Appendix of Evidence in Support of Plaintiff's Motion for Final Approval, filed concurrently herewith ("Appx."), p. 40, ¶ 13 (Declaration of Baro Lee Re: Notice and Administration ("Lee Decl.")).) The reach achieved by this notice effort surpasses the high end of the Federal Judicial Center's standard of 70–95%.

The exclusion and objection deadline has been extended to October 24, 2024, and the deadline for filing claims has been extended to December 2, 2024. (Dkt. 84.) To date, the Settlement Administrator has not received any request for exclusion or objections to the Settlement. Class Counsel will provide an update on implementation of the notice plan and the claims process, report on any requests for exclusion, and respond to any substantive objections by November 25, 2024, and provide a proposed order prior to the Final Approval Hearing on December 9, 2024.

In sum, the Settlement satisfies all criteria for final approval. Plaintiff thus respectfully requests this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) certify the Settlement Class; (iii) find that the Notice Plan satisfies the requirements of Rule 23(c) and due process and constitutes the best notice practicable under the circumstances; and (iv) enter final judgment. Gaia has represented that it does not oppose this motion.

## II. <u>INCORPORATION BY REFERENCE</u>

In the interest of judicial efficiency, for the factual and procedural background on this case, Plaintiff refers the Court to and hereby incorporates Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and the accompanying Appendix of Evidence in support thereof. (Dkts. 75 & 75-2.) Plaintiff also incorporates by reference Plaintiff's Motion for Award of Attorneys' Fees, Litigation Costs & Service Award, filed concurrently herewith.

## III. SUMMARY OF SETTLEMENT

### A. Class Definition

The proposed Settlement Class consists of all individuals residing in the United States who, during the Class Period (September 12, 2020, to the date of Preliminary Approval), subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites (gaia.com and yogainternational.com) while they had a Facebook account. (Dkt. 75-2, p. 16, ¶ 1.33 (Settlement).)

### B. Monetary Relief

Gaia has agreed to pay $2,000,000 to create a non-reversionary Settlement Fund for the benefit of Class Members. (*Id.,* pp. 16, 18, ¶¶ 1.33 & 2.1.1.) Class Members who submit valid claims will receive a *pro rata* payment after the deduction of settlement-related costs, including the expenses of the settlement administrator and the costs of notice to the Class, taxes and tax-related expenses, and any Court-awarded attorneys' fees, expense reimbursements, and named plaintiff service award. (*Id.*, pp. 12, 19, ¶¶ 1.18, 2.1.2–2.1.3.)

### C. Business Practice Changes

Gaia also has agreed to implement meaningful business practice changes designed to remediate the alleged VPPA violations going forward. Gaia agreed to suspend operation of the Pixel on any web pages that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United

States Supreme Court or the Tenth Circuit Court of Appeals. (*Id.*, p. 20, ¶ 2.2.) This provision does not prevent Gaia from obtaining VPPA-compliant consent in the future should it wish to reinstitute use of the Pixel. (*Id.*)

IV.     **ARGUMENT**

The Tenth Circuit has long maintained a strong policy favoring settlements. *See American Home Assurance Co. v. Cessna Aircraft Co.,* 551 F. 2d 804, 808 (10th Cir. 1977) ("The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims."). "The 'presumption in favor of voluntary settlement agreements' is especially strong in class actions." *O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019) (quoting *Tuten v. United Airlines, Inc.,* 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014)).

Pursuant to Rule 23(e)(2), a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." Traditionally, the Tenth Circuit has instructed courts to analyze four factors when making this determination: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *See, e.g., Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Following amendment of Rule 23(e) in 2018, courts also must consider whether: (A) plaintiffs and counsel have adequately represented the class; (B) the settlement was negotiated at arm's-length; (C) the relief for the class is adequate, taking into account (i)

the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed fee award, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2).

Courts in the Tenth Circuit continue to apply the traditional factors when evaluating the fairness of the settlement of a class action. *See O'Dowd*, 2019 WL 4279123, at *12 (the court "first addresses the relevant factors the Tenth Circuit applies [] and then, to the extent that they do not overlap, considers the factors identified in Rule 23(e)(2)").

As outlined below, the proposed Settlement easily satisfies this standard and should be finally approved.

