UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| CHRISTOPHER GUIDA, *on behalf of himself and all others similarly situated*, | Case No. 1:22-cv-02350-GPG-MEH |
| Plaintiffs, | |
| v. | Hon. Gordon P. Gallagher |
| GAIA, INC., | |
| Defendant. | |

**PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS & SERVICE AWARD, AND MEMORANDUM IN SUPPORT THEREOF**

I.  **<u>INTRODUCTION</u>**

As detailed in the concurrently-filed Unopposed Motion for Final Approval of Class Action Settlement, Plaintiff Christopher Guida ("Plaintiff") has reached a Settlement with Defendant Gaia, Inc. ("Gaia") that provides significant benefits to Settlement Class Members.[1] The Settlement provides for a $2,000,000 non-reversionary common fund for the benefit of the Class. In addition, the Settlement provides fulsome and valuable injunctive relief by requiring Gaia to suspend the operation of the Facebook Pixel on portions of its website relevant to Video Privacy Protection Act ("VPPA") compliance.

As compensation for their efforts in successfully litigating this action and in accordance with the Settlement terms, Class Counsel respectfully request attorneys' fees of $623,963.04 and reimbursement of Class Counsel's litigation costs of $42,703.62, which together represent one-third of the Gross Settlement Fund, or $666,666.66. Class Counsel also seeks a service award for Plaintiff in the amount of $2,000 in recognition of his role in prosecuting the litigation on behalf of the Settlement Class.

These requests are fair and reasonable based on the meaningful relief obtained; the skill, time and effort required to obtain such relief; the complex and relatively novel legal issues and technical matters presented; the contingent nature of the representation; and customary fees and awards in similar actions. In fact, Class Counsel seek an award of fees in an amount that is meaningfully less than the value of the time that they have invested into this case. For the reasons stated herein, Class Counsel and Plaintiff

---

[1] *See* Dkt. 75-2, p. 16, ¶ 1.33 (Settlement). Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

respectfully request that the Court approve the requested attorneys' fees, litigation costs, and service award.

II. **OVERVIEW OF THE LITIGATION**

    A. **Summary of Plaintiff's Allegations**

Plaintiff alleges that Gaia, a subscription-based digital video streaming service, intentionally installed the Facebook Pixel ("Pixel") on its websites, gaia.com and yogainternational.com (together, the "Websites"), and selected the specific categories of information the Pixel would capture and transmit. (Dkt. 1 (Complaint) ¶¶ 2, 5-8, 53–56.) The Pixel is a string of programming code that businesses like Gaia can embed on their websites to track consumers' actions and report the actions back to Meta Platforms, Inc. ("Meta") for targeting and delivering advertisements. (*Id.* ¶¶ 39, 47–50.) Gaia's use of the Pixel allows Meta to build detailed profiles about Gaia subscribers and facilitates Gaia's use of Meta's advertising services. (*Id.* ¶¶ 5, 39.)

Gaia knowingly configured the Pixel to share its subscribers' personally identifiable information ("PII"). (*Id.* ¶¶ 29–30, 38, 49–52, 60, 95.) Consequently, when a Gaia subscriber views a particular video, Gaia sends the title and URL of that video to Meta via the Pixel. (*Id.* ¶¶ 49–56.) At the same time, the Pixel also causes the Facebook ID ("FID") of any subscriber who also has a Facebook account, using the "c_user" cookie, to be sent to Meta. (*Id.*) An FID is a unique sequence of numbers assigned by Facebook to each user that anyone can use to determine their identity. (*Id.* ¶ 7.) Any ordinary person can type "facebook.com/[FID]" into a web browser to view that subscriber's Facebook profile and all the personal information it contains. (*Id.* ¶¶ 7, 52, 58.)

Plaintiff was a Gaia subscriber and Facebook user to whom Meta assigned a unique FID linked to his Facebook profile during the relevant period. (*Id.* ¶¶ 12, 74.) Plaintiff subscribed to Gaia's digital video streaming service and accessed videos on its website. (*Id.* ¶¶ 12, 74–75.) When he did so, Gaia's Pixel caused the title and URL of videos he accessed on gaia.com and his FID to be sent to Meta without his separate informed, written consent. (*Id.* ¶¶ 76–77.)

