# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| CHRISTOPHER GUIDA, *on behalf of himself and all others similarly situated*,<br><br>    Plaintiffs,<br><br>v.<br><br>GAIA, INC.,<br><br>    Defendant. | Case No. 1:22-cv-02350-GPG-MEH<br><br><br>Hon. Gordon P. Gallagher |

## PLAINTIFF'S APPENDIX OF EVIDENCE IN SUPPORT OF: (1) UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS & SERVICE AWARD

Plaintiff Christopher Guida respectfully submits the following Appendix of Evidence in support of his (1) Unopposed Motion for Final Approval of Class Action Settlement and (2) Motion for Award of Attorneys' Fees, Litigation Costs & Service Award:

| APPENDIX EXHIBIT | BEGINNING PAGE NUMBER | DESCRIPTION |
|---|---|---|
| 1 | 4 | Joint Declaration of Class Counsel in Support of Plaintiff's (1) Unopposed Motion for Final Approval of Class Action Settlement; and (2) Motion for Award of Attorneys' Fees, Litigation Costs & Service Award |
| 1.A | 28 | Summary Lodestar Chart for Burns Charest LLP |

| | | |
|---|---|---|
| 1.B | 31 | Summary Lodestar Chart for Lieff Cabraser Heimann & Bernstein, LLP |
| 1.C | 34 | Summary Lodestar Chart for Herrera Kennedy LLP |
| 2 | 38 | Declaration of Baro Lee Re: Notice and Administration |

# APPENDIX EXHIBIT 1

**Joint Declaration of Class Counsel in Support of Plaintiff's (1) Unopposed Motion for Final Approval of Class Action Settlement; and (2) Motion for Award of Attorneys' Fees, Litigation Costs & Service Award Agreement**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| CHRISTOPHER GUIDA, *on behalf of himself and all others similarly situated*, | Case No. 1:22-cv-02350-GPG-MEH |
| Plaintiffs, | |
| v. | Hon. Gordon P. Gallagher |
| GAIA, INC., | |
| Defendant. | |

## JOINT DECLARATION OF CLASS COUNSEL IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS & SERVICE AWARD

We, Rachel Geman, Christopher Cormier, and Shawn Kennedy jointly declare and state as follows:

1. Rachel Geman is an attorney duly licensed to practice law in the State of New York who is admitted to practice before this Court. Ms. Geman is a partner at the law firm Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") and also serves as co-counsel of record for Plaintiff in the Action.

2. Christopher Cormier is an attorney duly licensed to practice law in Washington, D.C. and the State of Colorado who is admitted to practice before this Court. Mr. Cormier is a partner at the law firm Burns Charest LLP ("BC") and serves as co-counsel of record for Plaintiff in the above-captioned case (the "Action").

3. Shawn Kennedy is an attorney duly licensed to practice law in the States of Texas and California who is admitted to practice before this Court. Mr. Kennedy is a

partner at Herrera Kennedy LLP ("HK") and also serves as co-counsel of record for Plaintiff in the Action.

4.      Throughout this litigation, we and our respective law firms have been responsible for the prosecution of Plaintiff's claims on behalf himself and of the Settlement Class. We make this Joint Declaration in support of Plaintiff's (i) Motion for Final Approval of Class Action Settlement; and (ii) Motion for Award of Attorneys' Fees, Litigation Costs & Service Award. Except where otherwise stated, we each have personal knowledge of the facts set forth in this Joint Declaration based on active participation in all aspects of the prosecution and resolution of the Action. If called upon to testify, we each could and would testify competently to the truth of the matters stated herein.

### Overview of the Litigation and Settlement

5.      Plaintiff filed this case on behalf of himself and other subscribers of defendant Gaia, Inc. ("Gaia") on September 12, 2022, alleging one claim for violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). (Dkt. 1.) On November 9, 2022, Gaia moved to dismiss the class action complaint under Rules 12(b)(1) and 12(b)(6) arguing, *inter alia*, that Plaintiff lacked standing and the complaint failed to state a claim upon which relief could be granted. (Dkt. 20.) Plaintiff filed an opposition to Gaia's motion to dismiss on December 9, 2022. (Dkt. 24.) Gaia filed a reply in support of its motion on December 21, 2022. (Dkt. 25.)

6.      On August 19, 2023, the Court granted the parties' joint request to stay the litigation for the purpose of engaging in formal mediation. (Dkts. 49–50.) The Court also ruled the motion to dismiss moot. (Dkt. 51.) The Court subsequently extended the stay

multiple times at the parties' request. (Dkts. 52–57.) On March 1, 2024, the Court granted the parties' joint request to lift the stay and modify the Scheduling Order. (Dkts. 60–61.) On March 8, 2024, Gaia re-filed its motion to dismiss. (Dkt. 62.) Plaintiff re-filed his opposition on March 11, 2024 (Dkt. 63), and Gaia re-filed its reply on March 13, 2024. (Dkt. 66.)

7.     As Plaintiff alleged in the Complaint, Gaia, a subscription-based digital video streaming service, intentionally installed the Facebook Pixel ("Pixel") on its websites, gaia.com and yogainternational.com (together, the "Websites"), and selected the specific categories of information the Pixel would capture and transmit. (Dkt. 1 (Complaint) ¶¶ 2, 5-8, 53–56.) Gaia also knowingly configured the Pixel such that when a subscriber accesses a particular video on its website, Gaia sends to third party Meta Platforms, Inc. ("Meta") the subscriber's personally identifiable information ("PII"), including (a) the title and URL of the video, and (b) the subscriber's Facebook ID (or "FID"). (*Id.* ¶¶ 29–30, 38, 49–56, 60, 95.)

8.     Early in the case, including while Gaia's motion to dismiss was pending and the parties conducted discovery, the parties engaged in direct communications and, as part of their obligations under Rule 26, discussed the prospect of resolution. Those discussions led to an agreement between the parties to engage in mediation, which they agreed would take place before The Honorable Suzanne H. Segal, a former United States Magistrate Judge for the United States District Court for the Central District of California and a neutral at Signature Resolution who has substantial experience mediating various types of complex litigation, including privacy cases and class actions. The mediation took

place on November 29, 2023. While the parties engaged in good-faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day.

9.     Over the following weeks and months, the parties engaged in additional rounds of arm's length negotiations facilitated by Judge Segal. These negotiations included both direct discussions between counsel for both parties and mediated communications through Judge Segal.

10.     During the mediation, the parties exchanged mediation statements and follow-up correspondence, and informally shared additional relevant information regarding, among other topics, the strengths and weaknesses of Plaintiffs' claims and Gaia's defenses, arguably similar digital privacy class settlements approved by other courts, Gaia's data bearing on the merits of Plaintiff's claims and the size and nature of the proposed class, including via direct communications between counsel in the presence of the mediator. Gaia ultimately estimated that approximately 478,000 Gaia subscribers accessed prerecorded videos on Gaia's websites during the relevant time period, although not every one of those subscribers necessarily is a Settlement Class Member (for example, some may not have had a Facebook account). Even so, the proposed Settlement Class likely numbers in the hundreds of thousands.

11.     On May 31, 2024, Judge Segal made a double-blind mediator's proposal for monetary relief covering a full, class-wide settlement of the Action. On June 5, 2024, Judge Segal informed the parties that they had both agreed to her proposal.

12.     On June 25, 2024, the parties executed a term sheet covering material terms and proceeded to negotiate and draft a long form settlement agreement.

13.     On July 3, 2024, the parties executed the Settlement.

14.     On July 8, 2024, Plaintiff filed an Unopposed Motion for Preliminary Approval of the Settlement (Dkt. 75) along with a supporting Appendix (Dkt. 75-2). On July 19, 2024, the Court granted preliminary approval of the Settlement (Dkt. 76 ("PAO")).

15.     Following entry of the Court's PAO, the Settlement Administrator, Angeion Group, LLC ("Angeion"), began implementation of the court-approved Notice Plan, and Class Counsel has worked with Angeion to effectuate the court-ordered Notice Plan and address any issues that may arise.

16.     On July 18, 2024, Angeion disseminated CAFA Notice mailings ("CAFA Notice") pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715. (Appendix of Evidence in Support of Plaintiff's (1) Motion for Final Approval; and (2) Motion for Award of Attorneys' Fees, Litigation Costs & Service Award, filed concurrently herewith ("Appx."), ¶ 6 (Declaration of Baro Lee Re: Notice and Administration ("Lee Decl.")).) Thereafter, on September 9, 2024, Angeion sent 649,276 email notices to identified potential Settlement Class Members for whom a valid email address was available, established a dedicated website for the Settlement with the URL www.GaiaVPPASettlement.com (the "Settlement Website"), and established a toll-free telephone number (1-844-279-5979) for the Settlement. (*See id.*, ¶¶ 10, 14, 17.)

17.     On September 18, 2024, Angeion discovered that the initial email notices had an unusually high volume of soft bounces: of the 649,276 email notices sent, 151,129 were delivered and 498,147 bounced back as undeliverable. (*Id.*, ¶ 12.) Angeion informed counsel, identified the likely cause (the timing of this email dissemination with another

high-volume email project), and re-noticed the soft bounces with supplemental email notices. (*Id.*)

18.     Through Angeion's initial and supplemental email notice efforts, individual notice has reached approximately 96.06% of the identified potential Settlement Class Members. (*Id.*, ¶ 13.)