### A. **The Settlement Should Be Approved as Fair, Reasonable and Adequate**

#### 1. **The Settlement Was Fairly and Honestly Negotiated.**

Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate and reasonable." *O'Dowd*, 2019 WL 4279123, at *13. Moreover, where the parties are assisted by a "professional, experienced mediator," there is a presumption that the settlement was reached without collusion and that the settlement agreement should be approved as fair, adequate, and reasonable. *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*, 2024 WL 1743497, at *7 (D. Colo. Apr. 23, 2024) (quotations omitted).

Here, settlement negotiations included an intensive mediation process, overseen by Hon. Suzanne H. Segal, a former United States Magistrate Judge for the United States

District Court for the Central District of California and a neutral at Signature Resolution. The parties prepared detailed mediation statements before participating in a day-long mediation with Judge Segal. (Dkt. 75-2, pp. 66, 68, ¶¶ 14, 21 (Joint Declaration of Class Counsel in Support of Motion for Preliminary Approval ("Joint Decl. re Preliminary Approval").) Only after months of additional, determined negotiations facilitated by Judge Segal did the parties reach an agreement in principle via a mediator's proposal. (*Id.*, pp. 66–67, ¶¶ 14, 17.) These efforts were unquestionably at arms' length and non-collusive. Moreover, the Settlement itself bears no indicia of collusion: attorneys' fees were *not* negotiated separately, there is *no* "clear sailing" provision, and under no circumstances will any amount of the Settlement Fund revert to Gaia. There can be no doubt that the Settlement is fair and worthy of final approval.

Further, the parties engaged in meaningful formal discovery in this case before informally exchanging more information during the mediation. That information included direct communications between counsel regarding Gaia's data bearing on the merits of Plaintiff's claims, the size of the class, and Gaia's ability to satisfy an adverse judgment. (*Id.*, p. 66, ¶ 16.) Plaintiff's counsel—attorneys with considerable experience in assessing the strengths and weaknesses of VPPA cases—came away from the mediation well informed about the strengths and risks the claims, as well as their value. (*Id.*, p. 68, ¶ 23.) This informal exchange supports the presumption that the Settlement Agreement should be approved as fair, adequate, and reasonable. *Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485, at *2 (D. Colo. May 21, 2019).

### 2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt.

"[S]erious questions of law and fact exist where disputes between the parties...could significantly impact this case if it were litigated." *O'Dowd*, 2019 WL 4279123, at *13. Before the Settlement was reached here, Gaia asserted multiple credible defenses to the merits of Plaintiff's claims, each of which presented grave risks and easily could have resulted in either a substantially lower or no recovery at all.

Gaia asserted in its motion to dismiss that Plaintiff lacks standing to pursue a claim under the VPPA because he did not suffer a concrete injury under binding Supreme Court precedent. (Dkt. 20 at 5–7.) Gaia also argued that (1) Gaia did not disclose any of its subscribers' personally identifiable information (PII) through its use of the Pixel; (2) Facebook IDs do not constitute PII under the VPPA; and (3) Gaia did not knowingly disclose PII to Facebook. (*Id.* at 7–15.) Plaintiff recognizes that this litigation is novel and claims applying the VPPA to operation of the Pixel are still relatively untested. Courts have denied motions to dismiss in substantially similar cases, but no Pixel-based VPPA case has yet proceeded to summary judgment, let alone trial.

Had Gaia prevailed on any of these arguments, the Class's recovery would have been severely limited, or eliminated altogether. Taken collectively, Gaia's arguments threatened the viability of the entire action—risks that would have persisted throughout the litigation and inevitable appeals. Thus, "[t]he Settlement Agreement ensures the class members will receive reasonable compensation in light of the uncertainties of litigating to a judgment." *Ramos v. Banner Health*, 2020 WL 6585849, at *3 (D. Colo. Nov. 10, 2020). In the face of these significant risks, Plaintiff and Class Counsel were able to achieve both

significant monetary relief and forward-looking business changes addressing the alleged privacy violations. Accordingly, the Settlement represents an excellent result for the Settlement Class.

### 3. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief.

In assessing a settlement, courts in this District weigh the recovery "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *O'Dowd*, 2019 WL 4279123, at *13. Here, there is no question that the Settlement provides robust relief to the Class, and that continued litigation would have been risky, costly, and protracted.