B. **Mediation and Settlement**

Early in the case, including while Gaia's motion to dismiss was pending, the parties engaged in direct communications and discussed the prospect of resolution. (Dkt. 75-2, p. 66, ¶ 14 (Joint Declaration of Class Counsel in Support of Motion for Preliminary Approval ("Joint Decl. re Preliminary Approval")).) Those discussions led to an agreement between the parties to engage in mediation before The Honorable Suzanne H. Segal, a former United States Magistrate Judge for the United States District Court for the Central District of California and a neutral at Signature Resolution. (*Id.*) The full-day mediation, which involved the parties' submission and exchange of confidential mediation briefs, occurred on November 29, 2023, and failed at the time to result in agreement. (*Id.*)

Over the following weeks and months, the parties engaged in additional rounds of arm's length negotiations facilitated by Judge Segal. (*Id.*, p. 66, ¶ 15.) These negotiations, which were protracted and at times contentious, included both direct discussions between counsel for the parties and mediated communications through Judge Segal. (*Id.*) On May 31, 2024, Judge Segal made a double-blind mediator's proposal for monetary relief covering a full, class-wide settlement of the Action. (*Id.*, 67, ¶ 17.) On June 5, 2024, Judge Segal informed the parties that they had both agreed to the mediator's proposal. (*Id.*) On

June 25, 2024, the parties agreed to and executed a term sheet covering additional material terms and proceeded to negotiate and draft a long form settlement agreement. (*Id.*, 67, ¶ 18.) On July 3, 2024, the parties finalized and executed the Settlement now before this Court for final approval. (*Id.*, 67, ¶ 19.)

      **C.**      <u>**Preliminary Approval of the Settlement**</u>

On July 8, 2024, Plaintiff filed a motion for preliminary approval of the settlement. (Dkt. 75.) On July 19, 2024, this Court granted preliminary approval of the Settlement, holding: (1) "the Court will likely be able to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class"; (2) "the Settlement substantially fulfills the purposes and objectives of the class action and provides beneficial relief to the Settlement Class, especially considering the risks and delay of continued litigation"; and (3) "the Settlement Agreement (a) is the result of arm's-length negotiations involving experienced counsel, with the assistance of [the] mediator . . .; (b) is sufficient to warrant notice of the Settlement and the Final Approval Hearing to the Settlement Class; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ('CAFA'), 28 U.S.C. § 1715; and (d) is not a finding or admission of liability by Gaia." (Dkt. 76 at 2.)

In addition, the Court concluded that it likely would certify the Settlement Class after finding that the conditions of Rule 23(a) and (b)(3) are satisfied. (*Id.* at 3.) The Court also appointed Plaintiff as Class Representative and Rachel Geman of Lieff Cabraser Heimann & Bernstein, LLP; Christopher Cormier of Burns Charest LLP; and Shawn Kennedy of Herrera Kennedy LLP as Class Counsel. (*Id.* at 4.)

### III. SUMMARY OF SETTLEMENT

#### A. Class Definition

The proposed Settlement Class consists of:

> All individuals residing in the United States who, during the Class Period [September 12, 2020 to the date of Preliminary Approval], subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites [gaia.com and yogainternational.com] while they had a Facebook account.

(Dkt. 75-2, p. 16, ¶ 1.33 (Settlement).)

#### B. Monetary Relief

Gaia has agreed to pay $2,000,000 into a non-reversionary Settlement Fund for the benefit of Class Members. (*Id.,* pp. 16, 18, ¶¶ 1.33 & 2.1.1.) Class Members who submit valid claims will receive a claims-made *pro rata* payment after the deduction of settlement-related costs, including the expenses of the settlement administrator and the costs of notice to the Class, and Court-awarded attorneys' fees, expense reimbursements, and named plaintiff service award. (*Id.,* pp. 12, 19, ¶¶ 1.18, 2.1.2–2.1.3.)