19.     The content of the court-approved notices provided Settlement Class Members a detailed summary of the relevant information about the Settlement, including, among other things: (1) a plain and concise description of the nature of the Action and the proposed Settlement; (2) the right of Settlement Class Members to request exclusion from, or object to, the Settlement and the deadline for doing so; (3) the process for submitting a claim form and the deadline for doing so; (4) specifics on the date, time and place of the Final Fairness Hearing; and (5) information regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representative's service award. (*See id.*, ¶ 10 & Ex. B.)

20.     Class Counsel will provide an update on implementation of the notice plan and the claims process, report on any requests for exclusion, and respond to any substantive objections by November 25, 2024, and provide a proposed order prior to the Final Approval Hearing on December 9, 2024.

21.     The court-approved Notice Plan also permits Angeion, at the election of Class Counsel, to send one to two reminder notices via email to Settlement Class Members at least seven calendar days before the end of the claims submission period. (Dkt. 75-2, p. 22 ¶ 4.1.3 (Settlement).) Class Counsel anticipates that at least one

reminder email notice will be sent to provide a second chance to potential Settlement Class Members who (i) read the initial email notice but forgot or failed to submit a claim due to the hectic ongoings of life, or (ii) for whatever reason did not open, view, or receive the initial email notice.

### Factors Supporting Final Approval

22.     The Settlement provides for both monetary and injunctive relief for the benefit of the Settlement Class. As for the monetary relief, the Settlement provides for a cash common fund in the amount of $2,000,000 for the benefit of the Settlement Class. As for the injunctive relief, the Settlement provides for important business practice changes designed to remediate the alleged VPPA violations going forward: namely, the Settlement requires Gaia to suspend operation of the Pixel on each page of its website that both includes video content and has a URL that identifies the video content viewed. The injunctive relief shall remain in place unless and until the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a decision on the use of website pixel technology by the United States Supreme Court or the Tenth Circuit Court of Appeals. Thus, the benefits achieved through the Settlement are substantial and extend well beyond the dollar figure representing the common fund.

23.     The Parties agreed to the terms of the Settlement after protracted, arms-length negotiations conducted under an experienced mediator's supervision by experienced counsel who vigorously represented their clients' interests and possessed all the information necessary to properly evaluate the case, determine the contours of the proposed class, and reach a fair and reasonable compromise.

24.     Class Counsel have invested significant time and resources into this action. Class Counsel performed such tasks as: (i) conducting a thorough pre-suit investigation into the relevant facts and law that resulted in the preparation of a detailed, well-pled complaint; (ii) opposing Gaia's motion to dismiss; (iii) pursuing and reviewing formal discovery from Gaia; (iv) pursuing third-party discovery from Meta; (v) gathering and storing Plaintiff's relevant documents and electronically stored information; (vi) preparing a detailed mediation statement; (vii) requesting and analyzing relevant informal discovery during mediation; (viii) participating in a full-day mediation and extensive subsequent settlement discussions; (ix) achieving a favorable Settlement on behalf of the Settlement Class; and (x) negotiating and executing a comprehensive set of settlement papers.

25.     After the Court issued the PAO, Class Counsel negotiated with Gaia's counsel regarding changes that Gaia wanted to make to the notice materials. Class Counsel agreed to certain non-material changes, but opposed other changes which they concluded were likely to make the notice materials less clear for Settlement Class Members. (*See* Dkt. 79.) The Court agreed with Class Counsel's position and denied Gaia's request to include the disputed changes in the notice materials. (*See* Dkt. 81.)

26.     From the outset of the case, Plaintiff and Class Counsel recognized that the case presented substantial and novel litigation risks. For example, in its motion to dismiss, Gaia asserted that Plaintiff lacked standing to pursue a claim under the VPPA because he did not suffer a concrete injury under binding Supreme Court precedent. (Dkt. 20 at 5–7.) Gaia also argued that (1) Gaia did not disclose any of its subscribers' personally identifiable information (PII) through its use of the Pixel; (2) Facebook IDs do not

8

constitute PII under the VPPA; and (3) Gaia did not knowingly disclose PII to Facebook. (*Id.* at 7–15.) An adverse decision or finding on any of these contentions at any point in the litigation would deprive Plaintiff and the Settlement Class of any recovery whatsoever.

27. Additionally, other Facebook Tracking Pixel-based VPPA cases have failed at the motion to dismiss stage. *See, e.g., Gardener v. MeTV*, 2023 WL 4365901, at *5 (N.D. Ill. July 6, 2023) (granting the motion to dismiss and "find[ing] dispositive MeTV's argument that Plaintiffs are not consumers under the Act"); *Carter v. Scripps Networks, LLC*, 2023 WL 3061858, at *6 (S.D.N.Y. Apr. 24, 2023) (granting motion to dismiss because "[t]he Complaint describes plaintiffs as subscribers of hgtv.com newsletters, but does not plausibly allege that they were subscribers of hgtv.com video services"); *Martin v. Meredith Corp.*, 2023 WL 2118074, at *3 (S.D.N.Y. Feb. 17, 2023) ("The plaintiff's VPPA claim is dismissed because the complaint itself shows that the defendants do not disclose information showing that a person has 'requested or obtained specific video materials or services.'"); *Hunthausen v. Spine Media, LLC*, 2023 WL 4307163, at *3 (S.D. Cal. June 21, 2023) (granting motion to dismiss because "[r]enting, purchasing or subscribing for goods or services from a third party connected to a [video tape service provider] is insufficient to make someone a 'consumer' under the VPPA"); *Cantu v. Tapestry, Inc.*, 2023 WL 4440662, at *10 (S.D. Cal. July 10, 2023) ("[T]he Court finds Plaintiff has failed to state a claim on the basis that he has not properly alleged that Defendant is a 'video tape service provider.'"); *Carroll v. General Mills, Inc.*, 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023) (granting motion to dismiss because "[p]laintiffs do not allege any facts suggesting that the delivery of audiovisual material is General

9

Mills' particular field of endeavor or that General Mills' products are specifically tailored to serve audiovisual material").

28.     Plaintiff and Class Counsel are unaware of any decision that has been issued by the Tenth Circuit Court of Appeals or the District of Colorado in a Pixel-based VPPA case related to any of the VPPA-based arguments Gaia raised in support of its motion to dismiss.

29.     Notably, similar Pixel and VPPA cases have failed at the class certification and summary judgment stages of the litigation. *See, e.g., Doe v. Medstar Health, Inc.*, 23-C-20-000591, Dkt. Nos. 70-71, at p. 1 (Md. Cir. Ct. 2023) (denying a motion for class certification in Pixel case); *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (denying a motion for summary judgment in VPPA Facebook cookie case because "there [was] no evidence that Hulu knew that Facebook might combine a Facebook user's identity (contained in the c_user cookie) with the watch-page address"). Plaintiff and Class Counsel are unaware of any court decision granting class certification or denying a defendant's motion for summary judgment in a Pixel-based VPPA case.

30.     Gaia also is represented by highly experienced attorneys who made clear that absent a settlement, they were prepared to continue their vigorous defense of this case and would continue to challenge liability.

31.     Class Counsel are also aware that Gaia would oppose class certification vigorously, and that Gaia would prepare a competent defense at trial. Looking beyond trial, Plaintiff is aware that Gaia could appeal the merits of any adverse decision, and that in light of the statutory damages in play, Gaia would argue—in both the trial and appellate

courts—that the award of any statutory damages would not be warranted or for a reduction of damages based on due process concerns, resulting in additional delay, added costs, and a potentially overturned verdict.

32.     While confident in Plaintiff's claims, Class Counsel acknowledges that obtaining a post-trial recovery larger than that obtained through settlement would be uncertain at best. For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id.*

33.     The injunctive relief obtained through the Settlement is the same injunctive relief that Plaintiff would have achieved after a successful trial.

34.     Plaintiff and Class Counsel believe that the monetary and injunctive relief provided by the Settlement weighs heavily in favor of finding that the Settlement is fair, reasonable, and adequate, and well within the range of final approval.

35.     Since the Court entered its PAO, Class Counsel has worked with Angeion to carry out the Court-approved Notice Plan. As detailed in the Lee Declaration, notice has reached approximately 96.06% of the Settlement Class. (Appx., ¶ 13.) A 96.06% notice reach is an excellent, and certainly reasonable, result. *See In re Packaged Seafood Prod. Antitrust Litig.*, 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) ("The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable.") (citing *Chinitz*, 2020 WL 7042871, at *2, 2020 U.S. Dist. LEXIS 224999, at

*5 and Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010)).

36.     The current deadline to object to the Settlement is October 24, 2024. To date, neither Angeion nor Class Counsel have received an objection to the Settlement. *See* Lee Decl. at ¶ 19.

37.     The current deadline to opt-out of the Settlement is also October 24, 2024. To date, there have been no requests for exclusion from the Settlement. *Id*.

38.     As noted above, Class Counsel will provide an update on implementation of the notice plan and the claims process, report on any requests for exclusion, and respond to any substantive objections by November 25, 2024, and provide a proposed order prior to the Final Approval Hearing on December 9, 2024.

39.     Class Counsel have significant experience in litigating class actions of similar size, scope, and complexity to the instant action. Class Counsel regularly engage in major complex litigation involving consumer privacy, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (*See* Dkt. 75-2, pp. 70–79, ¶¶ 30–53 (Joint Decl. re Preliminary Approval).)

40.     Based on Class Counsel's experience litigating similar class actions, Class Counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

41.     As discussed above and throughout Plaintiff's Motion for Final Approval of Class Action Settlement, the Settlement reached in this case was the product of

negotiations conducted at arms' length by experienced counsel representing adversarial parties with the assistance of a neutral mediator. Thus, there is absolutely no evidence of fraud or collusion.