The $2 million Settlement Fund represents a significant monetary recovery. Gaia's data indicates that approximately 478,000 U.S.-based Gaia users accessed prerecorded videos on the Websites during the relevant time period. (Dkt. 75-2, p. 66, ¶ 16 (Joint Decl. re Preliminary Approval).) Assuming 68% of those users also had Facebook accounts,[1] and that 5% of eligible Class Members will submit claims,[2] *pro rata* payments from the

---

[1] *See, e.g.*, Pew Research Center, *5 Facts about how Americans use Facebook, two decades after its launch* (Feb. 2, 2024) (reporting that 68% of U.S. adults use Facebook), https://www.pewresearch.org/short-reads/2024/02/02/5-facts-about-how-americans-use-facebook-two-decades-after-its-launch/ (last accessed Sept. 30, 2024).

[2] Plaintiff uses a 5% claims rate for illustrative purposes only. Actual claims rates in class settlements can vary widely depending on factors that are not easily predictable, including media reporting on the settlement, individual class members' reactions to the underlying cause of action, the size of the class, effectiveness of the notice program, the relative ease of submitting a claim, and the nature or amount of potential relief available to claimants. One analysis of 149 consumer class actions conducted by the FTC concluded that "[a]cross all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.*, cases weighted by the number of notice recipients) was 4%." *See* Fed. Trade Comm'n, *Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns* 11 (Sept. 2019), *available at* https://www.ftc.gov/system/files/documents/reports/consumers-class-

Net Settlement Fund[3] would amount to approximately $77 to each claimant. That benefit alone would be substantial—and comparable to what plaintiffs recently have obtained in other VPPA cases. *See, e.g.*, *Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195-RGS (D. Mass. May 25, 2023), Dkt. 52 (Prelim. Approval Order) (assuming 10%–20% claims rate, estimating $22–$44 payment to each claimant); *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 18-md-02843 (N.D. Cal. July 11, 2023), Dkt. 1145 (Mot. for Final Approval) (preliminary estimate of $35 average payment to claimants for release of numerous claims, including under the VPPA).

In addition to monetary relief, the Settlement also includes valuable injunctive relief—namely, that Gaia will cease use of the Pixel (or otherwise obtain users' informed, written consent) to prevent further violations of the VPPA and its users' privacy. This is the same injunctive relief Plaintiff would have sought following trial. *See Lopez v. City of Santa Fe*, 206 F.R.D. 285, 292 (D.N.M. 2002) (finding value of immediate injunctive relief through settlement outweighed possibility of future relief where "[p]laintiffs could not have received a better resolution had there been protracted litigation"). Accordingly, the Settlement represents a very favorable result for Settlement Class Members, who will benefit from not only monetary relief but also forward-looking business practice changes.

---

actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last accessed Sept. 30, 2024).

[3] The Net Settlement Fund is the amount to be distributed to the Class after deducting administration expenses, any plaintiff service award ordered by the Court, and any award of attorneys' fees and costs ordered by the Court. (Dkt. 75-2, p. 12, ¶ 1.18 (Settlement).)

The relief provided through the proposed Settlement is particularly significant considering the costs and risks Plaintiff would face if litigation were to proceed in this case. Plaintiff recognizes that this novel litigation is inherently risky, including because of the defenses Gaia has raised to date. Assuming Plaintiff survived Gaia's motion to dismiss and summary judgment—in which Gaia likely would raise many of the same arguments—Plaintiff would need to certify and maintain a class over Gaia's opposition. Plaintiff then would need to prevail at trial and secure an affirmance on appeal before recovering damages. Ultimately, continued litigation could add several more years before there is a resolution.

The Court's acceptance and approval of the Settlement is preferable in comparison to the continuation of lengthy and expensive litigation, which would only increase risk of a substantially lower recovery (or no recovery at all).

### 4. The Settlement Class is Adequately Represented, and in the Judgment of All Parties, the Settlement is Fair, Adequate and Reasonable.

There is no question here that—as the Court previously recognized—Plaintiff adequately represented the Settlement Class. (*See* Dkt. 76 at 4.) Plaintiff has no interests in conflict with those of the Class, but rather has been equally interested in obtaining relief for Gaia's alleged misconduct, and for ensuring that Gaia reforms its business practices. *See CO Craft, LLC v. Grubhub Inc.*, 2023 WL 3763525, at *8 (D. Colo. June 1, 2023) (adequacy requirement met where there was "no indication in the record that there is an obvious interclass conflict" and the Plaintiff had "overlapping interests with the class members"). Plaintiff has vigorously represented his fellow Class Members, assisting his counsel by, among other things, providing pertinent information regarding his Gaia

subscription and Facebook account. (Dkt. 75-2, p. 68, ¶ 22 (Joint Decl. re Preliminary Approval).)