#### C. Business Practice Changes

Gaia also has agreed to implement meaningful business practice changes designed to remediate the alleged VPPA violations going forward. Within 45 days of preliminary approval of the Settlement, Gaia will suspend operation of the Pixel on any web pages that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims; (b) repealed; or (c) invalidated by a decision on the use of website pixel technology by the United States Supreme Court or the Tenth Circuit Court

of Appeals. (*Id.*, p. 20, ¶ 2.2.) This provision does not prevent Gaia from obtaining VPPA-compliant consent in the future should it wish to reinstitute use of the Pixel. (*Id.*)

### D. Attorneys' Fees, Litigation Costs, and Service Award

The Settlement Agreement provides that Class Counsel may seek an award of reasonable attorneys' fees and reimbursement of their litigation costs from the Gross Settlement Fund, in an aggregate amount not to exceed one-third thereof. (*Id.*, pp. 11–12, 33–34 ¶¶ 1.15, 8.1.) The Settlement Agreement also provides that Class Counsel may seek a service award for the Class Representative in an amount not to exceed $2,000. (*Id.*, p. 34 ¶ 8.3.) In accord with these provisions, Class Counsel is seeking (i) attorneys' fees of $623,963.04 and litigation costs of $42,703.62, totaling $666,666.66, or one-third of the Gross Settlement Fund; and (ii) a $2,000 service award for the Class Representative.

## IV. THE REQUESTED FEE AWARD IS REASONABLE AND APPROPRIATE

Rule 23 provides that a "court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). In accord with Rule 23, the Supreme Court has held that where a party maintains a suit that results in the creation of a fund for the benefit of a class, the costs of the litigation, including an award of reasonable attorneys' fees, should be recovered from the fund created by the litigation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970). The "common-fund" doctrine allows counsel to draw a reasonable fee as a percentage of the fund created by a settlement for the benefit of the class. *Boeing*, 444 U.S. at 478.

In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). In preferring this method, courts in the Tenth Circuit have "long recognized that class counsel and the class should have aligned interests in this type of matter, such that counsel are both compensated for risk and rewarded for success, where, as here, the Class receives significant benefit." *See Cook v. Rockwell Int'l Corp.*, 2017 WL 5076498, at *1 (D. Colo. Apr. 28, 2017).

To determine a reasonable fee award percentage, the Court considers the *Johnson* factors: (1) The time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485, at *5 (D. Colo. May 21, 2019) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1979)). Because "rarely are all of the *Johnson* factors

applicable," "a court need not specifically address each *Johnson* factor."[2] *In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *2 (D. Colo. Sept. 18, 2014). The *Johnson* factors supports the fee request here.

**Time and Labor Expended by Plaintiffs' Counsel.** Class Counsel's declarations detail the substantial efforts of Class Counsel in prosecuting Plaintiff's claims. In brief, Class Counsel vigorously litigated this case by performing such tasks as: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed and well-pled complaint; (ii) opposing Gaia's motion to dismiss; (iii) pursuing formal discovery from Gaia; (iv) pursuing third-party discovery from Meta; (v) gathering Plaintiff's documents and relevant information; (vi) preparing a detailed mediation statement; (vii) requesting and analyzing relevant informal discovery obtained during mediation; (viii) participating in mediation and extensive subsequent settlement discussions; and (ix) achieving a favorable Settlement on behalf of the Settlement Class. *See* Dkt. 75-2, pp. 65, 67–68, ¶¶ 9–11, 21 (Joint Decl. re Preliminary Approval); Appendix of Evidence in Support of Motion for Final Approval filed concurrently herewith ("Appx."), p. 11, ¶¶ 24–25 (Joint Declaration of Class Counsel in Support of Motion for Final Approval ("Joint Decl. re Final Approval")). Class Counsel's efforts demonstrate that they vigorously and zealously represented the Class at every turn.

Collectively, based on their audited time records, Class Counsel have devoted 1,296 hours to the prosecution of this action. (Appx., p. 18, ¶¶ 49–50 (Joint Decl. re Final

---

[2] Two *Johnson* factors—the time limitations imposed by the client or the circumstances, and the nature and length of the professional relationship with the client—are not relevant in this privacy class action and therefore are not addressed herein.