42.    Further, there are no separate agreements to be identified pursuant to Federal Rule of Civil Procedure 23(e)(3).

43.    Class Counsel believe that Plaintiff's active involvement in this case was critical to its ultimate resolution. He took his role as class representative seriously, devoting significant amounts of time and effort in regularly communicating and fully cooperating with Class Counsel to adequately protect the interests of the Class. Without his willingness to assume the risks and responsibilities of serving as Class Representative, we do not believe such a favorable result could have been achieved.

<u>**Factors Supporting an Award of Attorneys' Fees,**</u>
<u>**Litigation Costs, and Service Award**</u>

44.    Despite the numerous significant risks involved in pursing this litigation (*see supra*), Class Counsel undertook this matter on a contingency basis with no guarantee of recovery and have committed substantial resources of attorney and staff time, in addition to out-of-pocket costs, towards investigating, litigating, and settling the matter. In doing so, Class Counsel also assumed the risk of the significant delay associated with achieving a final resolution through trial or any appeals.

45.    The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to properly evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the

assistance of a neutral mediator. As noted above, Class Counsel have significant experience in litigating class actions of similar size, scope, and complexity to the instant action.

46.     Gaia has presented a vigorous defense throughout the litigation and has been represented by highly experienced lawyers from Foley & Lardner LLP, a prominent law firm with more than 1,100 attorneys across 26 offices. *See* https://foley.com. Notwithstanding this formidable opposition, Class Counsel vigorously pursued and pressed Plaintiff's claims at every turn and ultimately negotiated a favorable settlement that brings substantial relief to Settlement Class Members. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation.").

47.     Plaintiff and Class Counsel recognize that despite their belief in the strength of Plaintiff's claims, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain. Indeed, as identified above, the arguments raised by Gaia in its motion to dismiss, the uncertainties associated with sufficiently pleading the VPPA claim, achieving and maintaining class certification, surviving summary judgment, and prevailing at trial and on appeal posed very real and sustained risks to the successful class-wide resolution of this litigation.

48.     Absent a settlement, the success of any of Gaia's various defenses would deprive Plaintiff and the Settlement Class Members of any potential relief whatsoever.

49.     Class Counsel have expended substantial time and effort in the litigation and settlement of this Action. Collectively, based on their audited time records, Class Counsel have devoted 1,296 hours, yielding a lodestar of $1,122,322.50.

50.     The following table summarizes Class Counsel's reasonable lodestar:

| Firm | Hours | Lodestar |
|---|---|---|
| LCHB | 496.2 | $360,193.50 |
| BC | 647.1 | $602,092.50 |
| HK | 152.7 | $160,036.50 |
| Total | 1,296 | $1,122,322.50 |

51.     At the outset of the case, Class Counsel agreed to follow a time and expense reporting protocol of the type they have successfully used in other class actions. This protocol provided clear instructions and guidelines governing the appropriate and uniform recording and reporting of time and costs reasonably incurred in connection with the efficient and effective prosecution of the claims of Plaintiff and the Class.

52.     In performing the audit of Class Counsel's time records and in the exercise of their discretion, Class Counsel excluded, *inter alia*, the following categories of time entries: (i) duplicative, unnecessary, or irrelevant time entries; (ii) time entered by timekeepers who recorded a *de minimis* amount of time; and (iii) time spent in connection with the preparation of Plaintiff's Motion for Final Approval and Motion for Award of Attorneys' Fees, Litigation Costs & Service Award. As a result, the lodestar forming the basis for Plaintiff's request for attorneys' fees does not include substantial past and future time committed to the litigation of this Action, including time to be spent obtaining final approval and overseeing implementation of the Settlement.

53.    Furthermore, over the course of litigation, Class Counsel took reasonable efforts to minimize inefficiency and to prevent the duplication of work. Particular tasks and areas of responsibility were assigned and allocated by and among Class Counsel to promote efficient and non-duplicative efforts and to ensure that appropriately skilled personnel performed each task. Class Counsel also routinely communicated with each other to monitor progress, provide necessary updates, and ensure that tasks were being performed in a timely and effective manner.

54.    Based on Class Counsel's lodestar to date in this action, the requested fee yields a negative multiplier of 0.556, which is well below the typical range of multipliers routinely approved by courts in this District. *See, e.g., In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *4 (D. Colo. Sept. 18, 2014) (referencing District cases approving multipliers from 2.5 to 4.6).

**BC's Reasonable Lodestar and Litigation Costs**.

55.    Only Mr. Cormier attests to the facts set forth in this Section.

56.    I have personal knowledge of the hourly rates charged by BC attorneys and support staff included in the exhibits to this declaration. The hourly rates for the attorneys and professional support staff in my firm are the usual and customary rates set by the firm for each individual. These hourly rates are the same as, or comparable to, the rates accepted by other courts in other class actions. *See, e.g., Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023). My firm's rates are set based on periodic analysis of rates charged by firms performing comparable work and that have been approved by courts in other class actions within this Circuit and nationwide. Different

timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

57.     Federal courts, including courts within this Circuit, have approved the hourly rates of BC attorneys and paralegals, including myself, in issuing fee and expense reimbursement awards. *See, e.g., Fiorentino v. FloSports, Inc.,* No. 1:22-cv-11502-AK (D. Mass. Mar. 5, 2024), Dkt. 69 at 16-17 and Dkt. 76 at ¶12 (awarding fees in amount requested in plaintiff's fee motion and supporting declaration that was based on the hourly rates of Class Counsel's lawyers and paralegals, including the same BC lawyers and staff involved in this case); *Cottle v. Plaid Inc.*, 2022 WL 2829882, at *11 (N.D. Cal. July 20, 2022) (finding the hourly rates of BC lawyers, including Mr. Cormier, "are reasonable and in line with prevailing rates in this community for similar services performed by attorneys of comparable skill and experience" and that "similar rates" to those of the firm's paralegals "have been awarded by courts in other class action litigation, including courts in this district"); *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, Case No. 6:20-MD-02977-RJS-CMR (E.D. Okla. Feb. 18, 2022), Dkts. 488-13 and 531 (approving BC lawyer and paralegal hourly rates in connection with class plaintiffs' attorneys' fee petition); *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.,* MDL No. 2785, 2021 WL 5369798, at *4-5 (D. Kan. Nov. 17, 2021) and Dkt. 2435-2 at ¶¶ 63-

65 (awarding requested attorney fees representing a specified multiplier of the hourly rates of the lawyers and paralegals of BC and other co-lead counsel in Pfizer settlement).

58.     Attached hereto as **Exhibit A** is a true and correct summary lodestar chart that reflects, for each BC timekeeper: (i) their title or position (*e.g.*, partner, associate, staff attorney, paralegal); (ii) the total number of hours they worked; (iii) their current hourly rate; and (iv) their lodestar. For attorneys or support staff who no longer work with BC, the current hourly rate is the rate for that individual in his or her final year of work with the firm.

59.     I am prepared to provide the Court with any further documentation or explanation regarding BC's lodestar, including detailed daily time records, upon request by the Court.

**LCHB's Reasonable Lodestar and Litigation Costs.**

60.     Only Ms. Geman attests to the facts set forth in this Section.

61.     I have personal knowledge of the hourly rates charged by LCHB attorneys and support staff included in the exhibits to this declaration. The hourly rates for the attorneys and professional support staff in my firm are the usual and customary rates set by the firm for each individual. These hourly rates are the same as, or comparable to, the rates accepted by courts in other class action litigation including courts in this Circuit. My firm's rates are set based on periodic analysis of rates charged by firms performing comparable work and that have been approved by courts in other class actions within this Circuit and nationwide. Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of

factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

62. LCHB's hourly rates have been accepted by courts in other contingent complex litigation and class actions, both for purposes of "crosschecking" a proposed fee based on the percentage method, as well as for determining fees primarily under the lodestar method. *See, e.g.*, *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, No. CV 16-03157 PSG (JEMX), 2024 WL 4267431, at *5 (C.D. Cal. Sept. 17, 2024) (finding reasonable LCHB's "partners with hourly rates in the range of $745 to $1,380, associates in the range of $345 to $720, and paralegals/research staff in the range of $345 to $535"); *Vela, et al. v. AMC Networks, Inc.*, No. 1:23-cv-02524-ALC, at *6 (S.D.N.Y May 16, 2024), ECF No. 64 (approving LCHB's 2024 billing rates); *Czarnionka, et al. v. The Epoch Times Association, Inc.*, No. 1:22-cv-06348-AKH, at *6 (S.D.N.Y. July 10, 2024), ECF No. 106 (same); *In re Google Location Hist. Litig.*, No. 18-cv-05062-EJD, 2024 WL 1975462, at *15 (N.D. Cal. May 3, 2024) (finding class counsel's rates ranging from $550–$1,300 for partners, $420–$720 for associates, and $535 for paralegals and other support staff "fall within the range of those approved in other similar cases . . . ") (citations omitted); Final Order & Judgment at 9, *In re Arizona Theranos, Inc. Litig.*, No. 2:16-cv-02138-DGC (D. Ariz. Feb. 6, 2024), ECF No. 619 (approving LCHB's 2023 rates); *Corker v. Costco Wholesale Corp.*, No. 19-00290, 2023 WL 6215108, at *1 (W.D. Wash. Sept. 25, 2023) (approving rates); *Chen-Oster v. Goldman Sachs & Co.*, No. 10 CIV. 6950 (AT) (RWL), 2023 WL 7325264, at *5 (S.D.N.Y. Nov. 7, 2023) (approving attorneys' fee award based