As the Court also previously recognized, Class Counsel have fairly and adequately represented Plaintiff and the Settlement Class in this case. (*See* Dkt. 76 at 4.) Class Counsel have extensive experience litigating, trying, and settling class actions, including consumer privacy cases like this one, throughout the country. (Dkt. 75-2, pp. 70–79, ¶¶ 30–53 (Joint Decl. re Preliminary Approval).) Courts across the country have recognized Class Counsel's experience in complex class litigation and their skilled and effective representation. (*Id.*)

Class Counsel have vigorously represented the Class for over two years, including by: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) opposing Gaia's motion to dismiss; (iii) pursuing formal discovery from Gaia; (iv) pursuing third-party discovery from Meta; (v) gathering Plaintiff's documents and relevant information; (vi) preparing a detailed mediation statement; (vii) analyzing relevant informal discovery during mediation; (viii) participating in mediation and extensive subsequent settlement discussions; and (ix) achieving a very favorable Settlement on behalf of the Settlement Class. (*See generally* Dkt. 75-2, pp. 65, 67–68, ¶¶ 9–11, 21 (Joint Decl. re Preliminary Approval).) After preliminary approval of the Settlement, Class Counsel have continued to vigorously advocate on behalf of the Class, including by ensuring the notice materials gave adequate notice to Class Members. (*See* Appx., p. 11, ¶ 25 (Joint Declaration of Class Counsel in Support of Plaintiff's (1) Motion for Final Approval of Class Action Settlement and (2) Motion for

Award of Attorneys' Fees, Litigation Costs & Service Award); *see also* Dkts. 79, 81.) In sum, Class Counsel are "seasoned and experienced class action attorneys" who have been "conscientiously and vigorously representing [Plaintiff's] rights for the past two years in this litigation." *Miller v. Basic Rsch., LLC*, 285 F.R.D. 647, 656 (D. Utah 2010).

Based on their collective experience, Class Counsel have concluded that the Settlement provides exceptional results for the Class, while avoiding the costs, delays, and uncertainties of continued litigation. (Dkt. 75-2, pp. 68–69, ¶¶ 23–26 (Joint Decl. re Preliminary Approval).) Before agreeing to a mediator's proposal, Class Counsel had sufficient information at their disposal to adequately assess the strengths and weaknesses of Plaintiff's case and balance the benefits of settlement against the risks of litigation. (*Id.*, p. 68, ¶ 23.) In light of their substantial extensive experience and success in prosecuting class actions such as this one, Class Counsel's judgment that the Settlement is fair and adequate should be given substantial weight. *See O'Dowd*, 2019 WL 4279123, at *14 ("'the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight.'") (quoting *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997)).

### 5. <u>Additional Factors Also Support Final Settlement Approval.</u>

Multiple additional considerations also warrant final approval of the Settlement. *First*, the Settlement satisfies Rule 23(e)(2)(D) because it treats all Settlement Class Members equally by distributing the Net Settlement Fund on a *pro rata* basis.

*Second*, the Settlement readily meets the requirements of Rule 23(e)(2)(C). The Notice complied in all respects with the requirements set forth in this Court's Preliminary

Approval Order and was successful in reaching 96.06% of the Class. Indeed, the Court-approved Notice "gave the Settlement Class notice of the terms of the proposed Settlement Agreement; the rights of Class Members under the Settlement Agreement— including the rights to opt-out, object, and be heard at a Final Fairness Hearing; the application for counsel fees, costs and expenses; and the proposed service award payments to the Class Representatives." *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *2 (D. Colo. Dec. 16, 2019) (notice of these items "constitutes due and sufficient notice").

The Notice also contained all the information required by Rule 23(c)(2)(B) and due process because it sufficiently apprised the Class of, among other things, the nature of the Action and the claims asserted; the Settlement's basic terms; and notice of the binding effect of a judgment on Class Members. The Notice also provided information on how to submit a Claim Form and informed Class Members of the avenues available to them to obtain any additional information necessary to make an informed decision, including by directly contacting Class Counsel or visiting the Settlement website. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 Fed. App'x. 752, 764 (10th Cir. 2020) (holding requirements of Rule 23 and due process satisfied where similar notice was provided).