Approval).) In addition, Class Counsel will devote further time and effort appearing at the final approval hearing, responding to inquiries from Settlement Class Members going forward, addressing any objections that could arise and monitoring the distribution of settlement payments by the Settlement Administrator until the fund is expended and closed. The substantial time and effort devoted to this case, taken with the risk of no recovery to counsel whatsoever, support the requested award in this case, and demonstrate that the requested fee has been well earned.

**Novelty and Difficulty of Questions Raised by the Litigation.** The novelty and difficulty of questions raised by the litigation also weigh in favor of the requested fee. The VPPA claims in this action involve complicated issues concerning Gaia's business and practices related to its use of the Meta Pixel code and consumers' privacy rights. Class Counsel was required to develop an understanding of Gaia's use of Pixel technology, its video content, class size, class damages, and more.

Before the Settlement was reached here, Gaia asserted multiple credible defenses to the merits of Plaintiff's claims, each of which presented grave risks and easily could have resulted in either a substantially lower or no recovery at all. Gaia asserted in its motion to dismiss that Plaintiff lacks standing to pursue a claim under the VPPA because he did not suffer a concrete injury under binding Supreme Court precedent. (Dkt. 20 (Motion to Dismiss) at 5–7.) Gaia also argued that (1) Gaia did not disclose any of its subscribers' personally identifiable information (PII) through its use of the Pixel; (2) Facebook IDs do not constitute PII under the VPPA; and (3) Gaia did not knowingly disclose PII to Facebook. (*Id.* at 7–15.)

Plaintiff anticipates that Gaia would continue to defend its position should the case be litigated further. Moreover, claims applying the VPPA to operation of the Pixel are still relatively novel in that no plaintiff in any other Pixel-based VPPA case has achieved class certification or defeated summary judgment, let alone gotten to trial. Accordingly, the novelty and difficulty of questions raised in this litigation support the conclusion that the requested fee is fair and reasonable. *Accord In re NU Skin Enter., Inc.*, 2016 WL 6916486, at *2 (D. Utah Oct. 13, 2016) (noting the risks presented by "Defendants' defenses concerning the falsity of their statements, scienter, loss causation, and damages" weighed in favor of fee award).

**The Amount Involved and Results Obtained.** The Settlement yields significant and valuable benefits for the Settlement Class. *First*, the Settlement establishes a non-reversionary common fund of $2,000,000 to pay all valid claims, the cost of settlement administration, and attorneys' fees and costs. *Second*, the Settlement provides for meaningful injunctive relief in the form of business practice changes designed to remediate the alleged VPPA violations going forward. Indeed, per the Settlement's terms, Gaia has already suspended operation of the Pixel on each page of its website that both includes video content and has a URL that identifies the video content viewed. (Appx., p. 10, ¶ 22 (Joint Decl. re Final Approval).) This fulsome injunctive relief adds substantial value to the Settlement. *See, e.g., O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at *18 (D. Colo. Sept. 9, 2019) (results obtained in securing prospective injunctive relief supported class counsel's requested fee award: "the injunctive relief provides a substantial non-monetary benefit to the Settlement Class Members").

**The Customary Nature of the Requested Fee Award**. A fee of "approximately one-third of the economic benefit bestowed on the class" is the "customary fee to class counsel in a common fund settlement" in the Tenth Circuit. *Aragon v. Clear Water Prod. LLC*, 2018 WL 6620724, at *5 (D. Colo. Dec. 18, 2018) (cleaned up; quotation omitted) (fee award between 32% and 33% of total settlement was "in line with the customary fees and awards in similar cases"); *see also Diaz*, 2019 WL 2189485, at *5 ("33% fee award falls within the norm"); *Elston v. Horizon Glob. Americas, Inc.*, 2020 WL 6318660, at *7 (D. Kan. Oct. 28, 2020) (finding that a fee award of 38.6% of the common fund was reasonable, as it was "within the range of around one-third of the settlement fund").