in part on the hourly rates of proposed Co-Lead Class Counsel Rachel Geman); *Ramirez v. Trans Union, LLC*, No. 12-00632, 2022 WL 17722395, at *9 (N.D. Cal. Dec. 15, 2022) (finding that LCHB's rates, at the time, "from $1,325 to $560 for partners and associates, and $485-$455 for 'litigation support' and paralegals" were "generally in line with rates prevailing in this community for similar services"); *Vianu v. AT&T Mobility LLC*, No. 19-03602, 2022 WL 16823044, at *11 (N.D. Cal. Nov. 8, 2022) (finding LCHB's "billing rates are normal and customary for timekeepers with similar qualifications and experience in the relevant market"); *Cottle v. Plaid Inc.*, No. 20-03056, 2022 WL 2829882, at *11 (N.D. Cal. July 20, 2022) (approving rates; including of attorneys Rachel Geman and Mike Sheen); *Pulmonary Assocs. of Charleston PLLC, et al. v. Greenway Health, LLC, et al.*, No. 19-00167, at *5–8 (N.D. Ga., Dec. 2, 2021) (approving rates); *Roberts v. AT&T Mobility LLC*, No. 15-03418, 2021 WL 9564449, at *4 (N.D. Cal. Aug. 20, 2021); *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-2792, 2020 WL 9936692, at *7 (W.D. Okla. June 11, 2020) *aff'd,* 997 F.3d 1077 (10th Cir. 2021) ("Class Counsel's billing rates are reasonable for their respective geographic areas in comparable cases."); *Nashville Gen. Hosp. v. Momenta Pharms., Inc.*, No. 15-1100, 2020 WL 3053468, at *1 (M.D. Tenn. May 29, 2020) (approving LCHB's rates).

63.     Attached hereto as **Exhibit B** is a true and correct summary lodestar chart that reflects, for each LCHB timekeeper: (i) their title or position (*e.g.*, partner, associate, staff attorney, paralegal); (ii) the total number of hours they worked; (iii) their current hourly rate; and (iv) their lodestar. For attorneys or support staff who no longer work with

LCHB, the current hourly rate is the rate for that individual in his or her final year of work with the firm.

64. I am prepared to provide the Court with any further documentation or explanation regarding LCHB's lodestar, including detailed daily time records, upon request by the Court.

**HK's Reasonable Lodestar and Litigation Costs**.

65. Only Mr. Kennedy attests to the facts set forth in this Section.

66. I have personal knowledge of the hourly rates charged by HK attorneys and support staff included in the exhibits to this declaration. The hourly rates for the attorneys in my firm are the usual and customary rates set by the firm for each individual. These hourly rates are the same as, or comparable to, the rates accepted by other courts in other class actions. *See, e.g., Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023). My firm's rates are set based on periodic analysis of rates charged by firms performing comparable work and that have been approved by courts in other class actions within this Circuit and nationwide. Different timekeepers within the same employment category may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

67. Federal courts have approved the hourly rates of HK attorneys, including myself, in issuing fee and expense reimbursement awards. *See, e.g., Fiorentino v. FloSports, Inc.,* No. 1:22-cv-11502-AK (D. Mass. Mar. 5, 2024), Dkt. 69 at 16-17 and Dkt.

24

76 at ¶ 12 (awarding fees in amount requested in plaintiff's fee motion and supporting declaration that was based on the hourly rates of Class Counsel's lawyers, including the same HK lawyers involved in this case); *Cottle v. Plaid Inc.*, 2022 WL 2829882 (N.D. Cal. July 20, 2022).

68.     Attached hereto as **Exhibit C** is a true and correct summary lodestar chart that reflects, for each HK timekeeper: (i) their title or position; (ii) the total number of hours they worked; (iii) their current hourly rate; and (iv) their lodestar.

69.     I am prepared to provide the Court with any further documentation or explanation regarding HK's lodestar, including detailed daily time records, upon request by the Court.

**Class Counsel's Reasonably Incurred Litigation Costs**

70.     Over the course of the litigation, Class Counsel kept records of all litigation expenses. The following table summarizes Class Counsel's reasonably incurred litigation expenses:

| Expense Category | Amount |
|---|---|
| Expert/Consultant/Mediation Fees | $30,879.93 |
| Electronic Database | $3,720.77 |
| Court Fees | $952 |
| Federal Express/Courier | $492.22 |
| Computer Research | $3,338.18 |
| Travel | $2,869 |
| Photocopying/Printing | $426.40 |
| Telephone Services | $25.12 |
| **Total** | **$42,703.62** |

71.     With the assistance of attorneys and staff working under our direction and supervision, we conducted a comprehensive audit of all litigation expenses incurred by

22

Class Counsel in the prosecution of this Action. In performing the audit of Class Counsel's litigation expenses, we exercised our discretion in removing any expenses we considered unnecessary or irrelevant.

72.     We are prepared to provide the Court with any further documentation or explanation regarding Class Counsel's litigation expenses, including detailed invoice and payment records, upon request by the Court.

**Class Representative's Service Award**

73.     The Class Representative devoted resources and energy to litigating and settling this Action. He provided information to Class Counsel that informed the class action complaints, and throughout the litigation, regularly communicated with Class Counsel about strategy and major case developments. He also provided documents and information, including information from his computer and Gaia and Facebook accounts, and was willing to present his devices to Class counsel for preservation and forensic imaging, if needed. Moreover, he carefully reviewed and considered the Settlement, and consulted with Class Counsel, before approving it. In light of his work, the requested service award of $2,000 is eminently reasonable.

We declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 2nd day of October 2024, at Washington, DC, Brooklyn, New York, and McKinney, Texas.

By: */s/ Christopher Cormier*               By: */s/ Rachel Geman*
      Christopher J. Cormier                       Rachel Geman

By: */s/ Shawn Kennedy*
       Shawn M. Kennedy

# EXHIBIT A
# TO JOINT DECLARATION
# OF CLASS COUNSEL

# Gaia VPPA Litigation – Guida v. Gaia, Inc. (D. Colo.)
## VPPA Gaia 22026.01 Time Report

Firm Name: Burns Charest LLP

Reporting Period: <span style="color:red">08/2022 Thru 8/2024</span>

(1) Lead Counsel Calls / Meetings
(2) Investigations / Factual Research
(3) Discovery (Draft / Respond / Meet & Confer)
(4) Discovery (Document Review)

(5) Discovery (Depositions)
(6) Pleadings, Briefs, Motions
(7) Court Appearances & Prepara
(8) Settlement

(9) Class Certification
(10) Trial Preparation
(11) Trial
(12) Case Management & Litigation Strategy

(13) Legal Research
(14) Experts / Consultants
(15) Appeal

| Name | Status | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | Current Hourly Rate | Cumulative Hours | Cumulative Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chris Cormier | P | 9.3 | 7.4 | 49.3 | | | 49.8 | | | | | | 146.5 | | 22.4 | 3.2 | | $1,300.00 | 287.9 | $374,270.00 |
| Hannah Crowe | A | 31.9 | 2.2 | 63.8 | 1.5 | | 36.2 | 2.2 | | | | | 27.8 | 1.4 | 5.0 | | | $700.00 | 172.0 | $120,400.00 |
| Andrew Bynum | PL | 1.9 | | 17.8 | 1.6 | | 6.8 | 5.0 | | | | | 35.3 | | | | | $600.00 | 68.4 | $41,040.00 |
| Abu-Orf, Leila 2023 | LC | 2.8 | | 10.8 | 0.1 | | | | | | | | 17.4 | | | | | $700.00 | 31.1 | $21,770.00 |
| Lauren Cross | LC | 9.4 | 14.0 | 0.7 | 1.2 | | 3.5 | | | | | | 14.1 | 28.5 | 0.2 | | | $550.00 | 71.6 | $39,380.00 |
| Tenacia Whiteside | LC | | | 7.1 | | | 1.0 | | | | | | 7.7 | 0.3 | | | | $325.00 | 16.1 | $5,232.50 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| | | | | | | | | | | | | | | | | | | $0.00 | 0.0 | $0.00 |
| TOTALS | | 55.3 | 23.6 | 149.5 | 4.4 | 0.0 | 97.3 | 7.2 | 0.0 | 0.0 | 0.0 | 0.0 | 248.8 | 30.2 | 27.6 | 3.2 | 0.0 | $0.00 | 647.1 | 602,092.5 |

Partner (P)
Of Counsel (OC)
Associate (A)
Paralegal (PL)
Law Clerk (LC)