*Third*, the terms of the proposed award of attorneys' fees are discussed in the accompanying Motion for Award of Attorneys' Fees, Litigation Costs & Service Award (the "Fee Motion"). Class Counsel has applied for a fee representing approximately 31.5% of the Settlement Fund. As detailed in the Fee Motion, such a fee is highly reasonable in light of the results obtained, and is in line with the "customary fee to class counsel in a

common fund settlement" in the Tenth Circuit of "approximately one-third of the economic benefit bestowed on the class." *Aragon v. Clear Water Prod. LLC*, 2018 WL 6620724, at *5 (D. Colo. Dec. 18, 2018) (cleaned up; quotation omitted) (fee award between 32% and 33% of total settlement was "in line with the customary fees and awards in similar cases"); *see also In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2022 WL 2663873, at *5 (D. Kan. July 11, 2022) ("Our court consistently has recognized that a one-third fee is customary in contingent-fee cases" and "is consistent with fees awarded in comparably high-risk, high potential damage, complex class actions resulting in creation of a common fund, such as here.") (cleaned up, quotations omitted).

*Finally*, pursuant to this Court's August 28, 2024 order, any Settlement Class Member who desires to be excluded from the Settlement or to object to any aspect of the Settlement, the Plan of Allocation, or to the attorneys' fees and expense award request, is required to submit such exclusion request or objection by October 24, 2024. (Dkt. 84.) To date, no Settlement Class Member has objected to any aspect of the Settlement or submitted a required for exclusion from the Class. (*See* Appx., p. 40, ¶ 13 (Lee Decl.).) The positive reaction of the Settlement Class to the Settlement thus favors approval by the Court. *See Diaz*, 2019 WL 2189485, at *3 ("The fact that no class member objects shows that the class also considers this settlement fair and reasonable.").

### B. The Court Should Certify the Settlement Class

In the Preliminary Approval Order, the Court conditionally certified the Settlement Class under Rules 23(a) and (b)(3) "as the prerequisites thereunder have been met, including (1) that the Settlement Class is so numerous that joinder of all members is

14

impracticable; (2) that there are questions of law and fact common to members of the Settlement Class that predominate over questions affecting only individual members (*e.g.*, whether Gaia unlawfully disclosed to third parties Plaintiff's and Settlement Class Members' personally identifiable information without consent in a manner that violated the [VPPA], and whether Plaintiff and the Settlement Class Members are entitled to uniform statutory damages under the VPPA); (3) that Plaintiff's claims are typical of the claims of the Settlement Class; that Plaintiff and his counsel will fairly and adequately protect the interests of the Settlement Class; and (4) that a settlement class action is a superior method of fairly and efficiently adjudicating this Action." (Dkt. 76 at 3–4.)

Nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received. For all the reasons stated in the Preliminary Approval Order and Plaintiff's unopposed motion for preliminary approval of the Settlement (Dkt. 75), Plaintiff respectfully requests that the Court grant final certification to the Settlement Class under Rules 23(a) and (b)(3).

## V.     **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that this Court enter an order: (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) certifying the Settlement Class; (iii) finding that the Notice Plan satisfies the requirements of Rule 23(c) and due process and constitutes the best notice practicable under the circumstances; and (iv) entering final judgment.

Dated: October 2, 2024

Respectfully submitted,

*/s/     Shawn Kennedy*
Shawn M. Kennedy
HERRERA KENNEDY LLP
5900 S. Lake Forest Dr., Suite 300
McKinney, TX 75070
Telephone: (949) 936-0900
Email: skennedy@herrerakennedy.com

Nicomedes Sy Herrera
HERRERA KENNEDY LLP
5072 Annunciation Circle, Ste. 207
Ave Maria, FL 34142
Telephone: (510) 422-4700
Email: nherrera@herrerakennedy.com


*/s/     Christopher Cormier*
Christopher J. Cormier
BURNS CHAREST LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 577-3977
Email: ccormier@burnscharest.com

Hannah M. Crowe
BURNS CHAREST LLP
900 Jackson Street, Ste. 500
Dallas, TX 75202
Telephone: (469) 904-4550
Email: hcrowe@burnscharest.com

*/s/     Rachel Geman*
Rachel Geman
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Email: rgeman@lchb.com

Michael K. Sheen
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: msheen@lchb.com

*Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I, Shawn M. Kennedy, hereby certify that a copy of this Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Memorandum In Support Thereof was sent to counsel of record via the federal court's e-filing system.

Dated:  October 2, 2024


/s/      Shawn Kennedy
Shawn M. Kennedy

HERRERA KENNEDY LLP
5900 S. Lake Forest Dr., Suite 300
McKinney, TX 75070
Telephone: (949) 936-0900
Email: skennedy@herrerakennedy.com