Further, the fee requested here is in accord with awards in other class action cases involving VPPA claims. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 940 (N.D. Ill. 2022) (awarding one-third of $87,843.787.95 (the net common fund), *i.e.* $29,279,203.44, in attorneys' fees in case involving VPPA claim); *In re Netflix Priv. Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *9 (N.D. Cal. Mar. 18, 2013) (awarding attorneys' fees of $2.250 million, plus the $25,000 in costs and expenses in case involving VPPA claims); *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502-AK (D. Mass.) (Dkt. 76) (awarding attorneys' fees and costs equal to one-third of common fund in VPPA class action). This factor therefore weighs in favor of the requested fee.

**A Lodestar Check Supports the Requested Fee**. Although not required in the Tenth Circuit, a lodestar "cross-check" also wholly supports the fee request. Class Counsel's lodestar in this action is $1,122,322.50, which is based on 1,296 audited hours of attorney and professional staff time. (Appx., p. 18, ¶¶ 49–50 (Joint Decl. re Final

Approval).) The rates of the attorneys are fully supported by the skill and experience of Class Counsel and are within the market rate for their services. (*Id.*, pp. 19–25, ¶¶ 56–57, 61–62, 66–67); *see also Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-CV-10090-WGY, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023).

Based on time billed through August 2024 (*i.e.*, not including time spent on this motion), Plaintiffs' Counsel's total lodestar is $1,122,322.50, and the requested $621,796.27 fee equates to a negative multiplier of 0.556. (Appx., pp. 18–19, ¶¶ 49–50, 54 (Joint Decl. re Final Approval).) This amount is well below the typical range of multipliers routinely approved by courts in this District. *See, e.g., Crocs*, 2014 WL 4670886, at *4 (referencing District cases approving multipliers from 2.5 to 4.6).

**Contingent Nature of the Fee, Undesirability of the Action, and Preclusion of Other Employment.** Class counsel undertook representation on a contingency basis without any pre-arranged fee other than an understanding that the attorneys' fee would be contingent on the outcome and approval by the Court. (Appx., p. 16, ¶ 44 (Joint Decl. re Final Approval).) Courts have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See Shaw*, 2015 WL 1867861, at *8. Indeed, this case could only have been litigated on a contingent basis because the class members were individual consumers who would lack the means to pay to prosecute this action on their own. It required a significant time commitment over a considerable duration, as well as a willingness to front over $42,000 for expert witness and consultant fees, mediation

fees, technology vendor fees, and other commonly incurred costs. These were significant commitments considering the substantial risk of failing to obtain any recovery from Gaia.

Moreover, the fact that *no law firms* other than Class Counsel pursued a VPPA action against Gaia underscores the perceived "undesirability" and difficulty of the case. Courts have "recognize[d] that counsel should be rewarded for taking on a case from which other law firms shrunk . . . ." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011); *see also Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *10–11 (S.D. Fla. Oct. 17, 2016) (undesirability shown where "Counsel was the only counsel willing to take on this litigation").

Class Counsel spent significant hours on this case on a contingent fee basis, devoting over 1,296 hours of attorney time. (Appx., p. 18, ¶¶ 49–50 (Joint Decl. re Final Approval).) The hours Class Counsel spent on this matter effectively precluded other work, and thus weigh in favor of the requested fee award. *See Whittington v. Taco Bell of America, Inc.*, 2013 WL 6022972 at *6 (D. Colo. Nov. 13, 2013) (attorneys handling a class action "are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case").

**Skill Required to Perform the Legal Service Properly and the Experience, Reputation, and Ability of the Attorneys.** The prosecution and management of a complex class action requires unique legal skills and abilities, as do claims applying the VPPA to operation of the Pixel. Class Counsel are experienced and skilled class action litigators with a demonstrated record of success in consumer protection and privacy class

actions. (*See* Dkt. 75-2, pp. 70–79, ¶¶ 30–53 (Joint Decl. re Preliminary Approval).) Counsel's willingness and ability to undertake complex and difficult cases such as this added valuable experience to this litigation, as well as leverage in the settlement negotiations.