713046

Time

# Gaia VPPA Litigation - Guida v. Gaia, Inc. (D. Colo.)

### VPPA Gaia 22026.01 Expense Report

**Firm Name: Burns Charest LLP**
**Reporting Period: 8/2022 - 8/2024**

** DO NOT ADD CATEGORIES TO CHART**

| Disbursement | Description (If Necessary) | Prior Costs | Current Costs | Cumulative Costs |
|---|---|---|---|---|
| Electronic Research (Lexis/Westlaw/PACER) | | | $7.90 | $7.90 |
| Assessment Fees | | | | $0.00 |
| Investigation Fees/Service Fees | | | | $0.00 |
| Court Costs - Filing Fees | | | | $0.00 |
| Litigation Fund Contribution | | | $0.00 | $0.00 |
| Federal Express/Overnight Delivery/Messengers | | | $492.22 | $492.22 |
| Photocopies - In House | | | | $0.00 |
| Photocopies - Outside | | | | $0.00 |
| Mileage | | | | $0.00 |
| Air Travel | | | | $0.00 |
| Meals | | | | $0.00 |
| Deposition Costs | | | | $0.00 |
| Hotels | | | | $0.00 |
| Postage | | | | $0.00 |
| Service of Process Fees | | | | $0.00 |
| Telephone/Fax | | | | $0.00 |
| Transportation | | | | $0.00 |
| Co-Counsel Fees | | | | $0.00 |
| Expert/Consultant/Mediator Fees | | | $11,523.70 | $11,523.70 |
| Court Reporter Service/Hearing Transcript Fees | | | | $0.00 |
| Misc. (Describe) | | | | $0.00 |
| **TOTAL** | | **$0.00** | **$12,023.82** | **$12,023.82** |

# EXHIBIT B
# TO JOINT DECLARATION
# OF CLASS COUNSEL

# LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

Report created on    09/26/2024 10:42:24 PM

| | From | Inception |
|---|---|---|
| | To | 08/31/24 |

**Matter Number: 4256-0001**        **VPPA - GAIA, INC. - General Matter**

### PARTNER

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| DOUGLAS CUTHBERTSON | 31.50 | 895.00 | 28,192.50 |
| RACHEL GEMAN | 48.60 | 1,145.00 | 55,647.00 |
| MIKE SHEEN | 206.60 | 800.00 | 165,280.00 |
| | **286.70** | | **249,119.50** |

### ASSOCIATE

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| NABILA ABDALLAH | 134.10 | 530.00 | 71,073.00 |
| NICHOLAS HARTMANN | 12.20 | 755.00 | 9,211.00 |
| | **146.30** | | **80,284.00** |

### LAW CLERK

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| LIVIA JARAMILLO | 14.00 | 470.00 | 6,580.00 |
| TERIN PATEL-WILSON | 13.00 | 470.00 | 6,110.00 |
| | **27.00** | | **12,690.00** |

### PARALEGAL/CLERK

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| ARIANA DELUCCHI | 36.20 | 500.00 | 18,100.00 |
| | **36.20** | | **18,100.00** |

|  | **MATTER TOTALS** | **496.20** | | **360,193.50** |

## LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

**Report created on**    09/26/2024 06:00:48 PM

| | | | |
|---|---|---|---|
| **Current =** | 09/01/24 | To | **Present** |
| **Matter-to-Date =** | Inception | To | **Present** |

**VPPA - GAIA, INC. - General Matter**

**Matter Number: 4256-0001**

### Soft Costs Incurred

| | Current | Matter-to-Date |
|---|---|---|
| Print | $0.00 | $426.40 |
| Telephone | $0.00 | $21.42 |
| **Total Soft Costs:** | **$0.00** | **$447.82** |

### Hard Costs Incurred

| | Current | Matter-to-Date |
|---|---|---|
| Computer Research | $2.20 | $1,205.46 |
| Cost Funds | $0.00 | $5,074.35 |
| Electronic Database | $5.59 | $3,720.77 |
| Experts/Consultants | $0.00 | $2,544.68 |
| Mediation Expenses | $0.00 | $2,983.34 |
| Other Charges | $0.00 | $506.00 |
| Telephone | $0.00 | $3.70 |
| Travel | $0.00 | $2,869.00 |
| **Total Hard Costs:** | **$7.79** | **$18,907.30** |
| **Total Matter Costs:** | **$7.79** | **$19,355.12** |
| **Total Cost Receipts:** | **$0.00** | **$0.00** |
| **Net Costs:** | **$7.79** | **$19,355.12** |

# EXHIBIT C
# TO JOINT DECLARATION
# OF CLASS COUNSEL

# Gaia VPPA Litigation - Guida v. Gaia, Inc. (D. Colo.)

## Lodestar by Time Code

**Firm Name:** **Herrera Kennedy LLP**

**Reporting Period:** **Inception through 8/31**

(1) Lead Counsel Calls / Meetings    (5) Discovery (Depositions)    (9) Class Certificat (13) Legal Research
(2) Investigations / Factual Research    (6) Pleadings, Briefs, Motior (10) Trial Preparat (14) Experts / Consultants
(3) Discovery (Draft / Respond / Meet & Confer) (7) Court Appearances & P( (11) Trial     (15) Appeal
(4) Discovery (Document Review)           (8) Settlement        (12) Case Management & Litigation Strategy

| Name | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | Rate | Hours | Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Shawn M. Kennedy (P) | 1.9 | 8.9 | # | | | 6.4 | 0.3 | 100.1 | | | | 8.6 | 0.5 | 1.2 | | | $1,045.00 | 143.4 | $149,853.00 |
| Nicomedes Sy Herrera (P) | 4.1 | | 0.4 | | | 2.2 | 0.5 | 1.5 | | | | 0.6 | | | | | $1,095.00 | 9.3 | $10,183.50 |
| | | | | | | | | | | | | | | | | | | | |
| **TOTALS** | **6.0** | **8.9** | **#** | | | **8.6** | **0.8** | **101.6** | | | | **9.2** | **0.5** | **1.2** | | | | **152.7** | **160,036.5** |

Partner (P)

# Gaia VPPA Litigation - Guida v. Gaia, Inc. (D. Colo.)

## Litigation Costs

**Firm Name:** Herrera Kennedy LLP
**Reporting Period:** <span style="color:red">Inception through 08/31/2024</span>

| Disbursement | Current Costs |
|---|---:|
| Electronic Research (Lexis/Westlaw/PACER) | $2,124.82 |
| Assessment Fees | |
| Investigation Fees / Service Fees | |
| Court Costs - Filing Fees | $446.00 |
| Litigation Fund Contribution | |
| Federal Express/Overnight Delivery/Messengers | |
| Photocopies - In House | |
| Photocopies - Outside | |
| Mileage | |
| Air Travel | |
| Meals | |
| Deposition Costs | |
| Hotels | |
| Postage | |
| Service of Process Fees | |
| Telephone / Fax | |
| Transportation | |
| Co-Counsel Fees | |
| Experts/Consultant Fees | $8,753.86 |
| Court Reporter Service/Hearing Transcript Fees | |
| Misc. (Describe) | |
| **TOTAL** | **$11,324.68** |

# APPENDIX EXHIBIT 2

# Declaration of Baro Lee Re: Notice and Administration

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| CHRISTOPHER GUIDA, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>GAIA, INC.,<br>        Defendant. | Case No.: 1:22-cv-02350-GPG-MEH<br><br>**DECLARATION OF BARO LEE<br>RE: NOTICE AND ADMINISTRATION** |

    I, **BARO LEE**, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

    1.     I am a Project Manager with Angeion Group, LLC ("Angeion"), the Settlement Administrator retained in this matter, with headquarters located at 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein.

    2.     Angeion is not related to or affiliated with the Plaintiff, Class Counsel, the Defendant or Defendant's Counsel.

    3.     The purpose of this Declaration is to provide the Court with a summary of the work performed by Angeion thus far to effectuate notice pursuant to the Court's July 19, 2024, Preliminary Approval Order ("Order").

    4.     Angeion was retained to serve as the Settlement Administrator to, among other tasks, implement the Notice Plan; process Claim Forms; establish and maintain a dedicated Settlement Website; and perform other duties as specified in the Order and Class Action Settlement Agreement ("Agreement") that this Court preliminarily approved on July 19, 2024 (Dkt. No. 76).

## SUMMARY OF THE NOTICE PLAN

5.      The Notice Plan approved by the Court provides individual direct notice to all reasonably identifiable Class Members via email. The Notice Plan also includes the implementation of a dedicated website where Class Members can learn more about their rights and options pursuant to the terms of the Settlement.

## DISTRIBUTION OF CAFA NOTICE

6.      On July 18, 2024, pursuant to 28 U.S.C. §§ 1715(b), Angeion caused Notice regarding the Settlement to be sent to the Attorneys General of all states and territories and the Attorney General of the United States ("CAFA Notice"). The CAFA Notice mailings directed counsel and officials to the Angeion CAFA website where settlement related documents could be reviewed. A true and correct copy of the CAFA Notice is attached hereto as Exhibit A.

## CLASS DATA

7.      On or about August 7, 2024, Angeion received from Defense Counsel, two data files containing a total of 688,814 records ("Class List"). The data files contained the names and email addresses of Settlement Class Members.

## DIRECT NOTICE

**E-mail Notice**

8.      Prior to disseminating notice, Angeion performed a cleansing process to help ensure the accuracy of the recipient email addresses on the Class List. The email cleansing process removes extra spaces, fixes common typographical errors in domain name, and corrects insufficient domain suffixes (e.g., gmal.com to gmail.com, gmail.co to gmail.com, yaho.com to yahoo.com, etc.). After the cleansing process standardizes the email addresses, the email addresses were subjected to an email validation process whereby each email address was compared to known bad email addresses. Additionally, the email addresses were then further verified by contacting the Internet Service Provider ("ISP") to determine if the email addresses exist.

9.      As a result of the email cleansing and verification processes, 649,276 email addresses were confirmed as valid and 39,538 email addresses were invalid.

10. On September 9, 2024, Angeion caused E-mail Notice to be disseminated to the 649,276 Settlement Class Members who had a valid email address. A true and accurate copy of the E-mail Notice is attached hereto as Exhibit B.