The quality of Class Counsel's work in attaining the Settlement should also be evaluated in light of the quality of the opposition. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (Defendants' attorneys consistently "put plaintiffs' counsel through the paces" and "demonstrated considerable skill"). Here, Gaia has been represented by experienced lawyers from Foley & Lardner LLP, a prominent defense firm with 1,100 attorneys across 26 offices worldwide. *See* https://foley.com. Faced with this formidable opposition, Class Counsel developed a strong case and negotiated highly favorable settlement terms. Accordingly, this factor further supports the fee request. *See Crocs*, 2014 WL 4670886, at *3 (finding fact that "Defendants' counsel is equally skilled" favored approval of fee award).

## V.     CLASS COUNSEL'S LITIGATION EXPENSES ARE JUSTIFIED

"Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Aragon v. Clear Water Prod. LLC*, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018) (quotation omitted). Here, Class Counsel reasonably incurred $42,703.62 in out-of-pocket costs during the prosecution and settlement of this action, including for mediation, filing fees, experts and consultants, and computer research. (Appx., p. 25, ¶ 70 (Joint Decl. re Final Approval).) Reimbursement of these costs is appropriate. *See Aragon*, 2018 WL 6620724, at *7

(concluding that "expert witness fees, filing fees, service fees, travel and mileage" are "the type of costs normally billed to clients"); see also *Crocs*, 2014 WL 4670886, at *5 (finding fees for computer research, investigation, and experts/consultants to be "of the type normally billed to clients").

## VI. THE REQUESTED SERVICE AWARD IS REASONABLE

In the Tenth Circuit, courts "regularly give incentive awards to compensate plaintiffs for the work they perform[]—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). Class Counsel request that Plaintiff be awarded a $2,000 Service Award for his efforts in this case.

Plaintiff has been actively engaged in this case from the outset; he has been in regular contact and fully cooperated with Class Counsel's various requests and significantly has aided the prosecution of this action for the Settlement Class's benefit. (*See* Dkt. 75-2, p. 68, ¶ 22 (Joint Decl. re Preliminary Approval).) A service award of $2,000 to Plaintiff is fair and reasonable and well within the range of awards that this District has approved. *See, e.g., Luken Family Ltd. P'ship, LLP*, 2010 WL 5387559, at *8 (awarding $10,000 service award); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1010 (D. Colo. May 19, 2014) (awarding $15,000 service award).

## VII. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant this motion and (i) award attorneys' fees and litigation costs of $666,666.66, or one-third of the Gross Settlement Fund, to Class Counsel; and (ii) award a service award of $2,000 to Plaintiff.

Dated: October 2, 2024

/s/ *Shawn Kennedy*
Shawn M. Kennedy
HERRERA KENNEDY LLP
5900 S. Lake Forest Dr., Suite 300
McKinney, TX 75070
Telephone: (949) 936-0900
Email: skennedy@herrerakennedy.com

Nicomedes Sy Herrera
HERRERA KENNEDY LLP
5072 Annunciation Circle, Ste. 207
Ave Maria, FL 34142
Telephone: (510) 422-4700
Email: nherrera@herrerakennedy.com


/s/ *Christopher J. Cormier*
Christopher J. Cormier
BURNS CHAREST LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 577-3977
Email: ccormier@burnscharest.com

Hannah M. Crowe
BURNS CHAREST LLP
900 Jackson Street, Ste. 500
Dallas, TX 75202
Telephone: (469) 904-4550
Email: hcrowe@burnscharest.com

Respectfully submitted,

/s/ *Rachel Geman*
Rachel Geman
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Email: rgeman@lchb.com

Michael K. Sheen
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: msheen@lchb.com




*Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I, Shawn M. Kennedy, hereby certify that a copy of this Plaintiff's Motion for Award of Attorneys' Fees, Litigation Costs & Service Award and Memorandum In Support Thereof was sent to counsel of record via the federal court's e-filing system.

Dated: October 2, 2024


/s/   Shawn Kennedy
Shawn M. Kennedy

HERRERA KENNEDY LLP
5900 S. Lake Forest Dr., Suite 300
McKinney, TX 75070
Telephone: (949) 936-0900
Email: skennedy@herrerakennedy.com