11. On September 10, 2024, Angeion discovered that Class Members entering the online claim filing portal were unable to submit a claim form. The inability to submit an online claim form was identified as a bug in the code that prevented successful submission. Angeion identified the 2,371 Class Members that logged into the claims portal and sent a clarifying email notice which summarized the issue, confirmed the bug had been resolved, and asked the Class Member to re-enter the online claim portal to re-submit their claim. Of the 2,371 E-mail Notices sent, 2,351 were delivered and 20 bounced back as undeliverable. As of October 2, Angeion has received claim forms from 763 Class Members of the 2,371 E-mail Notices sent.

12. On September 18, 2024, Angeion discovered that the email dissemination on September 9, 2024, had an unusually high volume of soft bounces. Angeion found the cause of the soft bounces was the concurrent timing of this email dissemination with another project sending millions of email notices each day. The high volume of email dissemination from Angeion resulted in our email domains receiving a poor reputation score and soft bounces. Of the 649,276 E-mail Notices sent, 151,129 were delivered and 498,147 bounced back as undeliverable. Angeion informed counsel and re-noticed the soft bounces on September 18, 2024.

13. The email disseminations resulted in a cumulative successful delivery rate of 623,706 (96.06%) and undeliverable rate of 25,570 (3.94%). Email noticing is now complete.

## SETTLEMENT WEBSITE

14. On or before September 9, 2024, Angeion established the following website devoted to this Settlement: www.GaiaVPPASettlement.com ("Settlement Website"). The Settlement Website contains general information about the Settlement, including answers to frequently asked questions, important dates and deadlines pertinent to this matter, and copies of important documents. Visitors to the Settlement Website can download (1) a Long Form Notice, (2) a Claim Form, (3) the Settlement Agreement, and (4) the Class Action Complaint. The Settlement Website also has a "Contact Us" page whereby Class Members can submit questions

regarding the Settlement to a dedicated email address: info@GaiaVPPASettlement.com. The Settlement Website address was set forth in the Long Form Notice, Claim Form, and Settlement Agreement. A true and correct copy of the Long Form Notice is attached hereto as Exhibit C.

15.     On or before September 9, 2024, Angeion established an online claim filing portal (on the Submit a Claim page of the Settlement Website) whereby Class Members can complete and submit their Claim Form via the Settlement Website, or where they can download a PDF of the Claim Form to complete and submit by mail. A true and correct copy of the Claim Form is attached hereto as Exhibit D.

16.     As of October 2, 2024, the Settlement Website has had 39,061 page views and 25,131 sessions, which represents the number of individual sessions initiated by all users.

**TOLL-FREE HOTLINE**

17.     On or before September 9, 2024, Angeion activated the following toll-free number dedicated to this Settlement: 1-844-279-5979. The toll-free hotline utilizes an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline is accessible 24 hours a day, 7 days a week. As of the date of this declaration, Angeion has received 69 calls totaling 219 minutes.

**CLAIM FORM SUBMISSIONS**

18.     The deadline for members of the Settlement Class to submit a claim form is December 2, 2024. As of October 2, 2024, Angeion has received approximately 3,808 claim form submissions. These claim form submissions are still subject to final audits, including the full assessment of each claim's validity and a review for duplicate submissions. Angeion will continue to keep the parties apprised of the number of claim form submissions received.

**REQUESTS FOR EXCLUSION AND OBJECTIONS TO THE SETTLEMENT**

19.     The deadline for members of the Settlement Class to request exclusion from the Settlement or object to the Settlement is October 24, 2024. As of October 2, 2024, Angeion has not received any requests for exclusion or objection from the Settlement. Angeion will inform the parties of any requests for exclusion or objection it receives.

## **CONCLUSION**

20.    The Notice Plan described herein included direct notice to all reasonably identifiable members of the Settlement Class via email and the implementation of a dedicated Settlement Website and Toll-Free Hotline to further inform members of the Settlement Class of their rights and options pursuant to the terms of the Settlement.

I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: October 2, 2024

*Baro Lee*
_____
BARO LEE

# Exhibit A



1650 Arch Street, Suite 2210
Philadelphia, PA 19103
www.angeiongroup.com
215.563.4116 (P)
215.525.0209 (F)

July 18, 2024

VIA USPS GROUND ADVANTAGE

United States Attorney General &
Appropriate Officials

**Re:** **Notice of Class Action Settlement**
*Christopher Guida v. Gaia, Inc.*

Dear Counsel or Official:

Angeion Group, an independent claims administrator, on behalf of the defendant in the below-described action, hereby provides your office with this notice under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to advise you of the following proposed class action settlement:

**Case Name:** *Christopher Guida v. Gaia, Inc.*
**Index Number:** 1:22-cv-02350-GPG-MEH
**Jurisdiction:** United States District Court, District of Colorado
**Date Settlement Filed with Court:** July 8, 2024

In accordance with the requirements of 28 U.S.C. § 1715, copies of the following documents associated with this action are available at https://www.angeiongroup.com/cafa/.

1. **28 U.S.C. § 1715(b)(1)-Complaint:** The *Class Action Complaint* was filed with the Court on September 12, 2022.

2. **28 U.S.C. § 1715(b)(2)-Notice of Any Scheduled Judicial Hearings:** There are currently no scheduled hearings for this case as of the date of this Notice.

3. **28 U.S.C. § 1715(b)(3)-Notification to Class Members:** The proposed *Claim Form, Long Form Notice,* and *Email Notice* were filed with the Court on July 8, 2024.

4. **28 U.S.C. § 1715(b)(4)-Class Action Settlement Agreement:** The *Class Action Settlement Agreement* was filed with the Court on July 8, 2024.

5. **28 U.S.C. § 1715(b)(5)-Any Settlement or Other Agreements:** Other than the *Class Action Settlement Agreement*, no other settlements or other agreements have been contemporaneously made between the parties.

6. **28 U.S.C. § 1715(b)(6)-Final Judgment:** The Court has not issued a Final Judgement or notice of dismissal as of the date of this CAFA Notice.

7. **28 U.S.C. § 1715(b)(7)(B)-Estimate of Class Members:** It is not feasible to provide an estimate of the number of Class Members by State. The Settlement Class is comprised of, "all individuals residing in the United States who, during the Class Period, subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites while they had a Facebook account." Given the nature of the Settlement Class in this Settlement, the Defendant does not have mailing address information for Class Members and cannot provide a breakdown of Class Members by State. Accordingly, the estimated proportionate share of claims of Class Members (by State in comparison) to the entire Settlement cannot be determined.

8. **28 U.S.C. §1715(b)(8)-Judicial Opinions Related to the Settlement:** The Court has not issued a judicial opinion to the Settlement at this time. *Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support Thereof* and the *[Proposed] Preliminary Approval Order* are available at https://www.angeiongroup.com/cafa/.

If you have questions or concerns about this notice, the proposed settlement, or difficulty accessing the associated documents, please contact this office.

Sincerely,

Angeion Group
1650 Arch Street, Suite 2210
Philadelphia, PA 19103
(p) 215-563-4116
(f) 215-563-8839

Exhibit B

**Notice ID:** «Notice ID»
**Confirmation Code:** «Confirmation Code»

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Guida v. Gaia, Inc.*, Case No. 1:22-cv-02350-GPG-MEH
United States District Court for the District of Colorado

*A court authorized this notice. You are <u>not</u> being sued. This is <u>not</u> a solicitation from a lawyer.*

**You May Be Entitled to a Payment from a Class Action Settlement. The settlement only affects people in the United States who watched a video on the Gaia or Yoga International websites (gaia.com and yogainternational.com) using a web browser from September 12, 2020, to July 19, 2024, and who had a Facebook account during that period. If you did not watch a video on the Gaia or Yoga International websites using a web browser during that period, did not have a Facebook account during that period, or only accessed Gaia or Yoga International using Gaia's or Yoga International's app, this settlement does not apply to you.**

**Claims Forms Must be Submitted no Later Than December 2, 2024.**

**I WANT TO SUBMIT MY CLAIM**

This notice is to inform you that a settlement has been reached in a class action lawsuit alleging that Defendant Gaia, Inc. ("Gaia") disclosed personally identifiable information to Facebook via the Facebook Tracking Pixel that identifies an account holder as having requested or obtained specific video materials in violation of the Video Privacy Protection Act (the "VPPA"). Gaia denies that it violated any law and the court has not determined who is right. However, the parties have agreed to the settlement to avoid the uncertainties and expenses associated with continuing to litigate the case.

### Am I a Settlement Class Member?

Records indicate you may be a Settlement Class Member. The Settlement Class includes all individuals residing in the United States who, from September 12, 2020, to and through July 19, 2024, subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites (gaia.com and yogainternational.com) using a web browser while they had a Facebook account.

### What are the Settlement Benefits?

If approved by the Court, Gaia will create a Settlement Fund of **$2,000,000** for the benefit of the Settlement Class. The Settlement Fund will be distributed to Settlement Class Members who file a timely and complete claim on a *pro rata* basis (meaning equal share), after deducting Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions.

The Settlement also requires Gaia to suspend operation of the Facebook Tracking Pixel on any pages on Gaia's Websites that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA were to be: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the Tenth Circuit Court of Appeals.

## How Do I Get a Payment?

Visit www.GaiaVPPASettlement.com to submit your claim online or to download a Claim Form to complete and submit by mail. Your Claim Form must be submitted online or mailed with a postmark date no later than **December 2, 2024**.

## What are My Other Options?

You may exclude yourself from the Settlement Class by sending a written request to the Settlement Administrator postmarked no later than **October 24, 2024**. If you exclude yourself, you cannot receive a settlement payment, but you will keep any rights you may have to sue Gaia regarding the issues in the lawsuit.

You may object to the proposed settlement, and you and/or your lawyer have the right to appear before the Court. Your written objection must be filed with the Court with copies sent to Class Counsel and Defendant's Counsel no later than **October 24, 2024**.

Specific instructions about how to exclude yourself from, or object to, the Settlement are available at www.GaiaVPPASettlement.com. If you file a claim, submit an objection, or do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims against Gaia relating to issues in this case will be released.

## Who Represents Me?

The Court has appointed lawyers Shawn M. Kennedy of Herrera Kennedy LLP, Christopher J. Cormier of Burns Charest LLP, and Rachel Geman of Lieff Cabraser Heimann & Bernstein LLP, to represent the Settlement Class. These lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

## The Court's Final Approval Hearing

The Court will hold the Final Approval Hearing at 1:00 p.m. MT on December 9, 2024 in Courtroom 323 at the Wayne Aspinall Federal Building, 400 Rood Avenue, Grand Junction, CO 81501. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class; to consider the Class Counsel's request for attorneys' fees and expenses; and to consider the request for a Service Award to the Class Representative. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

## How Do I Get More Information?

For more information, including the full Notice, Claim Form, and the Class Action Settlement Agreement, visit www.GaiaVPPASettlement.com, contact the Settlement Administrator:
Mail: Gaia VPPA Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103
Email: info@GaiaVPPASettlement.com
Toll-Free: 1-844-279-5979

*Unsubscribe*

# Exhibit C

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Guida v. Gaia, Inc.*, Case No. 1:22-cv-02350-GPG-MEH

United States District Court for the District of Colorado

*A court authorized this notice. You are <u>not</u> being sued. This is <u>not</u> a solicitation from a lawyer.*

**You May Be Entitled to a Payment from a Class Action Settlement. The settlement only affects people in the United States who watched a video on the Gaia or Yoga International websites (gaia.com and yogainternational.com) using a web browser from September 12, 2020, to July 19, 2024, and who had a Facebook account during that period. If you did not watch a video on the Gaia or Yoga International websites using a web browser during that period, did not have a Facebook account during that period, or only accessed Gaia or Yoga International using Gaia's or Yoga International's app, this settlement does not apply to you.**

## <u>Claims Forms Must be Submitted no Later Than December 2, 2024.</u>

- A settlement has been reached in a class action lawsuit alleging that Defendant Gaia, Inc. ("Gaia") disclosed personally identifiable information to Facebook via the Facebook Tracking Pixel that identifies an account holder as having requested or obtained specific video materials in violation of the Video Privacy Protection Act (the "VPPA"). Gaia denies that it violated any law and the court has not determined who is right. However, the parties have agreed to the settlement to avoid the uncertainties and expenses associated with continuing to litigate the case.

- The Settlement Class includes all individuals residing in the United States who, from September 12, 2020, to and through July 19, 2024, subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites (gaia.com and yogainternational.com) using a web browser while they had a Facebook account.

- Individuals included in the Settlement will be eligible to receive a cash payment *pro rata* (meaning equal) portion of the **$2,000,000.00 Settlement Fund,** after deducting Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions.

- Read this notice carefully. Your legal rights are affected whether you act, or do not act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY DECEMBER 2, 2024** | This is the only way to receive a cash payment from the Settlement. Visit www.GaiaVPPASettlement.com to submit a Claim Form online or download a Claim Form to complete and return by mail. |
| **EXCLUDE YOURSELF BY OCTOBER 24, 2024** | You will receive no benefits, but you will retain any rights you currently have to sue Gaia regarding the claims in this case. |

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-844-279-5979

| OBJECT BY OCTOBER 24, 2024 | Write to the Court explaining why you don't like the Settlement. |
|---|---|
| GO TO THE HEARING ON DECEMBER 9, 2024 | Ask to speak in Court about your opinion of the Settlement. |
| DO NOTHING | You won't get a share of the Settlement benefits and will give up your rights to sue Gaia regarding the claims in this case. |

Your rights and options—**and the deadlines to exercise them**—are explained in this Notice.

## BASIC INFORMATION

### 1. Why was this Notice issued?

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

The Honorable Gordon P. Gallagher of the U.S. District Court for the District of Colorado is overseeing this case. The case is called *Guida v. Gaia, Inc.,* **Case No. 1:22-cv-02350-GPG-MEH**. The individual who sued is called the Plaintiff. The entity being sued, Gaia, is called the Defendant.

### 2. What is a class action?

In a class action, one or more people called "class representatives" (in this case, Plaintiff Christopher Guida) sue on behalf of a group or a "class" of people who have similar claims. In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the class.

### 3. What is this lawsuit about?

This lawsuit alleges that Gaia violated the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA") by disclosing its subscribers' personally identifiable information ("PII") to Facebook via the Facebook Tracking Pixel that identifies an account holder as having requested or obtained specific video materials. The VPPA defines PII to include information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider. Gaia denies that it violated any law. The Court has not determined who is right. Rather, Plaintiff and Gaia have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

### 4. Why is there a Settlement?

The Court has not decided whether the Plaintiff or Gaia should win this case. Instead, both sides agreed to a Settlement. That way, they avoid the uncertainties and expenses associated with ongoing litigation, and Settlement Class Members will get compensation.

## WHO'S INCLUDED IN THE SETTLEMENT?

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-844-279-5979

2

## 5. How do I know if I am in the Settlement Class?

The **Settlement Class** is defined as:

**All individuals residing in the United States who, from September 12, 2020, to and through July 19, 2024, subscribed or otherwise signed up for access to Gaia's services, and requested or obtained any prerecorded (including on-demand replay) videos available on Gaia's Websites (gaia.com and yogainternational.com) using a web browser while they had a Facebook account.**

Excluded from the Settlement Class are (1) any judge presiding over this Action and members of their families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons.

## THE SETTLEMENT BENEFITS

## 6. What does the Settlement provide?

*Monetary Relief*: If approved by the Court, Gaia will create a Settlement Fund of **$2,000,000** for the benefit of the Settlement Class. The Settlement Fund will be distributed to Settlement Class Members who file a timely and complete claim on a *pro rata* basis (meaning equal share), after deducting Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions.

*Prospective Relief*: The Settlement also requires Gaia to suspend operation of the Facebook Tracking Pixel on any pages on Gaia's Websites that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA were to be: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the Tenth Circuit Court of Appeals.

A detailed description of the settlement benefits can be found in the Class Action Settlement Agreement available at www.GaiaVPPASettlement.com.

## 7. How much will my payment be?

After deducting from the Settlement Fund any Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions, the Net Settlement Fund will be distributed to Settlement Class Members as a cash payment on a *pro rata* basis. This means each Settlement Class Member who submits a valid claim will be paid an equal share from the Net Settlement Fund. The amount of the payments to individual Settlement Class Members will depend on the number of valid claims that are filed.  Because the final

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-844-279-5979

3

52

payment amount cannot be calculated before all claims are received and verified, it will not be possible to provide an accurate estimate of the payment amount before the deadline to file claims.

## 8. When will I get my payment?

The Court will hold a hearing to consider the fairness of the settlement on December 9, 2024. If the Court approves the Settlement, eligible Settlement Class Members whose claims were approved by the Settlement Administrator will receive payment within 90 days after the Effective Date (*i.e.*, after the Settlement has been finally approved and any appeals are resolved or the time to file an appeal has expired). In submitting their claims, Settlement Class Members can choose whether to receive their payment via one of several digital payment options or by paper check.

Funds remaining after checks have expired shall be redistributed on a *pro rata* basis (after first deducting any necessary settlement administration expenses from such uncashed check funds) to all Settlement Class Members who cashed checks or received digital payments during the initial distribution, as long as each Settlement Class Member would receive at least $5.00 in any such secondary distribution and if otherwise feasible.

## How to Get Benefits

## 9. How do I get a payment?

If you are a Settlement Class Member and you want to receive a payment, **you must complete and submit a Claim Form**. Visit www.GaiaVPPASettlement.com to submit your claim online or to download a Claim Form to complete and submit by mail. Your Claim Form must be submitted online by **December 2, 2024,** or mailed with a postmark date no later than **December 2, 2024**.

## Remaining in the Settlement

## 10. What am I giving up if I stay in the Settlement Class?

If the Settlement becomes final, you will give up (or "release") your rights to sue Gaia and certain of its affiliates ("Released Parties") regarding the Released Claims, which are described and defined in Paragraphs 1.26 and 1.27 of the Class Action Settlement Agreement.  Unless you exclude yourself (*see* Question 14), you will release the Released Claims, regardless of whether you submit a Claim Form or not.  You may access the Class Action Settlement Agreement through the Important Documents link on the Settlement Website www.GaiaVPPASettlement.com.

The Class Action Settlement Agreement describes the Released Claims with specific descriptions, so please read it carefully.  If you have any questions you may speak to the lawyers representing the Settlement Class listed in Question 12 for free or you may, of course, speak to your own lawyer at your own expense.

## 11. What happens if I do nothing at all?

If you do nothing, you will not receive any monetary benefit (cash payment) from this Settlement. Further, if you do not exclude yourself, you will be unable to start a lawsuit or be part of any other

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-844-279-5979

4

53

lawsuit brought against Gaia regarding the Released Claims.

## THE LAWYERS REPRESENTING YOU

### 12. Do I have a lawyer in the case?

The Court has appointed lawyers Shawn M. Kennedy of **Herrera Kennedy LLP**, Christopher J. Cormier of **Burns Charest LLP**, and Rachel Geman of **Lieff Cabraser Heimann & Bernstein LLP**, to represent the Settlement Class. These lawyers are called **Class Counsel**. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

### 13. How will the lawyers be paid?

Class Counsel's attorneys' fees and costs will be paid from the Settlement Fund in an amount determined and awarded by the Court ("Fee Award"). Class Counsel will ask for no more than one-third of the $2 million Settlement Fund, but the Court may award less than this amount.

Class Counsel may also seek a Service Award of up to $2,000.00 for the Class Representative for his service in helping to bring and settle the case. The Service Award will be paid out of the Settlement Fund, but the Court may award less than this amount.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 14. How do I get out of the Settlement?

To exclude yourself from the Class, you must mail a letter to the Settlement Administrator stating that you want to be excluded. Your letter must include:

    a. The name and number of this case, *Guida v. Gaia, Inc.,* Case No. 1:22-cv-02350-GPG-MEH;

    b. Your full name and mailing address;

    c. A statement that you wish to be excluded; and

    d. Your exclusion must be personally signed.

You must mail your exclusion letter, so it is postmarked or received no later than October 24, 2024, to:

**Gaia VPPA Settlement**
**Attn: Exclusion Requests**
**P.O. Box 58220**
**Philadelphia, PA 19102**

A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person(s) serving such a request shall be a member(s) of the Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if approved. Any member of the Settlement Class who validly elects to be excluded from this Agreement shall not: (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-844-279-5979

5

54

virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement. The request for exclusion must be personally signed by the Person requesting exclusion. **So-called "mass" or "class" opt-outs shall not be allowed.**

### 15. If I don't exclude myself, can I sue the Defendant for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Gaia for the Released Claims being resolved by this Settlement.

### 16. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, you may not submit a Claim Form to receive a monetary benefit (cash payment).

## OBJECTING TO THE SETTLEMENT

### 17. How do I object to the Settlement?

If you are a Settlement Class Member, you may ask the Court to deny approval of the Settlement by filing an objection. You may object to any aspect of the Settlement, Class Counsel's request for attorneys' fees and expenses, or the request for a Service Award. You can give reasons why you think the Court should not give its approval. The Court will consider your views.

If you choose to make an objection, you must mail or file with the Court a letter or brief stating that you object to the Settlement. Your letter or brief must include:

1. The name and number of this case, *Guida v. Gaia, Inc.,* Case No. 1:22-cv-02350-GPG-MEH;

2. Your full name and address;

3. An explanation of the basis upon which you claim to be a Settlement Class Member, including information sufficient to identify your current Facebook page or a screenshot showing that you were a Facebook member during the Class Period;

4. All grounds for your objection, including all citations to legal authority and evidence supporting your objection;

5. The name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with the preparation or submission of the objection or who may profit from your pursuit of the objection;

6. A statement indicating whether you intend to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules); and

7. Your handwritten or electronically imaged written signature.

You must mail or deliver your written objection, postmarked no later than **October 24, 2024,** to:

Clerk of the Court

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-844-279-5979

United States District Court for the District of Colorado
Wayne Aspinall Federal Building
400 Rood Avenue
Grand Junction, CO 81501

You must also mail or otherwise deliver a copy of your written objection to Class Counsel and Defendant's counsel at the following addresses:

| Class Counsel | Class Counsel |
|---|---|
| Shawn M. Kennedy<br>**Herrera Kennedy LLP**<br>5900 S. Lake Forest Dr., Suite 300<br>McKinney, TX 75070 | Christopher J. Cormier<br>**Burns Charest LLP**<br>4725 Wisconsin Avenue, NW, Suite 200,<br>Washington, DC 20016 |
| **Class Counsel** | **Defendant's Counsel** |
| Rachel J. Geman<br>**Lieff Cabraser Heimann & Bernstein LLP**<br>250 Hudson Street, 8th Floor<br>New York, NY 10013 | Thomas J. Krysa<br>**Foley & Lardner LLP**<br>1400 16th Street, Ste. 200<br>Denver, Colorado 80202 |

**No "mass" or "class" objections will be allowed.**

## 18. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself from the Settlement Class is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no right to object or file a Claim Form because the case no longer affects you.

### THE COURT'S FINAL APPROVAL HEARING

## 19. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing at 1:00 p.m. MT on December 9, 2024, in Courtroom 323 at the Wayne Aspinall Federal Building, 400 Rood Avenue, Grand Junction, CO 81501. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class; to consider the Class Counsel's request for attorneys' fees and expenses; and to consider the request for a Service Award to the Class Representative. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check www.GaiaVPPASettlement.com. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the date of such Final Approval Hearing.

**20. Do I have to attend to the hearing?**

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you send an objection or comment, you do not have to attend the hearing to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also retain your own lawyer (at your own expense) to attend, but it's not required.

**21. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your letter or brief objecting to the Settlement a statement saying that you or your lawyer intends to appear at the Final Approval Hearing.

## GETTING MORE INFORMATION

**22. Where do I get more information?**

For more information, including the full Notice, Claim Form, and the Class Action Settlement Agreement, visit www.GaiaVPPASettlement.com or contact the Settlement Administrator:

Mail: Gaia VPPA Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103

Email: info@GaiaVPPASettlement.com

Toll-Free: 1-844-279-5979

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE REGARDING THIS NOTICE.**

Questions? Visit www.GaiaVPPASettlement.com or call toll-free 1-844-279-5979

8

57

# Exhibit D

## GENERAL INSTRUCTIONS

You are eligible to submit a Claim Form if you are a Settlement Class Member.

The **Settlement Class** includes all individuals residing in the United States who, from September 12, 2020, to July 19, 2024, and who had a Facebook account during that period. If you did not watch a video on the Gaia or Yoga International websites using a web browser during that period, did not have a Facebook account during that period, or only accessed Gaia or Yoga International using Gaia's or Yoga International's app, this settlement does not apply to you.

**Excluded** from the Settlement Class are (1) any judge presiding over this Action and members of their families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons.

## SETTLEMENT CLASS MEMBER BENEFITS

If approved by the Court, Gaia will create a Settlement Fund of **$2,000,000** for the benefit of the Settlement Class. The Settlement Fund will be distributed to Settlement Class Members who file a timely and complete claim on a *pro rata* basis (meaning equal share), after deducting Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions.

## SUBMITTING YOUR CLAIM FORM

To submit a Claim for payment, you may submit a Claim Form:
(1) **Online**: visit www.GaiaVPPASettlement.com to submit a Claim Form online no later than **December 2, 2024**; *OR*
(2) **By mail**: print, complete, and submit this Claim Form by mail so it is postmarked no later than **December 2, 2024,** and sent to Gaia VPPA Settlement Administrator, Attn: Claim Submissions, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

*Guida v. Gaia, Inc.*
Case No. 1:22-cv-02350-GPG-MEH
United States District Court for the District of Colorado
**GAIA VPPA SETTLEMENT CLAIM FORM**

GAIA-CLAIM

## I. CLAIMANT CONTACT INFORMATION

Provide your contact information below. It is your responsibility to notify the Settlement Admininstrator of any changes to your contact information after the submission of your Claim Form.

**First Name**                                          **Last Name**

**Street Address**

**City**                          **State**                **Zip Code**

**Email Address**                **Phone Number**          **Notice ID Number**

## II. PAYMENT SELECTION

Please select **one** of the following payment options:

☐ **Prepaid Mastercard**
   Enter the email address you want the Prepaid Mastercard sent to:

☐ **Venmo**
   Enter the mobile number associated with your Venmo account:

☐ **PayPal**
   Enter the email address associated with your PayPal account:

☐ **Zelle**
   Enter the email address or phone number associated with your Zelle account:

☐ **Check (**Payment will be mailed to the address provided in Section I above)

## III. CERTIFICATION & SIGNATURE

**By signing below and submitting this Claim Form, I hereby certify that:**

(1)  Between September 12, 2020, to July 19, 2024:

     (a)  I watched a video on the Gaia or Yoga International websites using a web browser during this period; and

     (b)  I had a Facebook account during this period.

**Your claim must be submitted online or <u>postmarked by</u>: DECEMBER 2, 2024**

*Guida v. Gaia, Inc.*
Case No. 1:22-cv-02350-GPG-MEH
United States District Court for the District of Colorado
**GAIA VPPA SETTLEMENT CLAIM FORM**

**GAIA-CLAIM**

(2) The information I provided on this Claim Form is true and correct to the best of my knowledge, and this is the only claim I will submit in connection with this Settlement. I understand the Settlement Administrator may contact me to request further verification of the information provided in this Claim Form.

**Signature:** _____ **Printed Name:** _____ **Date:** _____

**CERTIFICATE OF SERVICE**

I, Shawn M. Kennedy, hereby certify that a copy of this Plaintiff's Appendix of Evidence In Support of Plaintiff's (1) Unopposed Motion for Final Approval of Class Action Settlement; and (2) Motion for Award of Attorneys' Fees, Litigation Costs & Service Award was sent to counsel of record via the federal court's e-filing system.

Dated:  October 2, 2024

*/s/     Shawn Kennedy*
Shawn M. Kennedy
HERRERA KENNEDY LLP
5900 S. Lake Forest Dr., Suite 300
McKinney, TX 75070
Telephone: (949) 936-0900

Email: skennedy@herrerakennedy.com